IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FITNESS HOLDINGS, LLC,<br><br>Plaintiff,<br>v.<br><br>FEDERAL RECOVERY ACCEPTANCE, INC. and FEDERAL RECOVERY SERVICES, Inc.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [111] DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT CLAIMS**<br><br>Case No. 2:13-cv-00204-DN<br><br>District Judge David Nuffer |

This case is a dispute between a former owner of physical fitness clubs and one of its billing services providers regarding the parties' obligations to each other at the termination of their contractual relationship. Plaintiff Global Fitness Holdings, LLC ("Global") filed this suit in October 2012 against two related entities (collectively "Paramount"), Federal Recovery Acceptance, Inc. ("FRAI") and Federal Recovery Services, Inc. ("FRSI"). Global brought claims for tortious interference,[1] promissory estoppel,[2] conversion,[3] breach of contract,[4] and breach of the covenant of good faith and fair dealing.[5] All the claims arise out of the alleged refusal of Paramount to cooperate with Global when Global was acquired by Fitness & Sports Clubs, LLC

---

[1] Global Fitness Holding, LLC's Amended Complaint ("Amended Complaint") ¶¶ 38–45, docket no. 71, filed March 19, 2014.

[2] *Id.* ¶¶ 46–52.

[3] *Id.* ¶¶ 53–60.

[4] *Id.* ¶¶ 61–66.

[5] *Id.* ¶¶ 67–73.

("L.A. Fitness"),[6] a non-party to this litigation. Paramount provided the billing services for Global's large membership base.

In the Global–L.A. Fitness Asset Purchase Agreement ("APA"), Global was to transfer customer data to L.A. Fitness, but Global claims Federal Recovery wrongfully withheld the data pending Global's payment of termination fees to Federal Recovery.[7] Global also alleges Federal Recovery withheld over $500,000 in funds owed to Global.[8] Paramount denies wrongdoing in withholding the data and funds, and has now filed several motions for summary judgment on all of Global's claims,[9] including the breach of contract claim related to data transfer that Global voluntarily dismissed.[10]

Paramount filed several motions for partial summary judgment[11] on Global's breach of contract and breach of the implied covenant claims. This order GRANTS in part and DENIES in part Paramount's Motion.

---

[6] *See generally id.*

[7] Amended Complaint ¶¶ 64–65.

[8] *Id.*  ¶¶ 61–63, 65–66.

[9] Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim, docket no. 106, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim and Supporting Memorandum, docket no. 108, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims and Memorandum in Support Thereof ("Breach Motion"), docket no. 111, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment on Global's Tortious Interference Claim, docket no. 120, filed under seal Aug. 4, 2014;  and Defendants' Motion for Partial Summary Judgment RE: Global's Tortious Interference Claim for Lack of Causation and Memorandum in Support Thereof, docket no. 121,filed under seal Aug. 4, 2014.

[10] Global Fitness, LLC's Motion for Voluntary Dismissal of its Breach of Contract Claim Against Federal Recovery Acceptance, Inc. as it Relates to the Transfer of Data, docket no. 132, filed Sept. 4, 2014 ("Motion for Voluntary Dismissal").

[11] Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims ("Paramount's Motion on Breach"), docket no. 111, filed Aug. 4, 2014.

# TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 4

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................................... 6

    I.      Breach of Contract ............................................................................................... 6

          A.    Element 1: The Contracts ...................................................................... 6

          B.    Element 2: Global's Performance Under the Contracts ........................ 7

          C.    Element 3: Paramount's Performance Under the Contracts .................. 9

          D.    Element 4: Damages ............................................................................ 10

    II.     Breach of the Implied Covenant of Good Faith and Fair Dealing ..................... 10

SUMMARY JUDGMENT STANDARD .................................................................................. 11

APPLICABLE LAW ............................................................................................................... 11

ANALYSIS ............................................................................................................................... 12

    I.      Global's Claim for Breach of Contract ............................................................. 12

          A.    The 2008, 2009, and 2011 Contracts Between Global and FRAI Were All Unambiguously Valid and Enforceable as a Matter of Law When Global Terminated the Contracts. ............................................................... 13

          B.    The Parties' Rights and Obligations Under the Contracts ................... 16

                1.    FRAI Had the Unambiguous Contractual Right to Possess, Maintain, and Process the Member Account Data Throughout the Duration of the 45-Day Termination Period. ................................ 16

                2.    Global Had No Express Contractual Right to Demand Transfer of the Billing Information Prior to October 26, 2012, but Its Demands Did Not Constitute a Breach of the Contracts .............................. 18

          C.    Paramount Has No Defense to Breach of Contract Based on Global's Notice of Termination of a 2009 Contract via Email Because That Notice Was Sufficient under the Contracts, and Paramount Waived the Right to Notice of Termination of the Parties' Remaining Contracts. ................... 19

          D.    Both Parties Performed Under the Contracts Until Simultaneously Breaching them: FRAI Breached the Parties' Contracts by Withholding Funds Beyond the 45-Day Termination Period While Global Breached the Parties' Contracts by Failing to Pay Termination Fees. ......................... 22

                1.    Global Breached the Contracts by Failing to Pay Contractually Required Termination or Exit Fees. ............................................. 23

                2.    Paramount Breached the Contracts by Withholding Funds Beyond the 45-Day Termination Period. ................................................. 24

                3.    Neither Party's Breach Excused the Other Party from Performing; Damages Remain to be Determined. ............................................ 25

          E.    Conclusion: Global and Paramount Are Both Liable for Breach of Contract; Damages and Offsets Remain to Be Determined at Trial. ........ 26

    II.     Global's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing .............................................................................................................. 26

          A.    Global Cannot Maintain A Claim for Breach of the Implied Covenant Premised on Paramount's Retention of the Member Account Data Where the Contracts Permitted FRAI's Retention. ......................................... 27

          B.    Global Cannot Maintain A Claim for Breach of the Implied Covenant Premised on Paramount's Withholding of Funds Because the Undisputed

Facts Show that Paramount Acted in an Effort to Perform the Contracts, Not in Bad Faith ........................................................................................... 28

ORDER ............................................................................................................................... 30

## FACTUAL AND PROCEDURAL BACKGROUND

At all relevant times prior to October 2012, Global owned and operated multiple fitness centers in multiple states.[12] Beginning in 2008, Global began contracting with FRAI for FRAI to process billing and collections for customers of certain Global facilities (the data processed by FRAI is the "Member Account Data").[13] The Member Account Data included not only information about the customers' purchases and preferences, but also their personal credit card ("CC") and bank account transfer ("ACH") information (collectively the "Billing Information") used to charge those customers for using Global's fitness centers.[14]

In 2008, Global and FRAI executed eight location-specific contracts (the "2008 Contracts"):[15] in 2009, Global and FRAI executed two additional contracts: one amending the 2008 Contracts (the "Existing Locations Agreement") and another to govern all remaining locations (the "New Location Agreement");[16] and in 2011, Global and FRAI executed two more location-specific contracts (the "2011 Contracts")[17] (the 12 contracts collectively are the

---

[12] Amended Complaint ¶ 7.

[13] Defendants' Amended Answer to Plaintiff's Amended Complaint and Counterclaim ("Counterclaim") ¶ 19, docket no. 85, filed April 22, 2014. *See also* Paramount contracts ("Contracts"), attached as Exhibit A to Paramount's Motion on Breach, docket no. 111-2, filed on Aug. 4, 2014, also attached to the Declaration of David L. Mortensen in Support of Global Fitness Holding, LLC's Memorandum in Opposition to Federal Recovery Services Inc.'s Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims ("Global's Exhibits on Breach") as Exhibit F , docket no. 146-6; Exhibit H, docket no. 146-8; Exhibit J, docket no. 146-10; and Exhibit K, docket no. 146-11, filed Sep. 4, 2014.

[14] Amended Complaint ¶ 9.

[15] Counterclaim ¶ 19; *see also* Contracts (dated 2008).

[16] Amended Complaint ¶ 13; Counterclaim ¶ 23; *see also* Contracts (dated 2009).

[17] Counterclaim ¶ 24; *see also* Contracts (dated 2011).

"Contracts"). FRAI in turn contracted with FRSI to perform the services necessary for FRAI to fulfill its obligations under the Contracts.[18]

In its Amended Complaint, Global contends that Paramount breached one or more of the Contracts, and the covenant of good faith and fair dealing implied therein, "by refusing and/or failing to provide the Member[] Account Data" and "by withholding the funds associated with the membership dues and it's [*sic*] servicing of the Member Accounts" (the "Withheld Funds") following Global's termination of the Contracts.[19]

Paramount filed its Motion on Breach on August 4, 2014, both as it pertains to the Member Account Data and the Withheld Funds. On September 4, 2014, Global filed its opposition brief[20] and a motion[21] seeking voluntary dismissal with prejudice of its breach of contract claim solely as it pertains to the Member Account Data. Over Paramount's objection,[22] Global's Motion to Voluntarily Dismiss Breach on Data Transfers was granted,[23] so this order only considers Global's claim for breach of contract related to the Withheld Funds. On September 22, 2014, Paramount filed its reply brief[24] regarding Paramount's Motion on Breach.

---

[18] Amended Complaint ¶¶ 14–16; *see also* Contracts.

[19] Amended Complaint ¶¶ 61–66, at Count IV, and ¶¶ 67–73, at Count V.

[20] Global Fitness Holdings, LLC's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims ("Global's Opposition on Breach"), docket no. 143, filed Sep. 4, 2014.

[21] Global Fitness Holdings, LLC's Motion for Voluntary Dismissal of its Breach of Contract Claim Against Federal Recovery Acceptance, Inc. As It Relates to the Transfer of Data ("Global's Motion to Voluntarily Dismiss Breach on Data Transfers"), docket no. 132, filed Sept. 4, 2014.

[22] Defendant's Memorandum in Response to Global Fitness Holdings, LLC's Motion for Voluntary Dismissal of its Breach of Contract Claim Against Federal Recovery Acceptance, Inc. as it Relates to the Transfer of Data ("Paramount's Opposition to Voluntary Dismissal"), docket no. 167, filed Sept. 22, 2014.

[23] Memorandum Decision and Order Granting Plaintiff's Motion for Voluntary Dismissal with Prejudice, docket no. 244, filed March 30, 2015.

[24] Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims ("Paramount's Reply on Breach"), docket no. 168, filed Sep. 22, 2014.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The below collection of undisputed material facts is distilled from the above listed filings. Paramount's Motion on Breach provided a statement of facts[25] and supporting exhibits. Global's Opposition on Breach responded to Paramount's statement of facts[26] and provided a statement of additional facts[27] and a separate declaration to which it attached its own set of supporting exhibits.[28] Paramount's Reply on Breach replied to Global's responses to Paramount's statement of facts[29] and responded to Global's additional facts.[30]

An email was sent to counsel with a summary set of undisputed facts on April 24, 2015.[31] That summary was reviewed at the start of the hearing on April 27, 2015.[32] The below collection of undisputed facts was finalized following the April 27, 2015 hearing based on discussion at the hearing.[33] The headings in the statement of facts are descriptive, not declaratory or substantive, and they are taken from the elements as described in the parties' motions.

### I.    Breach of Contract

### A.  Element 1: The Contracts

1.      Global and FRAI executed multiple contracts with each other regarding services pertinent to the management of certain member accounts data.[34]

---

[25] Paramount's Motion on Breach at 4–10.

[26] Global's Opposition on Breach at 13–18, 20.

[27] *Id.* at 20–23.

[28] Global's Exhibits on Breach, docket no. 146, filed Sep. 4, 2014.

[29] Paramount's Reply on Breach at iv–xxx.

[30] *Id.* at xxx–xliii.

[31] Email from Judge Nuffer's Chambers to counsel (Apr. 24, 2015), lodged as docket no. 272 on Aug. 31, 2015.

[32] Docket no. 247 (Minute Order); Transcript 4/27/15 38:22–51:12, docket no. 249, filed May 5, 2015.

[33] *Id.*

[34] *See* Contracts.

2.      Each of the Contracts between Global and FRAI contain, *inter alia*, the following notice provision: "One party may make any notice required under this Agreement by providing written notice sent certified mail, return receipt requested to the other party addressed to the last known address…."[35]

3.      In addition, each of the Contracts contains a provision governing termination.[36] While the termination provisions are not identical across all Contracts, each of the Contracts states that "[FRAI] or [Global] may terminate this Agreement at any time for any reason upon 45 day prior written notice."[37]

4.      Each of the Contracts further states that "[f]unds may be held during [the 45-day termination period] to offset returned payments or extra fees."[38] Additional termination fees and/or conditions are set forth in each of the Contracts.[39]

### B.  Element 2: Global's Performance Under the Contracts

5.      On September 11, 2012, Keith Trawick, on behalf of Global, sent an email to Paramount stating:

> Pursuant to the terms of our agreement with you, dated September 11, 2009, 45 day notice is hereby given for the termination of the Agreement. As we discussed, the clubs have been sold [via an Asset Purchase Agreement ("APA")] to [Fitness & Sports Clubs, LLC ("L.A. Fitness")] and at this time, we are unsure of the exact closing date. As specific information becomes available, we will let you know. It

---

[35] *Id.* at section entitled "Notice".

[36] *Id.* at section entitled "Term".

[37] *Id.*; *see also* Deposition of Global dated May 1, 2014 (deponent: Coby DeVary) ("DeVary Deposition") at 12:24–13:24, excerpts attached as Exhibit B to Paramount's Motion on Breach, docket no. 111-3, filed under seal in docket no. 119-1, filed on Aug. 4, 2014, other excerpts attached as Exhibit R to Global's Exhibits on Breach, docket no. 146-18, filed Sep. 4, 2014.

[38] Contracts at section entitled "Term".

[39] *See id.*

is our understanding that you guys will continue to provide service until the official closing date.[40]

6.      Global sent the foregoing "notice" of termination via email,[41] not by "certified mail, return receipt requested to the other party addressed to the last known address" as required under each of the Contracts.[42]

7.      Global's first attempted written termination of any of the Contracts addresses only Contracts dated September 11, 2009.[43]

8.      Assuming Global's September 11, 2012 email was a valid termination notice, pursuant to the Contracts' 45-day notice requirement, the Contracts would have remained in full force and effect until at least October 26, 2012.[44]

9.      Paramount called the notice "official" in internal e-mails.[45]

10.     Upon receipt of the notice, Paramount began cooperating with Global fitness concerning the termination.[46]

11.     Paramount describes in its pleadings how thoroughly "[Paramount] began working through all of the data processing, coding and transfer tasks" after receipt of the Notice of termination.[47]

---

[40] *See* Sept. 11, 2012 email from K. Trawick to S. Nelson, et al. ("Sept. 11, 2012 Trawick Email"), attached as Exhibit C to Paramount's Motion on Breach, docket no. 111-4, filed Aug. 4, 2014, also attached as Exhibit T to Global's Exhibits on Breach, docket no. 146-20, filed Sep. 4, 2014.

[41] *See* Sept. 11, 2012 Trawick Email.

[42] *See* Contracts at section entitled "Notice".

[43] *See* Sept. 11, 2012 Trawick Email.

[44] *Compare* Contracts at section entitled "Term" *with* Sept. 11, 2012 Trawick Email.

[45] *See* Email from Glen Bendixen to Ren Rice and Todd C. Rasmussen dated Sep. 11, 2012 ("Sep. 11, 2012 Bendixen Email"), attached as Exhibit BB to Global's Exhibits on Breach, docket no. 146-28, filed Sep. 4, 2014 ("This is the official notice.").

[46] Counterclaim ¶¶ 46–47, at 25–26; *see also* Declaration of Todd Rasmussen ¶ 5, attached as Exhibit CC to Global's Exhibits on Breach, docket no. 146-22, filed Sep. 4, 2014.

[47] Counterclaim ¶¶ 46–47, at 25–26.

12.     Paramount engaged in numerous e-mails and telephone calls with both Global Fitness and L.A. Fitness regarding the transfer of the Member Account Data for all thirty-six clubs.[48]

13.     Six days earlier, on September 5, 2012, Global and L.A. Fitness had executed the APA.[49]

14.     The first date that Global made a written request to Paramount to transfer all of the Member Account Data that it was processing for Global was October 3, 2012, via email.[50]

15.     On October 9, 2012, Global sent Paramount a letter demanding that all Member Account Data be transferred from Paramount to Global that same day.[51]

16.     Paramount ceased all servicing under the Contracts on October 25, 2012.[52]

## C.  Element 3: Paramount's Performance Under the Contracts

17.     On October 11, 2012, Paramount provided to Global all of the data that Paramount had been processing under its contractual relationship with Global.[53]

---

[48] *Id.*

[49] DeVary Deposition at 68:3–9.

[50] *See* Oct. 3, 2012 email from K. Trawick to S. Nelson, et al. ("Oct. 3, 2012 Trawick Email"), attached as Exhibit D to Paramount's Motion on Breach, docket no. 111-5, filed Aug. 4, 2014, also attached as Exhibit V to Global's Exhibits on Breach, docket no. 146-22, filed Sep. 4, 2014 ("We are asking for a full cut of the data on Friday…. Please confirm. Also, we will need an additional (updated) cut of the same data on the date of the actual close, which we anticipate will be next week."); *see also* Amended Complaint ¶ 28 ("On October 3, 2012, Global[] requested that Paramount transfer the Billing Data or final cut back to Global…."); *see also* Oct. 9, 2012 correspondence from K. Trawick to G. Bendixen ("Oct. 9, 2012 Trawick Letter"), attached as Exhibit E to Paramount's Motion on Breach, docket no. 111-6, filed Aug. 4, 2014, also attached as Exhibit QQ to Global's Exhibits on Breach, docket no. 146-43, filed Sep. 4, 2014 (referencing Global's initial request on October 3, 2012).

[51] *See* Oct. 9, 2012 Trawick Letter ("This data must be made available today, October 9th").

[52] Deposition of Glen Bendixen ("Bendixen Depo."), at 219:19–220:4, attached as Exhibit R to Declaration of David L. Mortensen in Support of Global Fitness Holding, LLC's Memorandum in Opposition to Federal Recovery Services Inc.'s Motion for Partial Summary Judgment for Plaintiff's Conversion Claim, docket no. 142-18, filed Sep. 4, 2014 ("[T]here must have been a point in time where, when we were calculating making us whole for the remainder part of the month, that the estimate was $120,000. But because the sale didn't complete until the [25th] of October, we continued to service the accounts and - - and continued to collect the fees during that period of time. So - - . . . During that entire period, we would have collected our normal fees.")

[53] *See* Oct. 11, 2012 Forwarded Email from K. Trawick to S. Horton-Salcedo, et al. ("Oct. 11 Forwarded Email"), attached as Exhibit F to Paramount's Motion on Breach, docket no. 111-7, filed under seal in docket no. 119-2, filed

18.     As of October 11, 2012, the date that Paramount transferred the Member Accounts Data to Global, the parties had not resolved issues of setting the reserve amount, determining the amount of fees, and other payments the terminating club owner needs to pay upon termination.[54]

19.     In its Amended Complaint, Global alleges, *inter alia*, that (a) Global "performed its obligations" under the Contracts and (b) Paramount breached one or more of the Contracts by (i) "refusing and/or failing to provide the Member[] Account Data" and/or (ii) "withholding the funds associated with the membership dues and it's [sic] servicing of the Member Accounts."[55]

**D.  Element 4: Damages**

20.     For purposes of the instant Breach Motion only, Paramount does not challenge Global's ability to proffer evidence in support of damages and thus there are no material facts necessary to this element for purposes of this Breach Motion.

## II.     Breach of the Implied Covenant of Good Faith and Fair Dealing

21.     Preceding paragraphs 1 through 20 are incorporated by reference as if fully set forth herein anew as all such undisputed material facts pertain equally to Global's breach of the implied covenant of good faith and fair dealing claim.

---

Aug. 4, 2014, also attached as Exhibit DD to Plaintiff's Exhibits in Opposition to Motion RE Breach, docket no. 146-30, filed Sep. 4, 2014 ("The PAC data is available on your FTP site."); *see also* Deposition of L.A. Fitness dated Apr. 22, 2014 (deponent: Kathy Polson) ("Polson Depo.") at 189:9–190:14, excerpts attached as Exhibit G to Paramount's Motion on Breach, docket no. 111-8, filed under seal in docket no. 119-3, filed Aug. 4, 2014 (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Deposition of Keith Trawick dated Mar. 18, 2014 ("Trawick Depo.") at 262:19–23, excerpts attached as Exhibit H to Paramount's Motion on Breach, docket no. 111-9, filed Aug. 4, 2014 (acknowledging that Paramount transferred the Member Account Data on October 11, 2012).

[54] *See* various emails between the parties and their counsel ranging from October 5, 2012 to October 10, 2012 showing the exit terms were not resolved ("Exit Term Emails"), collectively attached as Exhibit K to Paramount's Motion on Breach, docket no. 111-12, filed Aug. 4, 2014; also attached to Global's Exhibits on Breach as Exhibit X, docket no. 146-24; Exhibit Y, docket no. 146-25; and Exhibit NN, docket no. 146-40, filed Sep. 4, 2014.

[55] Amended Complaint ¶¶ 61–66, at Count IV, and ¶¶ 67–73, at Count V.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[56] "An issue of material fact is 'genuine' if a reasonable jury could return a verdict for the nonmoving party."[57] In moving for summary judgment, Paramount "bears the burden of showing the absence of a genuine issue of material fact . . . ."[58] However, Paramount "need not negate [Global's] claim[s], but need only point out to the district court 'that there is an absence of evidence to support [Global's] case.'"[59] Upon such a showing, Global "must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which [Global] carries the burden of proof."[60] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to defeat a properly supported motion for summary judgment."[61]

## APPLICABLE LAW

The parties agree that, pursuant to the express terms[62] of the Contracts, Utah law applies to Global's breach of contract and breach of the implied covenant claims.[63] Therefore, Utah law governs these claims.

---

[56] FED. R. CIV. P. 56(a).

[57] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

[58] *Universal*, 22 F.3d at 1529.

[59] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[60] *Id.* (quoting *Anderson*, 477 U.S. at 256 (internal quotation marks omitted)) (both emphases in original).

[61] *Id.* (quoting *Anderson*, 477 U.S. at 252 (internal quotation marks omitted)).

[62] *See* Contracts at section entitled "Enforcement".

[63] *See* Paramount's Motion on Breach at 4, 9–10 (citing the legal elements under Utah law) and Global's Opposition on Breach at 13, 19–20, 23 (same). *See also* Global's Motion for Partial Summary Judgment on Paramount's Fraud and Negligent Misrepresentation Counterclaims at 14 n.42, docket no. 66, filed Mar. 4, 2014 ("the various contracts between the [parties] contain a choice of law provision favoring Utah law . . . , [t]hus, there is no dispute that all contractual claims shall be governed by Utah law.").

## ANALYSIS

In its Amended Complaint, Global alleges, *inter alia*, that Global "performed its obligations" under the Contracts and that Paramount breached one or more of the Contracts and the covenant of good faith and fair dealing implied in the Contracts by "refusing and/or failing to provide the Member[] Account Data" and "withholding the funds associated with the membership dues and it's [sic] servicing of the Member Accounts."[64] For the reasons discussed more fully below, Paramount's Motion is DENIED in part I as it relates to the amount of funds improperly withheld in the claim for breach of contract, although liability on the claim is determined as a matter of law, and GRANTED in part II as it relates to the claim for breach of the implied covenant of good faith and fair dealing.

### I.    Global's Claim for Breach of Contract

To sustain a claim for breach of contract under Utah law, Global bears the burden to prove the following elements: (1) a contract; (2) Global's performance under the contract; (3) breach of the contract by FRAI; and (4) damages.[65] "A breach of express contract claim arises out of the express terms of the contract, and the breach [must be] proven in relation to those terms."[66] To this end, "[w]hen interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling."[67] Moreover, where "the language within the four corners of the contract is unambiguous, a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law."[68]

---

[64] *See* Amended Complaint ¶¶ 61–66, at Count IV, and ¶¶ 67–73, at Count V.

[65] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[66] *Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 261 (Utah 2005).

[67] *Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.*, 94 P.3d 292, 295 (Utah 2004).

[68] *Id.*

Global has argued that only one of the 2009 Contracts controls the parties' relationship, that Global's performance was sufficient under the Contracts to state a claim for breach of contract, that Paramount breached the Contracts by not transferring the Member Account data (although that ground for breach was voluntarily dismissed while this motion was pending), and by withholding funds. As discussed more fully below, (A) the 2008, 2009, and 2011 Contracts were all valid and enforceable at the time of Global's notice of termination; (B) Paramount had the contractual right to retain the Member Account Data, and Global did not have the right to demand the transfer of that data, although Global's demands did not constitute breaches of the Contracts; (C) Paramount has no defense to breach of contract based on the form of Global's notice of termination; (D) both parties performed the Contracts sufficiently to state claims for breach, but both parties' breached the Contracts; and (E) the parties' liability has been determined, but the amount of damages owed remains to be determined at trial.

### A. The 2008, 2009, and 2011 Contracts Between Global and FRAI Were All Unambiguously Valid and Enforceable as a Matter of Law When Global Terminated the Contracts.

Global and FRAI executed twelve Contracts regarding services pertinent to the management of the Member Account Data: eight location-specific contracts in 2008, two contracts that do not identify specific locations in 2009, and two location-specific contracts in 2011.[69] The parties do not dispute the validity and enforceability of at least one of these Contracts.[70] But Global contends that one of the Contracts, dated September 11, 2009, the so-called New Locations Agreement, controls the parties' contractual relationship, or otherwise supersedes all of the other Contracts, including the 2011 Contracts, signed later.[71]

---

[69] *See* Contracts.

[70] *See* Amended Complaint ¶¶ 61–66, at Count IV, and ¶¶ 67–73, at Count V.

[71] *See, e.g.*, Global's Opposition on Breach at 5–8.

For the reasons discussed below, the presumption that one of the Contracts entirely

supersedes any of the others is incorrect, and all of the Contracts were valid and in force at the

time Global gave notice of termination. This analysis is facial, based solely on the language of

the Contracts, finding no ambiguity that would allow the review of parol evidence. Neither

Paramount nor Global has *ever* asserted or argued that *any* of the Contracts, or any of the

provisions thereof, are ambiguous, facially or otherwise.[72]

In the Existing Locations Agreement dated September 11, 2009,[73] the "Engagement and

Fee" section provides as follows:

> COMPANY engages CONTRACTOR for a fee determined as 5.8% of
> COMPANY'S Visa/MC transactions; 5.8% of non-bank cards (Amex, Disc. etc.),
> 3.8% on ACH receipts, 2% of client received payments/paid to client, and 6% of
> mail in payments excluding cash down payments and cash sales. <u>This pricing
> applies</u> to all locations currently with Paramount Acceptance until all conversions
> to Paramount Acceptance are completed as of December 1, 2009. As of December
> 1, 2009, all locations subject to this agreement shall be *subject to the pricing set
> forth in the "Engagement and Fee" section of the "New Location" agreement.*[74]

There is no facial ambiguity in the foregoing provision. On the contrary, it explicitly specifies

that (1) the "pricing" provisions apply to "all locations currently with Paramount" and (2) as of

December 1, 2009, all locations subject to the Existing Locations Contract, including but not

limited to the 2008 Contracts, would then be subject to the *pricing* set forth in the Engagement

and Fee section of the New Location Agreement.[75]

---

[72] *See id. See also* Global's Motion to Exclude any Testimony of Thomas Klc Regarding His Legal Interpretation of the Contracts, docket no. 212, filed Jan. 16, 2015 at 2 (The crux of Global and Paramount's breach of contract dispute is "whether one set of terms governs all of the clubs [or whether multiple contracts] … govern contemporaneously. *Global Fitness believes that this is a legal question of contract interpretation to be decided by the Court without parol evidence.*" (emphasis added)).

[73] *See* Contract (dated September 11, 2009), the Existing Locations Agreement.

[74] *Id.* at section entitled "Engagement and Fee" (emphasis added).

[75] *Id.*

Except for the lone reference to the locations covered under the 2008 Contracts, found solely within the Engagement and Fee section of the Existing Locations Agreement,[76] the Existing Locations Agreement does *not* refer to the 2008 Contracts or the locations it.[77] The Existing Locations Agreement specifically references the locations under the 2008 Contracts *only* to put them under the pricing provisions of the 2009 Contracts.[78] Nothing in either of the 2009 Contracts states that the 2008 Contracts are superseded in full.[79] Accordingly, prior to the close of the 45-day termination period that began when Global gave notice of termination on September 11, 2012, the 2008 Contracts were in full force and effect with the exception of their Engagement and Fee provisions, which alone were superseded by the Engagement and Fee provisions of the 2009 Contracts. Furthermore, the "Term" provisions of the 2008 Contracts remained in full force and effect for the locations covered by the 2008 Contracts.[80]

The parties' location-specific 2011 Contracts continued to govern the parties' contractual relationship for the Buckhead and Dublin locations, respectively, prior to termination.[81] Nothing in the 2009 Contracts embraces these later contracts or suggests that the 2009 Contracts would somehow supersede a later-executed contract.

Finally, the remaining provisions of the Contracts, to the extent they are material to this Order, are facially unambiguous. Global has never asserted or argued ambiguity with respect to any of the parties' Contracts, either in whole or in part.[82] To this end, the additional undisputed and unambiguous provisions of the parties' Contracts material to this Order include at least the

---

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *See* Contracts (dated 2009).

[80] *See* Contracts dated 2008 at section entitled "Term."

[81] *See id.* (dated 2011).

[82] Plaintiff's Opposition RE Breach of Contract and the Implied Covenant, docket no. 143, filed Sep. 4, 2014.

following. First, each of the Contracts contains a provision governing termination.[83] While the termination provisions are not completely identical across all Contracts, each of the Contracts states that "[FRAI] or [Global] may terminate this Agreement at any time for any reason upon 45 day prior written notice."[84] In addition, each of the Contracts between Global and FRAI contain, the following notice provision: "One party may make any notice required under this Agreement by providing written notice sent certified mail, return receipt requested to the other party addressed to the last known address…."[85] Finally, each of the Contracts further states that "[f]unds may be held during [the 45-day termination period] to offset returned payments or extra fees."[86] Additional termination fees and/or conditions are set forth in each of the Contracts[87] which vary between contracts. The foregoing unambiguous provisions of the parties' Contracts are discussed in greater detail *infra*.

### B.  The Parties' Rights and Obligations Under the Contracts

1. FRAI Had the Unambiguous Contractual Right to Possess, Maintain, and Process the Member Account Data Throughout the Duration of the 45-Day Termination Period.

In its Amended Complaint, Global alleges that Global "performed its obligations" under the Contracts and that Paramount breached one or more of the Contracts and the covenant of good faith and fair dealing implied in the Contracts by "refusing and/or failing to provide the Member[] Account Data."[88]

---

[83] *See* Contracts at section entitled "Term".

[84] *Id.*

[85] *See id.* at section entitled "Notice".

[86] *See id.* at section entitled "Term".

[87] *Id.*; *see also id.* at section entitled "Extra Payment".

[88] *See* Amended Complaint ¶¶ 61–66, at Count IV, and ¶¶ 67–73, at Count V.

Paramount filed its Motion on August 4, 2014, seeking summary judgment on Global's breach of contract and breach of the implied covenant claims as it pertains to, among other things, transfer of the Member Account Data. On September 4, 2014, Global filed a motion to voluntarily dismiss, with prejudice, its breach of contract claim as it relates to the transfer of the Member Account Data.[89] Over Paramount's objection,[90] the motion was granted.[91] Accordingly, Global's breach of contract claim for Paramount's alleged refusal or failure "to provide the Member[] Account Data" has already been dismissed with prejudice.[92]

Nevertheless, possession of the Member Account Data, including the Billing Information, was fundamental to Paramount's performance of the Contracts. Although the Contracts are silent as possession, the primary purpose of the Contracts would be wholly frustrated if they did not grant to Paramount the necessary right and obligation to possess this data. Therefore, because the Contracts allow the parties to "terminate this Agreement at any time for any reason *upon 45 day prior written notice*,"[93] the Contracts gave FRAI the right and obligation to possess and process the Member Account Data throughout the duration of the 45-day termination period that began on September 12, 2012 when Global gave written notice of termination. Indeed, pursuant to the Contracts, FRAI was *obligated* to continue servicing the Member Account Data and the associated Billing Information during the 45-day termination period. Paramount could only

---

[89] *See generally* Global's Motion to Voluntarily Dismiss Breach on Data Transfers (seeking to voluntarily dismiss, with prejudice, only Paragraph 64 of Count IV of Global's Amended Complaint, i.e., "Paramount breached the Agreement by refusing and/or failing to provide the Member[] Account[s] Data").

[90] *See generally* Paramount's Opposition to Voluntary Dismissal.

[91] Memorandum Decision and Order Granting Plaintiff's Motion for Voluntary Dismissal with Prejudice, docket no. 244, filed March 30, 2015.

[92] *Id.*

[93] *See* Contracts at section entitled "Term" (emphasis added).

continue to meet its contractual obligations and service the Billing Information by retaining that information throughout the duration of the 45-day termination period.[94]

This contract construction applies to many of the issues and motions. Moreover, Global's Amended Complaint repeatedly recites allegations consistent with it.[95] In view of this contract construction, Global had no express contractual right to end Paramount's possession or processing of the Member Account Data before the 45-day termination period expired.

> 2.      Global Had No Express Contractual Right to Demand Transfer of the Billing Information Prior to October 26, 2012, but Its Demands Did Not Constitute a Breach of the Contracts

On September 11, 2012, Keith Trawick, on behalf of Global, sent an email to Paramount stating:

> Pursuant to the terms of our agreement with you, dated September 11, 2009, 45 day notice is hereby given for the termination of the Agreement. As we discussed, the clubs have been sold [via the APA] to L.A. Fitness and at this time, we are unsure of the exact closing date. As specific information becomes available, we will let you know. It is our understanding that you guys will continue to provide service until the official closing date.[96]

Assuming Global's September 11, 2012 email was a valid termination notice, pursuant to the Contracts' 45-day notice requirement, the Contracts would have remained in full force and effect until at least October 26, 2012.

Notwithstanding the reality that Global had no contractual right to demand delivery of the Member Account Data until after October 26, 2012, on October 3, 2012, Global made a written request to Paramount demanding that all of the Member Account Data that Paramount was processing for Global be transferred on to Global October 5, 2012. When transfer did not occur,

---

[94] *Id.*; *id.* at section entitled "Contractor's Duties"; Declaration of Todd Rasmussen in Support of Defendants' Memorandum in Opposition to Global Fitness Holdings, LLC's Motion for Partial Summary Judgment, docket no. 168-2, filed Sept. 22, 2014, ¶¶ 6–7.

[95] *See* Amended Complaint ¶¶ 39, 48, 50, 54, 62, 64, 68, 70, 72, and 75.

[96] Sept. 11, 2012 Trawick Email.

on October 9, 2012, Global again demanded that all of the Member Account Data be transferred from Paramount to Global with a deadline of that same day. Under an injunctive order on October 11, 2012, Paramount provided to Global all of the Member Account Data that Paramount had been processing under the Contracts, 15 days *before* the contractual termination period would have expired.

Consistent with the above construction of the Contracts, Global had no express contractual right to demand transfer of the Member Account Data and Billing Information. However, although Global could not unilaterally end Paramount's possession, there is no contractual prohibition to prevent Global from requesting that Paramount do something beyond the rights and obligations embodied in the Contracts. Therefore, Global's acts of requesting or demanding the early transfer do not constitute a breach of the Contracts.

Equally, Paramount was not obligated to transfer the Member Account Data on October 5, October 9, or at any time prior to October 26, 2012. Put differently, FRAI was entitled to exercise its contractual rights to retain the Member Account Data until October 26, 2012 and, therefore, FRAI did not breach the parties' Contracts by withholding the Member Account Data until October 11, 2012. Indeed, such conduct is within FRAI's express and unambiguous contractual rights.

**C. Paramount Has No Defense to Breach of Contract Based on Global's Notice of Termination of a 2009 Contract via Email Because That Notice Was Sufficient under the Contracts, and Paramount Waived the Right to Notice of Termination of the Parties' Remaining Contracts.**

Paramount's Motion on Breach states, in defense to Global's breach of contract and breach of the implied covenant claims, that Global never gave proper notice of termination of the parties' Contracts.[97] Specifically, Paramount contends that Global's notice of termination was

---

[97] Paramount's Motion on Breach at 15–16.

not in strict compliance with the "Notice" provision of the Contracts and only specifically referenced a contract dated September 11, 2009, omitting any reference to either the 2008 or 2011 Contracts.[98] However, Global's form of notice was proper and did not breach the referenced 2009 contract. Even if Global's notice was improper for the 2008 Contracts and the 2011 Contracts, Paramount waived that argument through its conduct.

As mentioned above, each of the Contracts between Global and FRAI contains the following Notice provision: "One party *may* make any notice required under this Agreement by providing written notice sent certified mail, return receipt requested to the other party addressed to the last known address…."[99] Pursuant to the plain and unambiguous meaning of the Notice provision, notice via "certified mail, return receipt requested," was permissive, not mandatory, and therefore, the Contracts do not provide an exhaustive and exclusive list of mandatory methods of providing notice.

Here, it is undisputed that, on September 11, 2012, Keith Trawick, on behalf of Global, sent an Email to Paramount giving "notice" of termination.[100] There is no dispute that Global sent the notice via email, not by "certified mail, return receipt requested to the other party addressed to the last known address."[101] However, because the notice provision of the parties' Contracts is permissive, not mandatory, Global's September 11, 2012 notice fulfills the notice requirement in the Contracts. Therefore, there is no breach by Global in regard to the form of its notice.

---

[98] *Id.*

[99] *See* Contracts at section entitled "Notice" (emphasis added).

[100] *See* Sept. 11, 2012 Trawick Email.

[101] *See* Contracts at section entitled "Notice" (emphasis added).

Beyond that, Paramount waived any requirement that the notice be "certified mail, return receipt requested to the other party addressed to the last known address." Waiver is defined as "the intentional relinquishment of a known right."[102] "[W]aiver of a contractual right occurs when a party to a contract intentionally acts in a manner inconsistent with its contractual rights, and, as a result, prejudice accrues to the opposing party or parties to the contract."[103] Proof of waiver requires three distinct elements: "(1) an existing right, benefit, or advantage; (2) knowledge of its existence; and (3) an intention to relinquish the right."[104]

It is undisputed that Global's termination notice addresses only the a contract dated September 11, 2009, not the 2008 or 2011 Contracts. Nevertheless, Paramount knew of the Notice provision within the Contracts, knew that it had received notice in the form of an Email limited to one of the 2009 Contracts but did nothing subsequent to the September 11, 2012 notice that was inconsistent with Paramount's recognition of a termination of all the Contracts.

There are many indicia of Paramount's knowing intention to relinquish the right of proper notice under the Contracts. Upon receipt of Global's notice, Paramount called the notice "official" in its internal e-mails and began cooperating with Global to terminate the Contracts.[105] Paramount described in its pleadings how thoroughly "[it] began working through all of the data processing, coding and transfer tasks" after receipt of the notice of termination.[106] Paramount engaged in numerous emails and telephone

---

[102] *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 939–40 (Utah 1993).

[103] *Meadow Valley Contrs., Inc. v. State DOT*, 266 P.3d 671, 682–83 (Utah 2011).

[104] *Soter's*, 857 P.2d at 940–42.

[105] *See* Sept. 11, 2012 Bendixen Email.

[106] Counterclaim ¶¶ 46–42, at 25–26.

calls with both Global and L.A. Fitness regarding the transfer of the Member Account Data for all thirty-six clubs. It is abundantly clear that whatever may have been lacking in Global's notice of termination, Paramount took it as an official notice that set in motion the complete termination of all of the Contracts.

No one claims the Contracts survived beyond 45 days following Global's September 11, 2012 notice, and Paramount was not prejudiced in any way by receiving the notice of termination by email. Thus, even if Global might otherwise have breached the parties Contracts by failing to specifically refer to the 2008 and 2011 Contracts in the September 11, 2012 email, that breach was waived by Paramount through its conduct.

**D. Both Parties Performed Under the Contracts Until Simultaneously Breaching them: FRAI Breached the Parties' Contracts by Withholding Funds Beyond the 45-Day Termination Period While Global Breached the Parties' Contracts by Failing to Pay Termination Fees.**

In its Amended Complaint, Global alleged that Global "performed its obligations" under the Contracts and that Paramount breached one or more of the Contracts and/or the covenant of good faith and fair dealing implied in the Contracts by "withholding the funds associated with the membership dues and it's [sic] servicing of the Member Accounts."[107] Paramount's Motion on Breach states, in defense to Global's breach of contract and breach of the implied covenant claims, that Global is obligated under the parties' Contracts to pay certain termination or exits fees, and that Global has wholly failed to perform that obligation.[108] Paramount further contends that, as Global failed to pay any of the contractually required termination or exits fees, Paramount was entitled to withhold certain membership dues to offset, *inter alia*, the termination

---

[107] *See* Amended Complaint ¶¶ 61–66, at Count IV, and ¶¶ 67–73, at Count V.

[108] *See* Paramount's Motion on Breach at 19–20.

or exit fees owed by Global.[109] Finally, Paramount contends that it was legally entitled to an offset, even if the Contracts did not expressly provide any such right, under the doctrine of setoff.[110]

> 1. Global Breached the Contracts by Failing to Pay Contractually Required Termination or Exit Fees.

It is undisputed that each of the Contracts states that "[f]unds may be held during [the 45-day termination period] to offset returned payments or extra fees."[111] Additional termination fees and/or conditions are set forth in each of the Contracts.[112] For example, the Term provision of the 2008 Contracts states that if Global "terminates this agreement [then FRAI] shall be entitled to its cost of providing additional information or reports for the transfer of data to [Global] or its agents, plus a five dollar fee per account plus accumulated late fees and banking fees."[113] As stated above, the foregoing provisions of the 2008 Contracts remain in full force and effect for the locations covered by the 2008 Contracts.[114] While the total amount of termination fees falling under the foregoing provision remains to be determined at trial, Paramount is unambiguously contractually entitled to such fees as a matter of law.

Similarly, the Term provisions of the 2009 and 2011 Contracts each state that if Global "terminates this agreement [then FRAI] shall be entitled to its costs of providing additional information or reports for the transfer of data to [Global] or its agent, such costs not to exceed $2500."[115] As a matter of law, under this unambiguous language, Paramount is entitled one

---

[109] *Id.*

[110] *Id.*

[111] *See* Contracts at section entitled "Term".

[112] *Id.*

[113] 2008 Contracts at section entitled "Term".

[114] *Id.*

[115] 2009 Contracts and 2011 Contracts at sections entitled "Term".

$2,500 termination fee under the 2009 Contracts and one $2,500 termination fee under each of the two 2011 Contracts. Therefore, a total of $7,500 in termination fees is owed under the Term provisions of these three Contracts.[116]

Finally, as matter of law, the "extra fees" referenced in the Term provisions of each of the parties' Contracts refers specifically to the "Extra Payment" provisions of the Contracts.[117] While the total amount of termination fees falling under these provisions remains to be determined at trial, Paramount is unambiguously contractually entitled to such fees as a matter of law, and Global breached the parties' Contracts by failing to pay the termination or exit fees.

2.  Paramount Breached the Contracts by Withholding Funds Beyond the 45-Day Termination Period.

It is undisputed that on October 11, 2012 Paramount transferred the Member Account Data to Global. At that time, the parties had not resolved issues of setting the reserve amount or determining the amount of termination fees and other payments that Global needed to pay upon termination.[118] The Contracts contemplated that the parties would resolve those amounts during the 45-day termination period,[119] but that did not happen.[120] However, FRAI was contractually obligated to transfer other funds associated with the membership dues to Global. While FRAI was contractually entitled to withhold funds to offset return payments or extra fees, the Contracts facially limit FRAI's right to withhold additional amounts to the 45-day termination period.[121] Although the period of months during which Paramount could withhold funds in reserve for chargebacks and returns was unspecified, those funds should have been remitted by now.

---

[116] *Id.*

[117] Contracts at sections entitled "Term" and "Extra Payment".

[118] *See* Exit Term Emails.

[119] Contracts at sections entitled "Term" and "Extra Payment".

[120] *See* Exit Term Emails.

[121] *See* Contracts at section entitled "Term".

While the total amount of Withheld Funds that Paramount owes to Global remains to be determined at trial, Global is unambiguously contractually entitled to the owed funds as a matter of law, although they may be offset by chargebacks, returns, and unpaid fees that Global owes to Paramount.

       3.   Neither Party's Breach Excused the Other Party from Performing; Damages Remain to be Determined.

In order for either party to succeed on a claim for breach of contract, it must show, among the other elements of breach of contract, that it performed under the Contracts.[122] On one hand, FRAI is unambiguously contractually entitled to at least some termination or exit fees. On the other hand, Global is unambiguously contractually entitled to the Withheld Funds that exceed legitimate chargebacks or returns. Because the Contracts contemplated that the parties would resolve the foregoing amounts during the 45-day termination period,[123] FRAI's duty to remit Withheld Funds and Global's duty to pay termination or exit fees are mutually dependent and connected to the termination. In other words, FRAI's duties depend on Global's duties and vice-versa. Although both parties breached, meaning neither can show perfect performance of the Contracts, they breached their respective but mutually dependent contractual duties concurrently. Therefore, at the time the breaches occurred, both parties had sufficiently performed, and neither party's breach preceded the other's, thereby excusing the other party from performing.

Accordingly, Global's breach of contract claim as to the Withheld Funds survives Paramount's Motion on Breach.

---

[122] *See Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[123] Contracts at sections entitled "Term" and "Extra Payment".

### E.   Conclusion: Global and Paramount Are Both Liable for Breach of Contract; Damages and Offsets Remain to Be Determined at Trial.

Under the above conclusions of law, specifically that Global and FRAI both breached the parties' Contracts and that neither party's breach excused the other party from performing, Global's breach of contract claim survives Paramount's Motion on Breach. FRAI's liability for breach of contract has been conclusively decided in this order. However, the amount of damages owed to Global for FRAI's breach of contract remains to be determined at trial. Moreover, such damages, if any, must be determined alongside Paramount's damages for Global's breach of the Contracts in failing to pay required exit and termination fees. Damages will be tried before a jury as presently scheduled. Once damages are fully adjudicated at trial, the amounts will be offset, and motions will then be entertained regarding prevailing party status and an award of attorneys' fees, if any.

## II.   Global's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every contract.[124] Under the implied covenant of good faith and fair dealing, each party promises that it will not intentionally do anything that will destroy or injure the other party's right to receive the fruits of the contract.[125] Utah courts "have determined that a party must exercise [even] express rights awarded under a contract reasonably and in good faith."[126] In short, the covenant requires parties

---

[124] *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991) (citing *Bastian v. Cedar Hills Investment & Land Co.*, 632 P.2d 818, 821 (Utah 1981)).

[125] *Id.*

[126] *Olympus Hills Shopping Ctr. v. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 450 (Utah Ct. App. 1994) (citations omitted); *see Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991) (contract rights should be exercised in good faith); *Res. Mgmt. Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1028, 1037 (Utah 1985) (party must exercise rights under contract reasonably and in good faith); *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 311 (Utah 1982) (party has duty to exercise all rights under contract reasonably and in good faith); *Ted R. Brown and Assocs., Inc. v. Carnes Corp.*, 753 P.2d 964, 970 (Utah Ct. App. 1988) (party must exercise express rights in good faith).

to deal fairly with each other.[127] "The scope of the implied covenant is determined by the factual setting in which it is found."[128] The question of whether the covenant has been breached can only be determined in light of all the circumstances, including the parties' purposes, intentions and expectations, not only within the express terms of the contract, but also based on the parties' course of dealing and conduct.[129]

For the reasons stated more fully below, summary judgment is GRANTED to Paramount on Global's claim for breach of the covenant of good faith and fair dealing because (A) the Contracts permitted Paramount's retention of the Member Account Data, and (B) no facts show that Paramount acted in bad faith in retaining the Withheld Funds.

### A. Global Cannot Maintain A Claim for Breach of the Implied Covenant Premised on Paramount's Retention of the Member Account Data Where the Contracts Permitted FRAI's Retention.

"The reach of the implied covenant of good faith and fair dealing extends no further than the purposes and express terms of the contract."[130] Accordingly, courts "will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves," nor will Utah courts "construe the covenant to establish new, independent rights or duties not agreed upon by the parties."[131] Thus, "where there is no breach of an express covenant in a contract, there can be no cause of action for breach of an implied covenant arising

---

[127] *Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1113 (10th Cir. 2009) (deciding a breach of the covenant based on Utah law).

[128] *Berube v. Fashion Centre*, 771 P.2d 1033, 1046 (Utah 1989).

[129] *Brown v. Moore,* 973 P.2d 950, 954 (Utah 1998) (citing *St. Benedict's Dev. Co.*, 811 P.2d at 200) ("In determining whether a party has breached the covenant of good faith and fair dealing, we are not limited to an examination of the express contractual provisions; we will also consider the course of dealings between the parties."))

[130] *Bichler v. DEI Sys., Inc.*, 220 P.3d 1203, 1207–08 (Utah 2009).

[131] *Brown v. Moore,* 973 P.2d 950, 954 (Utah 1998) (internal citations and quotation marks omitted).

therefrom."[132] Finally, it goes without saying that where a party to a contract takes action consistent with the contract, there is no breach.[133]

Notwithstanding Global's voluntary dismissal[134] of its breach of contract claim based on Paramount's refusal to transfer the Member Account Data before the termination of the Contracts, Global's Amended Complaint continues to assert a claim for breach of the implied covenant for Paramount's "refus[al] and/or fail[ure] to provide the Member[] Account Data."[135] As FRAI was entitled to exercise its contractual rights to retain the Membership Account Data until October 26, 2012, Global's breach of the implied covenant claim premised on this very conduct cannot be maintained.

Accordingly, Paramount's Motion is GRANTED with respect to Global's breach of the implied covenant claim premised on Paramount's withholding of the Member Account Data.[136]

### B. Global Cannot Maintain A Claim for Breach of the Implied Covenant Premised on Paramount's Withholding of Funds Because the Undisputed Facts Show that Paramount Acted in an Effort to Perform the Contracts, Not in Bad Faith.

As stated above, where a party to a contract takes action consistent with the contract, there is no breach of the implied covenant of good faith and fair dealing.[137] The majority of Global's bad faith arguments revolved around Paramount's retention of the Member Account Data, alleging that Paramount effectively held the data hostage in order to extort higher termination fees than allowed by the Contracts. However, in relation to the Withheld Funds,

---

[132] *See Asael Farr & Sons Co. v. Truck Ins. Exch.*, 193 P.3d 650, 662 (Utah Ct. App. 2008).

[133] *See U.S.A. United Staffing Alliance v. Workers' Compensation Fund*, 213 P.3d 20, 24–26 (Utah Ct. App. 2009).

[134] *See* Global's Motion to Voluntarily Dismiss Breach on Data Transfers; Memorandum Decision and Order Granting Plaintiff's Motion for Voluntary Dismissal with Prejudice, docket no. 244, filed March 30, 2015.

[135] *See* Amended Complaint ¶¶ 67–73, at Count V.

[136] *See id.*; *id.* ¶¶ 61–66 at Count IV.

[137] *See U.S.A. United Staffing Alliance v. Workers' Compensation Fund*, 213 P.3d 20, 24–26 (Utah Ct. App. 2009).

there are no facts that would support a claim of breach of the implied covenant of good faith and fair dealing.

None of the facts Global says support bad faith are included in the undisputed record, but they still do not show bad faith. Global focuses on Paramount's internal communication, purportedly showing that Paramount was concerned that cooperating with Global would result in Global not paying all of its termination and exit fees, etc. This is not evidence of bad faith: this is evidence of Paramount's concern that the Contracts be performed. Paramount's desire to see that its contractual rights are protected and that Global's contractual obligations are met cannot constitute bad faith. Rather, it is evidence of a good faith effort to perform the Contracts. Both parties have stated that the Contracts are "not great,"[138] and Paramount cannot be punished for trying, in good faith, to ensure performance under the Contracts simply because they are "not great." Any remedy Global has for the Withheld Funds is in its claim for breach of contract.

Accordingly, Paramount's Motion is GRANTED with respect to Global's breach of the implied covenant claim premised on Paramount's withholding of funds to which Global may be entitled.

---

[138] *See, e.g.,* Transcript 4/27/15 66:1–2, docket no. 249, filed May 5, 2015.

## ORDER

IT IS HEREBY ORDERED that Paramount's Defendants' Motion RE Breach of Contract and the Implied Covenant[139] is GRANTED in part as it relates to Global's breach of the implied covenant claim and DENIED in part as it relates to Global's breach of contract claim premised on the Withheld Funds, although liability has been determined as a matter of law.

Dated August 31, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[139] Docket no. 111, filed Aug. 4, 2014.