IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FITNESS HOLDINGS, LLC,<br><br>                Plaintiff,<br>v.<br><br>FEDERAL RECOVERY ACCEPTANCE,<br>INC. and FEDERAL RECOVERY<br>SERVICES, INC.,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [108] DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CONVERSION CLAIM**<br><br>Case No. 2:13-cv-00204-DN<br><br>District Judge David Nuffer |

This case is a dispute between a former owner of physical fitness clubs and one of its billing services providers regarding the parties' obligations to each other at the termination of their contractual relationship. Plaintiff Global Fitness Holdings, LLC ("Global") filed this suit in October 2012 against two related entities (collectively "Paramount"), Federal Recovery Acceptance, Inc. ("FRAI") and Federal Recovery Services, Inc. ("FRSI"). Global brought claims for tortious interference,[1] promissory estoppel,[2] conversion,[3] breach of contract,[4] and breach of the covenant of good faith and fair dealing.[5] All the claims arise out of the alleged refusal of Paramount to cooperate with Global when Global was acquired by Fitness & Sports Clubs, LLC ("L.A. Fitness"),[6] a non-party to this litigation. Paramount provided the billing services for Global's large membership base.

---

[1] Global Fitness Holding, LLC's Amended Complaint ("Amended Complaint") ¶¶ 38–45, docket no. 71, filed Mar. 19, 2014.

[2] *Id.* ¶¶ 46–52.

[3] *Id.* ¶¶ 53–60.

[4] *Id.* ¶¶ 61–66.

[5] *Id.* ¶¶ 67–73.

[6] *See generally* Amended Complaint.

In the Global–L.A. Fitness Asset Purchase Agreement ("APA"), Global was to transfer customer data to L.A. Fitness, but Global claims Federal Recovery wrongfully withheld the data pending Global's payment of termination fees to Federal Recovery.[7] Global also alleges Federal Recovery withheld over $500,000 in funds owed to Global.[8] Federal Recovery denies wrongdoing in withholding the data and funds, and has now filed several motions for summary judgment on all of Global's claims,[9] including the breach of contract claim related to data transfer that Global voluntarily dismissed.[10]

Paramount filed several motions for partial summary judgment as to various claims. This order GRANTS Paramount's motion for partial summary judgment on Global's conversion claim.[11]

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 3
STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 5
    I.      Element 1: The Plaintiff Had Legal Title to the Converted Property. .................. 6
    II.    Element 2: The Plaintiff Had Possession of the Property or the Right to Possess It at the Time of the Alleged Conversion. .......................................................... 6
    III.   Element 3: The Defendant's Act Was the Legal Cause of the Plaintiff's Loss of the Property. ......................................................................................................... 10
    IV.   Element 4: The Plaintiff Suffered Damage by the Loss of the Property. ............. 11

---

[7] Amended Complaint ¶¶ 64–65.

[8] *Id.* ¶¶ 61–63, 65–66.

[9] Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim, docket no. 106, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim and Supporting Memorandum, docket no. 108, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims and Memorandum in Support Thereof ("Breach Motion"), docket no. 111, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment on Global's Tortious Interference Claim, docket no. 120, filed under seal Aug. 4, 2014;  and Defendants' Motion for Partial Summary Judgment RE: Global's Tortious Interference Claim for Lack of Causation and Memorandum in Support Thereof, docket no. 121,filed under seal Aug. 4, 2014.

[10] Global Fitness, LLC's Motion for Voluntary Dismissal of its Breach of Contract Claim Against Federal Recovery Acceptance, Inc. as it Relates to the Transfer of Data, docket no. 132, filed Sept. 4, 2014 ("Motion for Voluntary Dismissal").

[11] Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim ("Paramount's Motion on Conversion"), docket no. 108, filed Aug. 4, 2014.

V.      Claim for Conversion of Monies Not Available Where Monies Also Allegedly Owed Pursuant to Contract ................................................................................ 11

SUMMARY JUDGMENT STANDARD ................................................................................ 12

APPLICABLE LAW ............................................................................................................. 13

ANALYSIS ............................................................................................................................ 13

      I.      Summary Judgment Is Granted to Paramount on Global's Claim for Conversion of the Withheld Funds Because Claims for Conversion of Monies Are Not Available Where the Monies Are Also Allegedly Owed Pursuant to Contract.... 13

      II.     Global's Claim for Conversion of the Billing Information Fails on Multiple Grounds .......................................................................................................... 15

            A.      Kentucky Law Does Not Support A Claim for Conversion of Intangibles. ................................................................................................................. 16

            B.      Global Did Not Hold Legal Title to the Billing Information. ................... 18

            C.      Global Had Neither Exclusive Possession Nor the Right to Exclusive Possession of the Billing Information at the Time of the Alleged Conversion. .............................................................................................. 19

            D.      Global Did Not Suffer A Loss Of The Billing Information ...................... 22

      III.     Global's Dependent Claim for Punitive Damages Premised on Conversion Must Also Necessarily Fail. .......................................................................................... 24

ORDER .................................................................................................................................. 24

## BACKGROUND

At all relevant times prior to October 2012, Global owned and operated multiple fitness centers in multiple states.[12] Beginning in 2008, Global began contracting with FRAI for FRAI to process billing and collections for customers of certain Global facilities (the data processed by FRAI is the "Member Account Data").[13] The Member Account Data included not only information about the customers' purchases and preferences, but also their personal credit card ("CC") and bank account transfer ("ACH") information (collectively the "Billing Information") used to charge those customers for using Global's fitness centers.[14]

---

[12] Amended Complaint ¶ 7.

[13] Defendants' Amended Answer to Plaintiff's Amended Complaint and Counterclaim ("Counterclaim") ¶ 19, docket no. 85, filed April 22, 2014.

[14] Amended Complaint at ¶ 9, docket no. 71, filed Mar. 19, 2014.

In 2008, Global and FRAI executed eight location-specific contracts (the "2008 Contracts");[15] in 2009, Global and FRAI executed two additional contracts: one amending the 2008 Contracts (the "Existing Locations Agreement") and another to govern all remaining locations (the "New Location Agreement");[16] and in 2011, Global and FRAI executed two more location-specific contracts (the "2011 Contracts")[17] (the 12 contracts collectively are the "Contracts"). FRAI contracted with FRSI to perform the services necessary for FRAI to fulfill its obligations under the Contracts.[18]

In its conversion claim, Global contends that Paramount converted Global's customers' Billing Information.[19] Global also contends that Paramount converted certain monies that Global's customers paid to Paramount but that Paramount withheld from Global (the "Withheld Funds").[20]

Paramount filed its motion[21] on Global's conversion claim on August 4, 2014, seeking summary judgment on Global's conversion claim both as it pertains to the Billing Information and the Withheld Funds. Global filed an opposition[22] on September 4, 2014, and Paramount filed

---

[15] Counterclaim ¶ 19. *See also* Contracts (dated 2008), attached as Exhibit D to Paramount's Motion for Partial on Conversion, docket no. 108-5, filed Aug. 4, 2014.

[16] Amended Complaint ¶ 13; Counterclaim ¶ 23. *See also* Contracts (dated 2009).

[17] Counterclaim ¶ 24. *See also* Contracts (dated 2011).

[18] Amended Complaint ¶¶ 14–16.

[19] Amended Complaint ¶¶ 53–60, at Count III.

[20] *Id.*

[21] *See* Paramount's Motion on Conversion.

[22] Global Fitness Holdings, LLC's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment for Plaintiff's Conversion Claim ("Global's Opposition on Conversion"), docket no. 141, filed Sep. 4, 2014.

a reply[23] on September 22, 2014. Oral argument on Paramount's Motion on Conversion was held on April 27, 2015.[24]

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The below collection of undisputed material facts is distilled from the above listed filings. Paramount's Motion on Conversion provided a statement of facts[25] and supporting exhibits. Global's Opposition on Conversion responded to Paramount's statement of facts[26] and provided a statement of additional facts[27] and its own set of exhibits. Paramount's Reply on Conversion replied to Global's responses to Paramount's statement of facts[28] and responded to Global's additional facts.[29]

An email was sent to counsel with a summary set of undisputed facts on April 24, 2015.[30] That summary was reviewed at the start of the hearing on April 27, 2015.[31] The below collection of undisputed facts was finalized following the April 27, 2015 hearing based on discussion at the hearing.[32] The headings in the statement of facts are descriptive, not declaratory or substantive, and they are taken from the elements as described in the parties' motions.

---

[23] Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim ("Paramount's Reply on Conversion"), docket no. 166, filed Sep. 22, 2014.

[24] *See* Minute Order, docket no. 247, filed April 27, 2015; *see also* Transcript 4/27/15, docket no. 249, filed May 5, 2015.

[25] Paramount's Motion on Conversion at 4–14.

[26] Global's Opposition on Conversion at 8–14.

[27] *Id.* at 14–15.

[28] Paramount's Reply on Conversion at 4–29.

[29] *Id.* at 29–35.

[30] Email from Judge Nuffer's Chambers to counsel (Apr. 24, 2015), lodged as docket no. 272 on Aug. 31, 2015.

[31] Minute Entry, docket no. 247, filed Apr. 27, 2015; Transcript 4/27/15 9:22–30:20, docket no. 249, filed May 5, 2015.

[32] *Id.*

## I.     Element 1: The Plaintiff Had Legal Title to the Converted Property.

1.      In its Amended Complaint, Global alleges that Paramount was "in possession of member accounts data and monies that are the property of Global Fitness and were only provided to Paramount pursuant to the terms of the Agreement."[33]

2.      At all relevant times, Paramount provided to Global all of the data that Paramount processed on behalf of Global and its customers that Global requested except for when Global requested, between October 3 and 10, 2012, those customers' personal credit card and ACH billing information.[34]

3.      As part of its operations, Global contracted with its members for access to fitness centers and personal training services (the "Membership Contracts"). As part of these Membership Contracts, members often provided Global with either credit card or bank account information so that Global could regularly invoice the members for their use of the fitness centers and personal training amenities.[35]

## II.     Element 2: The Plaintiff Had Possession of the Property or the Right to Possess It at the Time of the Alleged Conversion.

4.      In its Amended Complaint, Global alleges that Paramount was "in the possession of member accounts data and monies that are the property of Global Fitness and were only provided to Paramount pursuant to the terms of the Agreement. Global Fitness was entitled to immediate possession of the member accounts data."[36]

---

[33] Amended Complaint ¶ 54, at Count III.

[34] *Id.* ¶¶ 26–28; Declaration of Todd Rasmussen ¶ 5, attached as Exhibit A to Paramount's Motion on Conversion, docket no. 108-2, filed Aug. 4, 2014.

[35] *See* Example of Global Fitness Membership Contract, attached as Exhibit B to Global's Opposition on Conversion, docket no. 142-2, filed Sep. 4, 2014.

[36] Amended Complaint ¶¶ 54–55, at Count III

5.      Global and FRAI executed multiple contracts with each other regarding Paramount's management of certain member account data.[37]

6.      Each of the Contracts between Global and FRAI contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[38]

7.      Each of the Contracts further states that "[f]unds may be held during such period to offset returned payments or extra fees."[39] Additional termination fees and/or conditions are set forth in each of the Contracts.[40]

8.      Each of the Contracts between Global and FRAI contain, inter alia, the following notice provision: "One party may make any notice required under this Agreement by providing written notice sent certified mail, return receipt requested to the other party addressed to the last known address…."[41]

9.      Each of the Contracts also states: "This Agreement may not be amended or modified at any time and no provision may be waived, except by an instrument in writing executed by the COMPANY and CONTRACTOR, or either of them in case of a waiver."[42]

10.     Paramount provided copies of the Membership Contracts to Global on August 30, 2012.[43]

---

[37] *See* Contracts.

[38] *Id.* at section entitled "Term"; *see also* Deposition of Global dated May 1, 2014 (deponent: Coby DeVary) ("DeVary Depo.") at 12:24–13:24, excerpts attached as Exhibit E to Paramount's Motion on Conversion, docket no. 108-6, filed under seal in docket no. 118-1, filed on Aug. 4, 2014.

[39] Contracts at section entitled "Term".

[40] *See id.*

[41] *Id.* at section entitled "Notice".

[42] *Id.* at section entitled "Amendment".

[43] *See* Emails between Keith Trawick and Todd Rasmussen dated Aug. 30, 2012, attached as Exhibit 2 to Paramount's Reply on Conversion, docket no. 166-2, filed Sep. 22, 2014.

11.     On September 11, 2012, Keith Trawick, on behalf of Global, sent an email to

Paramount stating:

> Pursuant to the terms of our agreement with you, dated September 11, 2009, 45
> day notice is hereby given for the termination of the Agreement. As we discussed,
> the clubs have been sold to L.A. Fitness and at this time, we are unsure of the
> exact closing date. As specific information becomes available, we will let you
> know. It is our understanding that you guys will continue to provide service until
> the official closing date. [44]

12.     Global sent the foregoing "notice" of termination via email,[45] not by "certified

mail, return receipt requested to the other party addressed to the last known address" as required

under each of the Contracts. [46]

13.     Mr. Trawick's September 11, 2012 email was Global's first attempted written

termination of any of the Contracts.[47]

14.     Mr. Trawick's September 11, 2012 email addresses only a Contract dated

September 11, 2009.[48]

15.     Forty-five days after September 11, 2012, is October 26, 2012.[49]

16.     The first date that Global made a written request to Paramount to transfer all of

the Member Account Data, including CC and ACH information that it was processing for Global

---

[44] *See* Sept. 11, 2012 email from K. Trawick to S. Nelson, et al. ("Sept. 11, 2012 Trawick Email"), attached as
Exhibit F to Paramount's Motion on Conversion, docket no. 108-7, filed Aug. 4, 2014, also attached as Exhibit L to
Global's Opposition on Conversion, docket no. 142-12, filed Sep. 4, 2014.

[45] *Id.*

[46] Contracts at section entitled "Notice".

[47] Deposition of Denver Pratt ("Pratt Depo.") at 36:22–38:7, excerpts attached as Exhibit M to Paramount's Motion
on Conversion, docket no. 108-14, filed Aug. 4, 2014.

[48] *See* Sept. 11, 2012 Trawick Email.

[49] Paramount requested judicial notice of this fact.

was October 3, 2012, via email, when Global asked that Paramount provide the Member

Account Data by October 5, 2012.[50]

17.    Historically, Defendants always provided Global Fitness with any requested

Member Account Data; CC and ACH information was not included.[51]

18.    On October 3, 2012, when Global made a demand for the return of its Member

Account Data, including the Billing Information, internal correspondence from Paramount

demonstrates that Paramount was concerned that complying with Global's request would leave

Paramount with a possible inability to collect their termination fees.[52]

19.    On October 11, 2012, Paramount provided to Global all of the data that

Paramount had been processing under its contractual relationship with Global.[53]

---

[50] *See* Oct. 3, 2012 Email from K. Trawick to S. Nelson, et al. ("Oct. 3, 2012 Trawick Email"), attached as Exhibit G to Paramount's Motion on Conversion, docket no. 108-8, filed Aug. 4, 2014, also attached as Exhibit M to Global's Opposition on Conversion, docket no. 142-13, filed Sep. 4, 2014 ("We are asking for a full cut of the data on Friday…. Please confirm. Also, we will need an additional (updated) cut of the same data on the date of the actual close, which we anticipate will be next week."); *see also* Amended Complaint ¶ 28 ("On October 3, 2012, Global[] requested that Paramount transfer the Billing Data or final cut back to Global…."); *see also* Oct. 9, 2012 correspondence from K. Trawick to G. Bendixen ("Oct. 9, 2012 Trawick Letter"), attached as Exhibit H to Paramount's Motion on Conversion, docket no. 108-9, filed Aug. 4, 2014 (referencing Global's initial request on October 3, 2012)

[51] Counterclaim ¶¶ 46–47, at 25–26; *see also* Oct. 9, 2012 Trawick Letter ¶ 5.

[52] *See* Oct. 3, 2012 Email from Glen Bendixen to Ren Rice and Kenneth Melby, attached as Exhibit X to Global's Opposition on  Conversion, docket no. 142-24, filed Sep. 4, 2014 ("We can't give them the detailed account information until we have the reserve we need . . . . [T]hey're trying to pull a fast once[sic] so we have no reserve . . . ."); *see also* Oct. 3, 2012 E-mail from Glen Bendixen to Sid Nelson et al., attached as Exhibit Y to Global's Opposition on  Conversion, docket no. 142-25, filed Sep. 4, 2014; *and* Oct. 3, 2012 E-mail chain from Todd Rasmussen to Glen Bendixen, attached as Exhibit Z to Global's Opposition on Conversion, docket no. 142-26, filed Sep. 4, 2014 ("[t]he billing info is the only card we have left").

[53] *See* Oct. 11, 2012 forwarded email from K. Trawick to S. Horton-Salcedo, et al. ("Oct. 11, 2012 Forwarded Email"), attached as Exhibit I to Paramount's Motion on Conversion, docket no. 108-10, filed under seal in docket no. 118-2, filed Aug. 4, 2014 ("The PAC data is available on your FTP site."); *see also* Deposition of L.A. Fitness dated Apr. 22, 2014 (deponent: Kathy Polson) ("Polson Depo.") at 189:9–190:14, excerpts attached as Exhibit J to Paramount's Motion on Conversion, docket no. 108-11, filed under seal in docket no. 118-3, filed Aug. 4, 2014 (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Deposition of Roy Keith Trawick, Jr. dated Mar. 18, 2014 ("Trawick Depo.") at 262:19–23, attached as Exhibit B to Paramount's Motion on Conversion, docket no. 108-3, filed Aug. 4, 2014 (acknowledging that Paramount transferred the Member Accounts Data on October 11, 2012).

20.     As of October 11, 2012, the date that Paramount transferred the Member Account Data to Global, the parties had not resolved issues of setting the reserve amount, determining the amount of fees, and other payments the terminating club owner needs to pay upon termination.[54]

21.     Paramount ceased all servicing under the contracts on October 25, 2012.[55]

## III.    Element 3: The Defendant's Act Was the Legal Cause of the Plaintiff's Loss of the Property.

22.     In its Amended Complaint, Global alleges it "suffered from the loss of its funds as well as irreparable harm and loss because Paramount and/or FRSI's actions have knowingly harmed Global Fitness's APA with L.A. Fitness and Global Fitness's dealings with other parties."[56]

23.     In October 2012, during all of the time that Paramount processed Member Account Data for Global, that data was neither lost nor harmed in any measurable manner.[57]

24.     The first date that Global made a written request to Paramount to transfer all of the Member Account Data that it was processing for Global was October 3, 2012, via email, when Global asked that Paramount provide the Member Account Data by October 5, 2012. [58]

---

[54] *See* various emails between the parties and their counsel ranging from October 5, 2012 to October 10, 2012 showing the exit terms were not resolved, collectively attached as Exhibit L to Paramount's Motion on Conversion, docket no. 108-13, filed Aug. 4, 2014; also attached in part to Global's Opposition on Conversion as Exhibit 9, docket no. 142-16; Exhibit Q, docket no. 142-17; and Exhibit DD, docket no. 142-30, filed Sep. 4, 2014.

[55] Deposition of Glen Bendixen ("Bendixen Depo."), at 219:19–220:4, attached as Exhibit R to Paramount's Motion on Conversion, docket no. 142-18, filed Sep. 4, 2014 ("[T]here must have been a point in time where, when we were calculating making us whole for the remainder part of the month, that the estimate was $120,000. But because the sale didn't complete until the [25th] of October, we continued to service the accounts and - - and continued to collect the fees during that period of time. So - - . . . During that entire period, we would have collected our normal fees.").

[56] Amended Complaint ¶ 59, at Count III.

[57] *See* Declaration of Todd Rasmussen ¶ 7, attached as Exhibit A to Paramount's Motion on Conversion, docket no. 108-2, filed Aug. 4, 2014.

[58] *See* Oct. 3, 2012 Trawick Email ("We are asking for a full cut of the data on Friday.... Please confirm. Also, we will need an additional (updated) cut of the same data on the date of the actual close, which we anticipate will be next week."); *see also* Amended Complaint ¶ 28 ("On October 3, 2012, Global[] requested that Paramount transfer the Billing Data or final cut back to Global...."); *see also* Oct. 9, 2012 Trawick Letter (referencing Global's initial request on October 3, 2012).

25.     On October 11, 2012, Paramount provided to Global all of the data that Paramount had been processing under its contractual relationship with Global [59]

### IV.    Element 4: The Plaintiff Suffered Damage by the Loss of the Property.

26.     These facts are the same as set forth above for element number three.

### V.    Claim for Conversion of Monies Not Available Where Monies Also Allegedly Owed Pursuant to Contract

27.     In its Amended Complaint, Global alleges that Paramount was "in the possession of . . . monies that are the property of Global Fitness and were only provided to Paramount pursuant to the terms of the Agreement."[60]

28.     In its Amended Complaint, Global alleges: "Despite receiving repeated requests that Paramount return . . . its monies to Global Fitness, Paramount knowingly and willfully interfered with Global Fitness's property . . . ."[61]

29.     In its Amended Complaint, Global alleges that Paramount withheld from Global "funds associated with the membership dues of Global Fitness's Member Accounts."[62]

30.     In "Count IV – Breach of Contract" of its Amended Complaint, Global alleges that the 2009 "Agreement executed by Paramount and Global Fitness was entered into for the legal purpose of mandating that Paramount service Global Fitness's Member Accounts and transfer to Global Fitness, exclusive of Paramount's fees, the funds associated with membership dues."[63]

---

[59] *See* Oct. 11, 2012 Forwarded Email ("The PAC data is available on your FTP site."); *see also* Polson Depo. at 189:9–190:14 (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Trawick Depo. at 262:19–23 (same).

[60] Amended Complaint ¶ 54, at Count III.

[61] *Id.* ¶ 56.

[62] *Id.* ¶ 58.

[63] *Id.* ¶ 62

31.     Global and Paramount executed multiple contracts with each other regarding Paramount's management of certain member account data. [64]

32.     Each of the Contracts between Global and Paramount contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[65]

33.     Each of the Contracts further states that "[f]unds may be held during such period to offset returned payments or extra fees."[66] Additional termination fees and/or conditions are set forth in each of the Contracts.[67]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[68] "An issue of material fact is 'genuine' if a reasonable jury could return a verdict for the nonmoving party."[69] In moving for summary judgment, Paramount "bears the burden of showing the absence of a genuine issue of material fact . . . ."[70] However, Paramount "need not negate [Global's] claim[s], but need only point out to the district court 'that there is an absence of evidence to support [Global's] case.'"[71] Upon such a showing, Global "must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which [Global] carries the

---

[64] *See* Contracts.

[65] *Id.* at section entitled "Term"; *see also* DeVary Depo. at 12:24–13:24.

[66] *See* Contracts at section entitled "Term".

[67] *Id.*

[68] Fed. R. Civ. P. 56(a).

[69] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

[70] *Id.* at 1529.

[71] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

burden of proof."[72] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to defeat a properly supported motion for summary judgment."[73]

## APPLICABLE LAW

The parties have stipulated and agreed that Kentucky law applies to Global's conversion claim.[74] Therefore, Kentucky law governs this claim.

## ANALYSIS

In its Amended Complaint, Global alleges that Paramount converted (1) the personal credit card and ACH information of Global's customers (i.e. the Billing Information) and (2) some of the payments that Global's customers made in October, 2012 (i.e. the Withheld Funds).[75] In Paramount's Motion on Conversion, Paramount seeks summary judgment regarding both the Billing Information and the Withheld Funds which would resolve all of Global's third cause of action. For the reasons discussed more fully below, Paramount's Motion on Conversion is GRANTED in Paramount's favor on Global's claim for conversion.

**I.     Summary Judgment Is Granted to Paramount on Global's Claim for Conversion of the Withheld Funds Because Claims for Conversion of Monies Are Not Available Where the Monies Are Also Allegedly Owed Pursuant to Contract.**

Global's claim for conversion as it relates to the Withheld Funds fails independently because the Withheld Funds are monies owed pursuant to the Contracts and, therefore, cannot be recovered under conversion.

Conversion of monies is not treated the same as the conversion of standard chattels. Rather, an action for conversion "may be maintained for the recovery of money physically taken

---

[72] *Id.* (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (internal quotation marks omitted)) (emphasis in original).

[73] *Id.* (quoting *Anderson*, 477 U.S. at 252).

[74] Paramount's Motion on Conversion at 16; *see also, e.g.*, Global's Opposition on Conversion at 8, 15.

[75] Amended Complaint ¶¶ 54–57, at Count III.

by Defendant from Plaintiff's possession," but it "will not lie to enforce a mere obligation to

pay."[76] In addition, a "conversion claim cannot be brought where 'the property right alleged to

have been converted arises entirely from the [plaintiff's] contractual rights.'"[77]

Global and FRAI executed multiple contracts with each other regarding FRAI's

management of the Member Account Data.[78] Each of the Contracts between Global and FRAI

contains the following termination provision: "Contractor or Company may terminate this

Agreement at any time for any reason upon 45 day prior written notice."[79] Each of the Contracts

further states that "[f]unds may be held during such period to offset returned payments or extra

fees."[80] Additional termination fees and/or conditions are set forth in each of the Contracts.[81]

The Contracts clearly contemplate and expressly provide for the withholding of funds until the

Contracts were terminated, and thus, any of the Withheld Fund that Paramount might owe to

Global would be the subject of a contractual dispute, as they are in Global's breach of contract

claim.[82]

In its Amended Complaint, Global alleges (1) that Paramount was "in the possession of

. . . monies that are the property of Global Fitness and were *only provided to [FRAI] pursuant to

the terms of the Agreement*";[83] (2) "Despite receiving repeated requests that [FRAI] return . . . its

---

[76] *Scatuorchio*, 941 F.Supp.2d at 827 (citing *Agnew Truck Serv. v. Ranger Nationwide, Inc.*, No. 90-34 P(J), 1992 WL 437629, at *5, 1992 U.S. Dist. LEXIS 22723, at *13 (W. D. Ky. Apr. 20, 1992).

[77] *Id.* at 827 (citing *Beacon Enter. Solutions Grp. v. MDT Labor, LLC*, No. 3:12-cv-759-H, 2013 WL 253134 at *4, 2013 U.S. Dist. LEXIS 10573 at *13 (W. D. Ky. Jan. 22, 2013); *see also Davis v. Siemens Med. Solutions USA*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005) ("[T]he conversion claim does not lie because the property right alleged to have been converted arises entirely from the contractual rights to compensation.").

[78] *See* Contracts.

[79] *Id.* at section entitled "Term."

[80] *See Id.*

[81] *Id.*

[82] *See* Amended Complaint ¶¶ 61–66.

[83] Amended Complaint ¶ 54 (emphasis added).

monies to Global Fitness, [FRAI] knowingly and willfully interfered with Global Fitness's property . . . .";[84] (3) [FRAI] withheld from Global "funds associated with the membership dues of Global Fitness's Member Accounts";[85] and (4) that *the 2009 "Agreement executed by [FRAI] and Global Fitness was entered into for the legal purpose of mandating that [FRAI] service Global Fitness's Member Accounts and transfer to Global Fitness, exclusive of [FRAI's] fees, the funds associated with membership dues*."[86]

Global cannot maintain a claim for conversion of the Withheld Funds. Any right Paramount had to possess the Withheld Funds is contractual, and any right Global had to recover the Withheld Funds is contractual. Therefore, the withholding of funds by Paramount is a contractual dispute, necessarily evidenced by Global's breach of contract claim regarding the Withheld Funds.[87]

Accordingly, Global's conversion claim regarding the Withheld Funds fails because the dispute is contractual, and summary judgment is granted in Paramount's favor.

## II.   Global's Claim for Conversion of the Billing Information Fails on Multiple Grounds.

In Kentucky, to succeed on a claim for conversion, the plaintiff must prove that:

(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the

---

[84] *Id.* ¶ 56.

[85] *Id.* ¶ 58.

[86] *Id.* ¶ 62 (emphasis added).

[87] *See* Amended  Complaint ¶¶ 61–66.

plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.[88]

There are no genuine disputes as to any material fact on Global's conversion claim, and, for the reasons discussed more fully below, Paramount is entitled to judgment as a matter of law on Global's conversion claim as it relates to the Billing Information on four independent grounds:(A) Kentucky law does not recognize a claim for conversion of intangibles; (B) Global did not have legal title to the Billing Information; (C) Global neither had exclusive possession nor the right to exclusive possession of the Billing Information at the time of the alleged conversion; and (D) Global did not suffer a loss of the Billing Information under Kentucky precedent.

### A. Kentucky Law Does Not Support A Claim for Conversion of Intangibles.

Global's claim for conversion as it relates to the Member Account Data fails because the conversion of intangibles has not been recognized as an actionable tort in Kentucky.

As an initial matter, no Kentucky case supports or even addresses the conversion of intangibles. Moreover, the Restatement of Torts (Second), § 242 states the general proposition that there can be no conversion of intangibles, including things such as names of customers,[89] milk routes,[90] and bakery routes.[91] Global's claim for conversion alleges the conversion of an intangible: the Billing Information.

In Global's Opposition to the Motion RE Conversion, Global argued for the first time that its conversion claim is actually premised on the conversion of the tangible Membership Contracts, not the intangible Billing Information.[92] However, there is nothing in Global's

---

[88] _Kentucky Ass'n of Counties v. McClendon_, 157 S.W.3d 626, 638 n.12 (Ky. 2005) (citing 90 C.J.S. _Trover and Conversion_ § 4 (2004)).

[89] _See, e.g._, _Olschewski v. Hudson_, 262 P. 43 (Cal. Ct. App. 1927); _Illinois Minerals Co. v. McCarty_, 48 N.E.2d 424 (Ill. Ct. App. 1943).

[90] _See, e.g._, _Whiteley v. Foremost Dairies_, 151 F. Supp. 914 (W.D. Ark. 1957), affirmed, 254 F.2d 36 (8th Cir.).

[91] _See, e.g._, _Stern v. Kaufman's Bakery_, 191 N.Y.S.2d 734 (Sup. Ct. 1959).

[92] Global's Opposition on Conversion at 16–19.

Amended Complaint that would support a claim for conversion of the tangible Membership Contracts.[93] Moreover, the undisputed facts show, and counsel for Global agreed in the hearing held on April 27, 2012, that Paramount provided copies of the Membership Contracts to Global on August 30, 2012.[94] Thus, even if Global had alleged conversion of the tangible Membership Contracts, which it did not, Paramount provided those documents to Global, and so there was no conversion of them. At the hearing, counsel for Global stated that Paramount provided copies of the Membership Contracts to Global.[95]

Although Global argued that the conversion claim was for conversion of a chattel, the Membership Contracts, Global's counsel could not sustain that position in oral argument where he specifically stated that the allegedly converted Billing Information was only partially contained in tangible Membership Contracts, with other pieces of Billing Information automatically uploaded digitally to Paramount:

> Sometimes customers would come in and fill out a hard form and that hard form was given to Paramount. Most of the time there was a terminal. A customer would show up. They would tant to, you know, pay for services at Global Fitness' [sic] gyms. They would fill out information on a portal computer. That information was automatically uploaded digitally to Paramount.[96]

To whatever extent Global argues that the focus of the conversion claim is not intangible data but tangible Membership Contracts, the oral argument revealed the true intangible subject matter of the claim.

Accordingly, Global's claim for conversion regarding the Billing Information fails as a matter of law because the conversion of intangibles is not supported by Kentucky law.

---

[93] *See generally* Amended Complaint ¶¶ 55, 57, at Count III.

[94] *See* Emails between Keith Trawick and Todd Rasmussen dated Aug. 30, 2012, attached as Exhibit 2 to Paramount's Reply on Conversion, docket no. 166-2, filed Sep. 22, 2014.

[95] Transcript 4/27/15 79:11–19, docket no. 249, filed May 5, 2015.

[96] *Id.*

**B. Global Did Not Hold Legal Title to the Billing Information.**

Global's claim for conversion as it relates to the Member Account Data also fails independently because Global cannot prove that it had legal title to the Billing Information. Fundamental to the element of holding legal title over the allegedly converted property is that the property must be convertible, which, as discussed above, is not the case here.

Under Kentucky law, in order to prevail on its conversion claim, Global must prove that it "had legal title to the converted property."[97] "A plaintiff asserting a claim of conversion has the burden of establishing title to the converted property."[98] Where the plaintiff fails to prove legal title to the converted property, his or her conversion claim should be dismissed.[99]

Global has not established that it has legal title to its customers' Billing Information. Some of Global's members provided Global with the Billing Information in order to allow Global to bill that member as a part of a membership contract, while some of Global's members provided billing information directly to Paramount.[100] The Billing Information was provided by members as a part of the member's personal account data so the member could access a Global fitness club location. However, while some of Global's customers provided their Billing Information to Global, those customers did not thereby make that information the property of Global. Rather, Global's customers own their credit card and bank account numbers, not Global. The consideration given for a gym membership was money, not ownership or legal title to the bank account information used to transfer that money.

---

[97] *McClendon*, 157 S.W.3d at 638 n.12; *Meade*, 166 S.W.3d at 58; *Scatuorchio*, 941 F. Supp. 2d at 826.

[98] *Scatuorchio*, 941 F. Supp. 2d at 826 (citing *Gateway Auto Auction v. Gen. Motors Acceptance Corp.*, 398 S.W.2d 498, 500 (Ky. 1966) ("In an action for conversion the burden is upon the plaintiff . . . to establish title.")).

[99] *See, e.g., Meade*, 166 S.W.3d 55, 58–59.

[100] *See* Declaration of Todd Rasmussen ("Rasmussen Decl.") ¶¶ 6 and 17, attached as Exhibit 5 to Exhibit Index, docket no. 145-5, filed Sep. 4, 2014.

Specifically, Global's members provided their payment information as authorization to charge against or debit those accounts, not to provide legal title over the account and routing numbers. Global could not withdraw money from a member's accounts or charge a member's credit cards except at the specific times and for the specific amounts that the member had authorized.

Because Global did not have legal title to the Billing Information, it cannot establish the first required element to succeed on a claim for conversion.

### C. Global Had Neither Exclusive Possession Nor the Right to Exclusive Possession of the Billing Information at the Time of the Alleged Conversion.

Beyond the other reasons for granting summary judgment, Global's conversion claim as it relates to the Member Account Data fails independently because Global cannot prove that it had or even had a right to exclusive possession of the Billing Information.

Under the second element conversion, Global must establish that it "had possession of the property or the right to possess it at the time of the conversion."[101] Specifically, "the property converted must be property which the plaintiff has the exclusive right to control."[102] In *Manhattan Associates v. Rider*,[103] the U.S. District Court for the Western District of Kentucky held that because the defendant was "not prohibited from contacting and soliciting plaintiff's customers," "it cannot be said that plaintiff has the 'exclusive right to control' its accounts" with those customers, "and defendant cannot be held liable for an alleged conversion thereof."[104]

In this case, Global has not established that it had possession of the Billing Information or the right to exclusive possession of the Billing Information at the time of the alleged conversion.

---

[101] *McClendon*, 157 S.W.3d at 638 n.12; *Meade*, 166 S.W.3d at 58; *Scatuorchio*, 941 F. Supp. 2d at 826.

[102] *Manhattan Assocs. v. Rider*, No. 3:02CV-265-S, 2002 WL 1774056 at *2, (W.D. Ky. Aug. 1, 2002) (quoting 13 Ky. Prac. Tort Law § 8.4)).

[103] *Id.*

[104] *Id.*

Global and FRAI executed multiple contracts with each other regarding Paramount's management of the Member Account Data.[105] Each of the Contracts between Global and FRAI contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[106] Under the Contracts, Paramount had the right to possess the Billing Information during the life of the Contracts, including the full 45-day termination period, in order to fulfill its duties to service the accounts of Global's members. Without the right to possess the Billing Information, the fundamental purpose of the Contracts would have been frustrated, and Paramount would have been unable to perform. Paramount was obligated to continue servicing the accounts of Global's members during the 45-day termination period. Nothing in the Contracts grants Global a contractual right to end Paramount's possession or demand delivery of the Billing Information before the end of the Contracts, or the 45-day termination period if the Contracts ended in early termination.[107]

On September 11, 2012, Keith Trawick, on behalf of Global, sent an email to Paramount stating:

> Pursuant to the terms of our agreement with you, dated September 11, 2009, 45 day notice is hereby given for the termination of the Agreement. As we discussed, the clubs have been sold to L.A. Fitness and at this time, we are unsure of the exact closing date. As specific information becomes available, we will let you know. It is our understanding that you guys will continue to provide service until the official closing date.[108]

---

[105] *See* Contracts.

[106] *Id.* at section entitled "Term".

[107] *See* Memorandum Decision and Order Granting In Part and Denying In Part [111] Defendants' Motion for Partial Summary Judgment on Plaintiff's Breach of Contract and Breach of the Implied Covenant Claims at Part I(B), docket no. 274, filed Aug. 31, 2015.

[108] *See* Sept. 11, 2012 Trawick Email.

Mr. Trawick's September 11, 2012 email was Global's first attempted written termination of any of the Contracts.[109] Forty-five days after September 11, 2012 was October 26, 2012.[110] The first date that Global made a written request to Paramount to transfer all of the Member Account Data, including the Billing Information that it was processing for Global, was October 3, 2012, when Global asked via email that Paramount provide the Member Account Data by October 5, 2012.[111] Pursuant to an injunctive order in this case, on October 11, 2012, Paramount provided to Global all of the data that Paramount had been processing under its contractual relationship with Global.[112] Paramount subsequently ceased all servicing under the contracts on October 25, 2012.[113] Thus, the time of the alleged conversion in this case was the period from October 5, 2012, the date by which Global asked that the Billing Information be transferred, and October 11, 2012, the date on which the Billing Information was transferred.

Global could not have had a right under the Contracts to exclusive possession of the Billing Information until after the 45-day termination period that was triggered when Global gave notice of termination on September 11, 2012. Thus, Paramount, not Global, had the right to possess the Billing Information during the alleged time of conversion (i.e., from October 5, 2012 through October 11, 2012). Because Paramount transferred the Billing Information back to

---

[109] Pratt Depo. at 36:22–38:7, excerpts attached as Exhibit M to Paramount's Motion RE Conversion, docket no. 108-14, filed Aug. 4, 2014.

[110] Paramount requested judicial notice of this fact.

[111] See Oct. 3, 2012 Trawick Email ("We are asking for a full cut of the data on Friday…. Please confirm. Also, we will need an additional (updated) cut of the same data on the date of the actual close, which we anticipate will be next week."); see also Amended Complaint ¶ 28 ("On October 3, 2012, Global[] requested that Paramount transfer the Billing Data or final cut back to Global…."); see also Oct. 9, 2012 Trawick Letter (referencing Global's initial request on October 3, 2012).

[112] See Oct. 11, 2012 Forwarded Email ("The PAC data is available on your FTP site."); see also Polson Depo. at 189:9–190:14, (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Trawick Depo. at 262:19–23 (same).

[113] Bendixen Depo., at 219:19–220:4 ("[T]here must have been a point in time where, when we were calculating making us whole for the remainder part of the month, that the estimate was $120,000. But because the sale didn't complete until the [25th] of October, we continued to service the accounts and - - and continued to collect the fees during that period of time. So - - . . . During that entire period, we would have collected our normal fees.").

Global on October 11, 2012, long before the October 26 end of the 45-day termination period, Global cannot meet the second element of conversion under Kentucky law.

Accordingly, independent of the other reasons for granting summary judgment, Global's conversion claim regarding the Billing Information fails independently because it cannot prove that it had or was entitled to exclusive possession of the Billing Information.

### D. Global Did Not Suffer A Loss Of The Billing Information.

Even disregarding the other reasons for granting summary judgment, Global's conversion claim fails because Global did not suffer a loss of the Billing Information. Global cannot show that it meets either the sixth or seventh elements of its conversion claim: that "(6) the defendant's act was the legal cause of the plaintiff's loss of the property" and that "(7) the plaintiff suffered damage by the loss of the property."[114].

In *Jones v. Marquis Terminal, Inc.*, the Kentucky Court of Appeals examined a case in which Jones alleged that Marquis Terminal converted Jones's three belt conveyors by using and not returning them for over two years.[115] At the end of trial, the court "ordered Marquis to return the equipment to Jones" instead of awarding Jones conversion damages.[116] Jones appealed, arguing that the court should have awarded him damages because Marquis allegedly "wrongfully converted the equipment."[117] However, the Court of Appeals affirmed the dismissal of Jones's conversion claim, noting that "it does not appear that the rented equipment was physically damaged in any material way."[118]

---

[114] *McClendon*, 157 S.W.3d at 638 n.12.

[115] *See Jones v. Marquis Terminal, Inc.*, Case No. 2013-000702-MR, 2014 WL 2155255 at *1–2, (Ky. Ct. App. May 23, 2014) (unpublished).

[116] *Id.* at *1.

[117] *Id.* at *3.

[118] *Id.* at *4.

Likewise, in this case, in October 2012, during all of the time that Paramount processed

Member Account Data for Global, that data was neither lost nor harmed in any measurable

manner.[119] In addition, the first date that Global made a written request to Paramount to transfer

all of the Member Account Data that it was processing for Global was via email October 3, 2012

when Global asked that Paramount provide the Member Account Data by October 5, 2012.[120] On

October 11, 2012, under an injunctive order, Paramount provided to Global all of the data that

Paramount had been processing under its contractual relationship with Global, in advance of

what was required by the Contracts, as discussed above.[121] Thus, unlike the two-year delay in

*Marquis* that the Kentucky Court of Appeals still found insufficient to support conversion

damages over equitable relief,[122] Paramount provided the Billing Information just six days after

the first production date that Global requested, and weeks before the Contracts required.

Accordingly, independent of the other grounds for granting summary judgment on

Global's conversion claim, it fails independently because Global did not suffer a loss of the

Billing Information and therefore cannot meet either the sixth or seventh elements of conversion.

---

[119] *See* Declaration of Todd Rasmussen ¶ 7, attached as Exhibit A to Paramount's Motion on Conversion, docket no. 108-2, filed Aug. 4, 2014.

[120] *See* Oct. 3, 2012 Trawick Email ("We are asking for a full cut of the data on Friday…. Please confirm. Also, we will need an additional (updated) cut of the same data on the date of the actual close, which we anticipate will be next week."); *see also* Amended Complaint ¶ 28 ("On October 3, 2012, Global[] requested that Paramount transfer the Billing Data or final cut back to Global…."); *see also* Oct. 9, 2012 Trawick Letter (referencing Global's initial request on October 3, 2012).

[121] *See* Oct. 11, 2012 Forwarded E ("The PAC data is available on your FTP site."); *see also* Polson Depo. at 189:9–190:14, (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Trawick Depo. at 262:19–23 (same).

[122] *Marquis Terminal*, 2014 WL 2155255 at *4.

III.    **Global's Dependent Claim for Punitive Damages Premised on Conversion Must Also Necessarily Fail.**

In addition to seeking compensatory damages, Global further seeks to recover punitive damages in connection with its conversion claim.[123] Where partial summary judgment has been granted against Global on Global's underlying conversion, Global's request for related punitive damages must likewise fail.

## ORDER

IT IS HEREBY ORDERED that Paramount's Motion on Conversion[124] is GRANTED. Global's claims for conversion and punitive damages based on conversion in Count III of its Amended Complaint are hereby DISMISSED.

Dated August 31, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[123] Amended Complaint ¶¶ 59–60.

[124] Docket no. 108, filed Aug. 4, 2014.