IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FITNESS HOLDINGS, LLC,<br><br>Plaintiff,<br>v.<br><br>FEDERAL RECOVERY ACCEPTANCE, INC. and FEDERAL RECOVERY SERVICES, INC.,<br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [113] PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CONVERSION CLAIM AND FRAI'S UNJUST ENRICHMENT AND BREACH OF CONTRACT CLAIMS**<br><br>Case No. 2:13-cv-00204-DN<br><br>District Judge David Nuffer |

This case is a dispute between a former owner of physical fitness clubs and one of its billing services providers regarding the parties' obligations to each other at the termination of their contractual relationship. Plaintiff Global Fitness Holdings, LLC ("Global") filed this suit in October 2012 against two related entities (collectively "Paramount"), Federal Recovery Acceptance, Inc. ("FRAI") and Federal Recovery Services, Inc. ("FRSI"). Global brought claims for tortious interference,[1] promissory estoppel,[2] conversion,[3] breach of contract,[4] and breach of the covenant of good faith and fair dealing.[5] All the claims arise out of the alleged refusal of Paramount to cooperate with Global when Global was acquired by Fitness & Sports Clubs, LLC

---

[1] Global Fitness Holding, LLC's Amended Complaint ("Amended Complaint") ¶¶ 38–45, docket no. 71, filed March 19, 2014.

[2] *Id.* ¶¶ 46–52.

[3] *Id.* ¶¶ 53–60.

[4] *Id.* ¶¶ 61–66.

[5] *Id.* ¶¶ 67–73.

("L.A. Fitness"),[6] a non-party to this litigation. Paramount provided the billing services for Global's large membership base.

In the Global–L.A. Fitness Asset Purchase Agreement ("APA"), Global was to transfer customer data to L.A. Fitness, but Global claims Federal Recovery wrongfully withheld the data pending Global's payment of termination fees to Federal Recovery.[7] Global also alleges Federal Recovery withheld over $500,000 in funds owed to Global.[8] Federal Recovery denies wrongdoing in withholding the data and funds, and has now filed several motions for summary judgment on all of Global's claims,[9] including the breach of contract claim related to data transfer that Global voluntarily dismissed.[10]

Global filed a Motion for Partial Summary Judgment[11] on its own conversion claim and against Paramount on Paramount's unjust enrichment and breach of contract claims. This order GRANTS in part and DENIES in part Global's Motion.

---

[6] *See generally id.*

[7] Amended Complaint ¶¶ 64–65.

[8] *Id.* ¶¶ 61–63, 65–66.

[9] Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim, docket no. 106, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim and Supporting Memorandum, docket no. 108, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims and Memorandum in Support Thereof ("Breach Motion"), docket no. 111, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment on Global's Tortious Interference Claim, docket no. 120, filed under seal Aug. 4, 2014;  and Defendants' Motion for Partial Summary Judgment RE: Global's Tortious Interference Claim for Lack of Causation and Memorandum in Support Thereof, docket no. 121, filed under seal Aug. 4, 2014.

[10] Global Fitness, LLC's Motion for Voluntary Dismissal of its Breach of Contract Claim Against Federal Recovery Acceptance, Inc. as it Relates to the Transfer of Data, docket no. 132, filed Sept. 4, 2014.

[11] Global Fitness Holding, LLC's Motion for Partial Summary Judgment ("Global's Motion"), docket no. 113, filed Aug. 4, 2014.

# TABLE OF CONTENTS

BACKGROUND ..................................................................................................................... 3

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................. 4

    I.        Global's Conversion Claim.................................................................................. 5

    II.      FRAI's Unjust Enrichment Claim ....................................................................... 9

    III.    FRAI's Breach Of Contract Claim .................................................................... 10

SUMMARY JUDGMENT STANDARD................................................................................... 12

ANALYSIS........................................................................................................................... 13

    I.        Global's Motion Is Denied with Regard to Global's Conversion Claim Because Summary Judgment Was Already Granted in Paramount's Favor on Global's Conversion Motion. ......................................................................................... 13

    II.      Global's Motion Is Denied with Regard to FRAI's Unjust Enrichment Claim.... 13

              A.      To the Extent Utah Law Applies, Global Makes No Arguments Under Utah law and Global's Motion Would Be Wholly Unsubstantiated......... 14

              B.      The Statement of Undisputed Material Facts is Insufficient. ................... 14

              C.      There Is a Genuine Issue of Material Fact as to the Purpose Underlying Paramount's Payment of $185,400 To Global........................................... 15

              D.      It Is Unclear That Kentucky's "Future Hope" Rule Prohibits Unjust Enrichment under These Facts................................................................. 17

    III.    Global's Motion Is Denied with Regard to FRAI's Breach of Contract Claim.... 18

ORDER ............................................................................................................................... 20

# BACKGROUND

At all relevant times prior to October 2012, Global owned and operated multiple fitness centers in multiple states.[12] Beginning in 2008, Global began contracting with FRAI for FRAI to process billing and collections for customers of certain Global facilities (the data processed by FRAI is the "Member Account Data").[13]  The Member Account Data included not only information about the customers' purchases and preferences, but also their personal credit card ("CC") and bank account transfer ("ACH") information (collectively the "Billing Information") used to charge those customers for using Global's fitness centers.[14]

---

[12] Amended Complaint ¶ 7.

[13] Defendants' Amended Answer to Plaintiff's Amended Complaint and Counterclaim ("Counterclaim") ¶ 19, docket no. 85, filed April 22, 2014.

[14] Amended Complaint ¶ 9.

In 2008, Global and FRAI executed eight location-specific contracts (the "2008 Contracts");[15] in 2009, Global and FRAI executed two additional contracts: one amending the 2008 Contracts (the "Existing Locations Agreement") and another to govern all remaining locations (the "New Location Agreement");[16] and in 2011, Global and FRAI executed two more location-specific contracts (the "2011 Contracts")[17] (the 12 contracts collectively are the "Contracts"). FRAI contracted with FRSI to perform the services necessary for FRAI to fulfill its obligations under the Contracts.[18]

Global filed its motion on August 4, 2014, seeking affirmative summary judgment in its favor on its conversion claim and seeking summary judgment against Paramount on Paramount's claims for unjust enrichment and breach of contract. Paramount filed an opposition[19] to Global's Motion on September 4, 2014, and, Global filed a reply memorandum[20] in support of its Motion on September 22, 2014. Oral argument on Global's Motion was held on April 27, 2015.[21]

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The below collection of undisputed material facts is distilled from the above listed filings. Global's Motion provided a statement of facts[22] and supporting exhibits. Paramount's

---

[15] Counterclaim ¶ 19; *see also* Contracts (dated 2008), attached to Declaration of David L. Mortensen in Support of Global Fitness Holding, LLC's Combined Motion for Partial Summary Judgment to Defendants' Motion for Partial Summary Judgment RE Conversion (Exhibits for Global's Motion) as Exhibit D, docket no. 114-6; and Exhibit H, docket no. 114-8, filed Aug. 4, 2014.

[16] Amended Complaint ¶ 13; Counterclaim at ¶ 23; *see also* Contracts (dated 2009).

[17] Counterclaim ¶ 24; *see also* Contracts (dated 2011) attached as Exhibit 2 to Exhibit Index with Exhibits ("Exhibit Index"), docket no. 145-2, filed Sep. 4, 2014.

[18] Amended Complaint ¶¶ 14–16; *see also* Contracts.

[19] Memorandum in Opposition to Global Fitness Holdings, LLC's Motion for Partial Summary Judgment ("Paramount's Opposition to Global's Motion"), docket no. 144, filed Sep. 4, 2014.

[20] Global Fitness Holding, LLC's Reply Memorandum in Further Support of its Motion for Partial Summary Judgment ("Global's Reply on Global's Motion"), docket no. 161, filed Sep. 22, 2014.

[21] *See* Transcript 4/27/15, docket no. 249, filed May 5, 2015.

[22] Global's Motion at 15–21.

Opposition to Global's Motion responded to Global's statement of facts[23] and provided a statement of additional facts[24] and its own set of exhibits. Global's Reply on Global's Motion replied to Paramount's responses to Global's statement of facts[25] and responded to Paramount's additional facts.[26]

An e-mail was sent to counsel with a summary set of undisputed facts on April 24, 2015.[27] That summary was reviewed at the start of the hearing April 27, 2015.[28] The below collection of undisputed facts was finalized following the April 27, 2015 hearing based on discussion at the hearing.[29] The headings in the statement of facts are descriptive, not declaratory or substantive, and they are taken from the elements as described in the parties' motions.

## I. Global's Conversion Claim

1.    Global and FRAI executed multiple contracts with each other regarding services pertinent to the management of certain member accounts data.[30]

2.    Each of the Contracts between Global and FRAI contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[31]

---

[23] Paramount's Opposition to Global's Motion at 15–22 (conversion), 28–31 (unjust enrichment), and 34–52 (breach).

[24] *Id.* at 22–27 (conversion), 32–33 (unjust enrichment), and 52–53 (breach).

[25] Global Fitness's Reply to Defendants' Response to Statement of Undisputed Material Facts, attached as Appendix I to Global's Reply on Global's Motion, docket no. 161-1, filed Sep. 22, 2014.

[26] Global Fitness's Response to Statement of Additional Material Facts, attached as Appendix II to Global's Reply on Global's Motion, docket no. 161-2, filed Sep. 22, 2014.

[27] E-mail from Judge Nuffer's Chambers to counsel (Apr. 24, 2015), lodged as docket no. 272 on Aug. 31, 2015.

[28] Docket no. 247 (Minute Order); Transcript 4/27/15 30:20–38:21, docket no. 249, filed May 5, 2015.

[29] *Id.*

[30] *See* Contracts.

[31] *See id.* at section entitled "Term".

3.      Each of the Contracts further states that "[f]unds may be held during such period to offset returned payments or extra fees."[32]

4.      Each of the Contracts between Global and FRAI contain, *inter alia*, the following notice provision: "One party may make any notice required under this Agreement by providing written notice sent certified mail, return receipt requested to the other party addressed to the last known address…."[33]

5.      Each of the Contracts also states: "This Agreement may not be amended or modified at any time and no provision may be waived, except by an instrument in writing executed by the COMPANY and CONTRACTOR, or either of them in case of a waiver."[34]

6.      Some of Global's members provided Global with billing information in order to allow Global to bill that member as a part of the membership contract,[35] while some of Global's members provided billing information directly to Paramount.[36]

7.      Billing information was provided by members as a part of the member's account data so that the member could access a Global fitness club location.

8.      Paramount, not Global, held the only complete copy of all of the then-current billing information among the parties.

9.      In fact, to fulfill the Contracts, Paramount was required to possess the Billing Information, which it did for years.[37]

---

[32] *Id.* at section entitled "Term".

[33] *Id.* at section entitled "Notice".

[34] *Id.* at section entitled "Amendment."

[35] *See* Example Membership Agreement, attached as Exhibit B to Exhibits for Global's Motion, docket no. 114-2, filed on Aug. 4, 2014.

[36] *See* Declaration of Todd Rasmussen ("Rasmussen Decl.") ¶¶ 6, 17, attached as Exhibit 5 to Exhibit Index, docket no. 145-5, filed Sep. 4, 2014.

[37] *See* Contracts, Amended Complaint ¶¶ 13–16, 28–33.

10.     Paramount provided copies of the membership contracts to Global on August 30, 2012.[38]

11.     On September 11, 2012, Keith Trawick, on behalf of Global, sent an e-mail to Paramount stating:

> Pursuant to the terms of our agreement with you, dated September 11, 2009, 45 day notice is hereby given for the termination of the Agreement. As we discussed, the clubs have been sold [via an Asset Purchase Agreement ("APA")] to [Fitness & Sports Clubs, LLC ("L.A. Fitness")] and at this time, we are unsure of the exact closing date. As specific information becomes available, we will let you know. It is our understanding that you guys will continue to provide service until the official closing date.[39]

12.     Global sent the foregoing "notice" of termination via e-mail,[40] not by "certified mail, return receipt requested to the other party addressed to the last known address" as required under each of the Contracts.[41]

13.     Mr. Trawick's September 11, 2012 e-mail was Global's first attempted written termination of any of the Contracts.[42]

14.     Mr. Trawick's September 11, 2012 e-mail addresses only a contract dated September 11, 2009.[43]

15.     Forty-five days after September 11, 2012, is October 26, 2012.[44]

---

[38] *See* E-mails between Keith Trawick and Todd Rasmussen dated Aug. 30, 2012, attached as Exhibit 2 to Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim, docket no. 166-2, filed Sep. 22, 2014.

[39] *See* Sept. 11, 2012 e-mail from K. Trawick to S. Nelson, et al. ("Sept. 11, 2012 Trawick E-mail"), attached as Exhibit HH to Exhibits for Global's Motion, docket no. 114-34, filed Aug. 4, 2014.

[40] *Id.*

[41] *See* Contracts at section entitled "Notice."

[42] Deposition of Keith Trawick ("Trawick Depo.") at 70:7–71:6, excerpts attached as Exhibit 6 to Exhibit Index, docket no. 145-6, filed Sep. 4, 2014, other excerpts also attached as Exhibit BBB to Exhibits for Global's Motion, docket no. 114-54, filed Aug. 4, 2014, other excerpts also attached as Exhibit GGG to Global's Motion RE Conversion, Unjust Enrichment, and Breach, docket no. 162-3, filed Sep. 22, 2014; Deposition of Denver Pratt ("Pratt Depo.") at 36:22–38:7, excerpts attached as Exhibit 9 to Exhibit Index, docket no. 145-9, filed Sep. 4, 2014.

[43] *See* Sept. 11, 2012 Trawick E-mail.

16.     Beginning in September 2012, Paramount was assisting Global in transfers of certain cuts [reports] of member accounts data.

17.     In October, Global requested the transfer of the billing information.[45]

18.     The first date that Global made a written request to Paramount to transfer all of the member accounts data that it was processing for Global was October 3, 2012, via e-mail, when Global asked that Paramount provide the member accounts data by October 5, 2012.[46]

19.     Paramount did not transfer the billing information to Global on the requested date of October 5, 2012,[47] but did so on October 11, 2012.[48]

20.     On October 11, 2012, Paramount provided to Global all of the data that Paramount had been processing under its contractual relationship with Global.[49]

21.     Paramount, not Global, possessed the billing information between October 5 and 11, 2012.[50]

---

[44] Paramount requested judicial notice of this fact.

[45] *See* E-mail from Keith Trawick to Todd Rasmussen and Sid Nelson dated October 3, 2012 ("Oct. 3, 2012 Trawick E-mail), attached as Exhibit JJ to Exhibits for Global's Motion, docket no. 114-36, filed Aug. 4, 2014; and E-mail from Keith Trawick to Todd Rasmussen and Sid Nelson dated Oct. 9, 2012 (Oct. 9, 2012 Trawick E-mail) attached as Exhibit OO to Exhibits for Global's Motion, docket no. 114-41, filed Aug. 4, 2014.

[46] *See* Oct. 3, 2012 Trawick E-mail ("We are asking for a full cut of the data on Friday…. Please confirm. Also, we will need an additional (updated) cut of the same data on the date of the actual close, which we anticipate will be next week."); *see also* Amended Complaint ¶ 28 ("On October 3, 2012, Global[] requested that Paramount transfer the Billing Data or final cut back to Global…."); *see also* Oct. 9, 2012 letter from Keith Trawick to Glen Bendixen, attached as Exhibit **3** to Exhibit Index, docket no. 145-3, filed Sep. 4, 2014 (referencing Global's initial request on October 3, 2012).

[47] Amended Counterclaim ¶ 28, at 6–7.

[48] Trawick Depo. at 262:19–23 (acknowledging that Paramount transferred the member accounts data on October 11, 2012).

[49] *See* Oct. 11, 2012 forwarded e-mail from K. Trawick to S. Horton-Salcedo, et al., attached as Exhibit F to Defendants' Motion RE Breach of Contract and the Implied Covenant, docket no. 111-7, filed under seal in docket no. 119-2, filed Aug. 4, 2014 ("The PAC data is available on your FTP site."); see also Deposition of L.A. Fitness dated Apr. 22, 2014 (deponent: Kathy Polson) at 189:9–190:14, excerpts attached as Exhibit G to Defendants' Motion RE Breach of Contract and the Implied Covenant, docket no. 111-8, filed under seal in docket no. 119-3, filed Aug. 4, 2014 (acknowledging that Paramount transferred the member accounts data on October 11, 2012); Trawick depo. at 262:19–23 (acknowledging that Paramount transferred the member accounts data on October 11, 2012).

[50] *See, e.g.,* Amended Complaint ¶¶ 28–33.

22.     As of October 11, 2012, the date that Paramount transferred the member accounts data to Global, the parties had not resolved issues of setting the reserve amount, determining the amount of fees, and other payments the terminating club owner needs to pay upon termination.[51]

23.     In October, 2012, during all of the time that Paramount processed "Member Accounts Data" for Global, that data was neither lost nor harmed in any measurable manner.[52]

24.     By closing after October 15, 2012, L.A. Fitness was able to acquire Global's assets at a savings of nearly ten (10) million dollars compared to the purchase price had the sale closed on October 15, 2012, but the cause of the delay is disputed.

## II.     FRAI's Unjust Enrichment Claim

25.     Global was sued in Pennsylvania for violating a provision of the Fair and Accurate Credit Transactions ACT ("FACTA") in *Smith-Harrison, et al. v. Global Fitness Holdings, LLC, d/b/a Urban Active*, Case No. 2:10-CV-01105-CB, Western District of Pennsylvania ("the FACTA Lawsuit").[53]

26.     On January 7, 2011, FRAI and Global executed a Fee Payment Agreement, wherein FRAI agreed to pay defense and settlement costs for the FACTA Lawsuit in an amount not to exceed $20,000 without further agreement of the parties.[54]

27.     On March 18, 2011, Global agreed to settle the FACTA Lawsuit.[55]

---

[51] *See* various e-mails between the parties and their counsel ranging from October 5, 2012 to October 10, 2012 showing the exit terms were not resolved, collectively attached as Exhibit 7 to Exhibit List, docket no. 145-7, filed Sep. 4, 2014; also attached in part to Exhibits for Global's Motion as Exhibit LL, docket no. 114-38, and Exhibit MM, docket no. 114-39, filed Sep. 4, 2014.

[52]  *See* Rasmussen Decl. ¶ 18.

[53] *See* Certified Letter from Urban Active Fitness to Federal Recovery Acceptance, Inc. dated August 30, 2010, attached as Exhibit S to Exhibits for Global's Motion, docket no. 114-19, filed Aug. 4, 2014.

[54] *See* Fee Payment Agreement, attached as Exhibit 13 to Exhibit Index, docket no. 145-13, filed Sep. 4, 2014.

[55] *See* E-mail from John Gragg to Jerry Sullivan dated March 18, 2011, attached as Exhibit 14 to Exhibit Index, docket no. 145-14, filed Sep. 4, 2014 ("Since Global and Paramount could not get our agreements in place, Global agreed to the settlement today on behalf of Global").

28.     Global settled the FACTA Lawsuit without impleading Paramount as a third-party defendant and did not sue FRAI to recover the settlement amount it paid the plaintiff in the FACTA Lawsuit.[56]

29.     As of that time, other than the agreement dated March 18, 2011, Global had not reached any agreement with FRAI regarding FRAI's payment of the settlement payment.[57]

30.     FRAI paid Global the $185,400.00 that Global paid to settle the FACTA lawsuit.[58]

### III.     FRAI's Breach Of Contract Claim

31.     For the locations identified in the parties' 2008 Contracts, as of October 8, 2012, Paramount was managing 121,671 member accounts for Global.[59]

32.     As of October 8, 2012, Paramount was managing 151,663 additional member accounts for Global.[60]

33.     In 2009, the parties renegotiated certain pricing and term provisions.[61]

---

[56] *See* Deposition of Global Fitness (deponent: Coby DeVary) ("DeVary Depo.") at 136–37, excerpts attached as Exhibit R to Exhibits for Global's Motion, docket no. 114-18, filed Aug. 4, 2014; *see also* E-mail from John Gragg to Jerry Sullivan dated April 4, 2011, attached as Exhibit Z to Exhibits for Global's Motion, docket no. 114-126, filed Aug. 4, 2014.

[57] *See* E-mail from John Gragg to Jerry Sullivan dated March 18, 2011 ("Mar. 18, 2011 Gragg E-mail"), attached as Exhibit 14 to Exhibit Index, docket no. 145-14, filed Sep. 4, 2014; *see also* E-mail from John Gragg to Jerry Sullivan dated March 23, 2011 ("Mar. 23, 2011 Gragg E-mail"), attached as Exhibit 14 to Exhibit Index, docket no. 145-15, filed Sep. 4, 2014 ("Global agreed to settle this lawsuit on its behalf and reserves all claims against Paramount.").

[58] *See* E-mail from Denver Pratt to Keith Trawick dated December 22, 2011 ("Dec. 22, 2011 Pratt E-mail"), attached as Exhibit AA to Global's Motion RE Conversion, Unjust Enrichment, and Breach; *see also* E-mail from Glen Bendixen to Sally Akiona and Ryan Taylor dated December 7, 2011 ("Dec. 7, 2011 Bendixen E-mail"), attached as Exhibit 18 to Exhibit Index, docket no. 145-18, filed Sep. 4, 2014 ("Second, as a consideration for entering into a two year agreement Paramount agrees to pay the $185,400."); E-mail from John Gragg to Jerry Sullivan dated March 2, 2011 ("Mar. 2, 2011 Gragg E-mail"), attached as Exhibit CC to Exhibits for Global's Motion, docket no. 114-29, filed Aug. 4, 2014 ("Our understanding is that your client wanted a 2 year agreement in exchange for covering the settlement and we are prepared to give you that.").

[59] *See* Rasmussen Decl. ¶ 19.

[60] *See id.*

[61] *See* Deposition of Glen Bendixen ("Bendixen Depo.") at 129:10–24, attached as Exhibit G to Exhibits on Global's Motion, docket no. 114-7, filed Aug. 4, 2014 (discussing Deposition Exhibit 27) ("Q. 'Glen, here is the same client agreement that we currently have in place with [Global]. I have changed the dates at the top to March 1, 2011, and under the term section I have March 1, 2013, as the date that they cannot cancel prior to.' Do you see that? A. Yes.

34.     Some of the provisions in the 2008 Contracts differ from those found in the 2009 Contracts.[62]

35.     Each of the agreements includes a provision that requires that all notices are sent via certified mail.[63]

36.     FRAI signed these agreements and the Notice provision was a part of Paramount's standard contract.[64]

37.     The Term provision in the 2009 and 2011 agreements states that if Global "terminates this agreement [FRAI] shall be entitled to its cost of providing additional information or reports for the transfer of data to [Global] or its agents such costs not to exceed $2,500. Funds may be held during such period to offset returned payments or extra fees."[65]

38.     The agreements include Contractor's Duties and Extra Payment sections.[66]

39.     Via e-mail, not certified mail, Global sent Paramount notice of termination on September 11, 2012.[67]

40.     In an internal e-mail, Paramount referred to Global's e-mail notice as its "official notice."[68]

---

Q. And if we go to the document behind it, I'm just looking at the term provision, but that looks to me like the term provision that's in the 2009 agreement; correct? A. It looks like that. Q. It's not the term provision that's in the 2008 agreement; correct? A. Correct."); *see also* E-mail from Lance Rice to Glen Bendixen dated September 2, 2009, attached as Exhibit PP to Exhibits for Global's Motion, docket no. 114-42, filed Aug. 4, 2014 ("highlight all the changes we and [Urban Active] have made[.] All the points of this new pricing and any changes [Urban Active] is making to the contracts.").

[62] *See* Bendixen Depo. at 99:3–12, 100:1–6 ("Q. So you say here, 'Limit of $2,500 if they leave.' Why was that a concern? A. It was a change from what we had had previously and I wanted to make sure that we discussed it. Q. Okay. But what was it about that that was disturbing to you? A. That it was a change from previous documents. . . . Q. Well, so what did the $2,500 replace? A. That was in the term section of the agreement. Q. So it replaced the $5 in the term section; correct? A. Yes.").

[63] *See* Contracts at section entitled "Notice".

[64] *See id.*

[65] *See* 2009 Contracts and 2011 Contracts.

[66] *See* Contracts at sections entitled "Contractor's Duties" and "Extra Payment".

[67] Sept. 11, 2012 Trawick E-mail ("notice is hereby given for the termination of the Agreement").

41.     Paramount began aiding Global in its transfer by "working through data processing, coding and transfer tasks" for all of Global's clubs.[69]

42.     Paramount began providing Global with data cuts [reports] for all thirty-six club locations.[70]

43.     Paramount engaged in telephone calls with Global and L.A. Fitness regarding the transfer of the data, for all clubs.[71]

44.     Paramount ended up billing for forty-four days of the alleged forty-five day termination period.[72]

45.     Paramount ceased all servicing under the contracts on October 25, 2012.[73]

46.     Paramount filed a counter-motion for partial summary judgment seeking dismissal of Global's breach of contract claim and incorporates the undisputed material facts related to that motion.[74]

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[75] "An issue of

---

[68] E-mail from Glen Bendixen to Ren Rice and Todd Rasmussen dated Sept. 11, 2012, attached as Exhibit QQ to Exhibits for Global's Motion, docket no. 114-43, filed Aug. 4, 2014 ("This is the official notice.").

[69] Amended Counterclaim, ¶¶ 46–47, at 25–26.

[70] *See* Todd Rasmussen Deposition at 276:14–278:6 (March 6, 2014) attached as Exhibit A to Exhibits for Global's Motion, docket no. 114-1, filed Aug. 4, 2014.

[71] *See id.* at 178:15–179:12.

[72] *See* Bendixen Depo. at 219:22–220:4 ("[B]ecause the sale didn't complete until the [25th] of October, we continued to service the accounts and - - and continued to collect the fees during that period of time. So -- . . . During that entire period, we would have collected our normal fees.").

[73] *Id.*

[74] Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims, docket no. 111, filed Aug. 4, 2014.

[75] FED. R. CIV. P. 56(a).

material fact is 'genuine' if a reasonable jury could return a verdict for the nonmoving party."[76]
In moving for summary judgment, Global "bears the burden of showing the absence of a genuine
issue of material fact . . . ."[77] However, as it relates to Paramount's claims, Global "need not
negate [Paramount's] claim[s], but need only point out to the district court 'that there is an
absence of evidence to support [Paramount's] case.'"  Upon such a showing, Paramount "must
set forth specific facts showing that there is a genuine issue for trial as to those dispositive
matters for which [Paramount] carries the burden of proof."  "The mere existence of a scintilla of
evidence in support of the plaintiff's position will be insufficient to defeat a properly supported
motion for summary judgment."[78]

## ANALYSIS

### I.   Global's Motion Is Denied with Regard to Global's Conversion Claim Because Summary Judgment Was Already Granted in Paramount's Favor on Global's Conversion Motion.

Summary judgment was granted in Paramount's favor on Global's conversion claim in
the ruling on Paramount's motion on that claim.[79] Therefore, Global's cross-motion for
affirmative summary judgment regarding the conversion claim is denied for the reasons stated in
that ruling.

### II.   Global's Motion Is Denied with Regard to FRAI's Unjust Enrichment Claim.

Global's Motion also seeks summary judgment against Paramount on Paramount's claim
for unjust enrichment. The parties do not agree on which state's law applies to Paramount's

---

[76] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

[77] *Universal*, 22 F.3d at 1529.

[78] *Id.* (quoting *Anderson*, 477 U.S. at 252).

[79] *See* Memorandum Decision and Order Granting [108] Defendants' Motion for Partial Summary Judgment on Plaintiff's Conversion Claim, docket no. 275, filed Aug. 31, 2015.

unjust enrichment claim. Global contends that Kentucky law applies,[80] while Paramount

contends that Utah law applies.[81] Regardless of which state's law applies, Global cannot succeed

on its motion regarding Paramount's unjust enrichment claim. As stated more fully below,

Global's Motion fails for four reasons: (A) Global makes no argument under Utah law, so if

Paramount's claim for unjust enrichment is governed by Utah law, Global's Motion is

unsubstantiated by relevant argument; (B) the statement of undisputed material facts is insufficient to

grant judgment as a matter of law; (C) there is a genuine issue of material fact as to the purpose

underlying Paramount's payment of $185,400 to Global; and (D) even if Kentucky law applied and

there were no genuine issues of material fact that prevented judgment as a matter of law, it is unclear

that Kentucky law prohibits an unjust enrichment claim on these facts.

## A. To the Extent Utah Law Applies, Global Makes No Arguments Under Utah law and Global's Motion Would Be Wholly Unsubstantiated.

Global's Motion does not cite any Utah case law that would bar FRAI's unjust

enrichment claim and thus, Global cannot succeed on dismissing FRAI's unjust enrichment

claim under Utah law.

## B. The Statement of Undisputed Material Facts is Insufficient.

Under Kentucky law, which Global does address, "[f]or a party to prevail under a theory of

unjust enrichment, it must prove three elements: '(1) a benefit conferred upon defendant at plaintiff's

expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit

without payment for its value.'"[82]

Global's Motion fails to properly provide statements of fact for each of the elements of

unjust enrichment. Global has cited only a few facts in support of its motion on Paramount's

---

[80] Global's Motion at 26–28.

[81] Paramount's Opposition to Global's Motion at 65–66.

[82] *Guerin v. Fulkerson*, 354 S.W.3d 161, 165 (Ky. Ct. App. 2011) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009)).

unjust enrichment claim, which facts are, for the most part, disputed and not sufficient to support summary judgment in Global's favor. Indeed, for many of the facts cited by Global, Global has failed to "cite[] with particularity the evidence in the record supporting each factual assertion" as required by DUCivR 56-1(b).

### C. There Is a Genuine Issue of Material Fact as to the Purpose Underlying Paramount's Payment of $185,400 To Global.

Paramount's claim for unjust enrichment arises out of its payment of $185,400 to Global around the time of the settling of a lawsuit. Global was sued in Pennsylvania for violating a provision of the Fair and Accurate Credit Transactions ACT ("FACTA") in *Smith-Harrison, et al. v. Global Fitness Holdings, LLC, d/b/a Urban Active*, Case No. 2:10-CV-01105-CB, Western District of Pennsylvania (the "FACTA Lawsuit").[83] On January 7, 2011, Paramount and Global executed a fee payment agreement in which Paramount agreed to pay defense and settlement costs for the FACTA Lawsuit in an amount not to exceed $20,000 without further agreement of the parties.[84] On March 18, 2011, Global and the FACTA Lawsuit plaintiffs agreed to settle the FACTA Lawsuit.[85] Global settled the FACTA Lawsuit without impleading Paramount as a third-party defendant and did not sue Paramount to recover the settlement amount it paid the plaintiff in the FACTA Lawsuit.[86] As of that time, other than the agreement dated March 18, 2011, Global had not reached any agreement with Paramount regarding Paramount's payment of the

---

[83] *See* Certified Letter from Urban Active Fitness to Federal Recovery Acceptance, Inc. dated August 30, 2010, attached as Exhibit S to Exhibits for Global's Motion, docket no. 114-19.

[84] *See* Fee Payment Agreement, attached as Exhibit 13 to Exhibit Index, docket no. 145-13, filed Sep. 4, 2014.

[85] *See* Mar. 18, 2011 Gragg E-mail ("Since Global and Paramount could not get our agreements in place, Global agreed to the settlement today on behalf of Global").

[86] *See* DeVary Depo. at 136–37; *see also* E-mail from John Gragg to Jerry Sullivan dated April 4, 2011, attached as Exhibit Z to Exhibits for Global's Motion, docket no. 114-26, filed Aug. 4, 2014.

settlement amount,[87] but Paramount paid Global the $185,400 that Global paid to settle the FACTA lawsuit.[88]

The few undisputed facts in this case establish that the first two elements of unjust enrichment have been met.[89] Paramount conferred a benefit upon Global (i.e. payment of $185,400) and Global appreciated that benefit (i.e. received and accepted the $185,400). Thus, the key issue is whether Global has established that there is no genuine dispute as to any material fact regarding the third element of unjust enrichment such that Global is entitled to judgment as a matter of law. This, Global has not done.

There is a genuine dispute between the parties as to whether Global inequitably retained the $185,400. Global contends that Paramount received value for its payment of the $185,400 because Global did not implead Paramount into the FACTA lawsuit.[90] Paramount argues that the value the parties agreed to for Paramount's payment of $185,400 to Global was an assurance that Global would continue doing business with Paramount for two years.[91] Because Global has not established that there is no genuine dispute as to this material fact, Global has not established that Paramount's claim for unjust enrichment should be barred as a matter of law. Therefore, a jury will need to determine the purpose of Paramount's payment.

---

[87] *See* Mar. 18, 2011 Gragg E-mail; *see also* Mar. 23, 2011 Gragg E-mail ("Global agreed to settle this lawsuit on its behalf and reserves all claims against Paramount.").

[88] *See* Dec. 22, 2011 Pratt E-mail; *see also* Dec. 7, 2011 Bendixen E-mail ("Second, as a consideration for entering into a two year agreement Paramount agrees to pay the $185,400."); Mar. 2, 2011 Gragg E-mail ("Our understanding is that your client wanted a 2 year agreement in exchange for covering the settlement and we are prepared to give you that.").

[89] Statement of Undisputed Material Facts, *supra*, Part II, ¶¶ 25–30.

[90] Global's Motion at 28–29.

[91] Paramount's Opposition to Global's Motion at 69.

**D.  It Is Unclear That Kentucky's "Future Hope" Rule Prohibits Unjust Enrichment under These Facts.**

Furthermore, even if the purpose of Paramount's payment was undisputedly to assure future business, as Paramount alleges and not as a settlement as Global alleges, it is not clear that either Utah or Kentucky law bar Paramount's claim. Global argues that even if FRAI's allegations were true that it paid Global the $185,400 based on Global's promise to continue doing business with Paramount for two years, "such an argument fails because benefits conferred in the hope of obtaining future business do not support an unjust enrichment claim under Kentucky law."[92]

In so arguing, Global makes no argument that would be relevant if Utah law applies and cites a Kentucky a case that states that as a general rule: "there can be no recovery for services performed without thought of a direct cash payment nor for those performed to obtain future business contract."[93] The *MidAmerican* case explained the type of work that cannot support an unjust enrichment claim under this "future hope" rule:

> There are some professions, such as insurance, real estate and sales, wherein quantum meruit has little applicability. The realtor may spend untold hours in trying to locate a house for a prospective buyer or show one particular house to many different people, but until a sale is consummated, the realtor is entitled to no compensation.[94]

It is not clear that this line of cases discussing the Kentucky rule regarding future business expectations apply to the facts of this case to bar Paramount's unjust enrichment claim. None of the cases offered by Global concern two parties who are already exchanging funds and

---

[92] Global's Motion at 29.

[93] *MidAmerican Distrib. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 682 (E.D. Ky. 2011)

(quoting *Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n*, 242 S.W.3d 359, 367 (Ky. Ct. App. 2007)).

[94] *MidAmerian*, 807 F. Supp. 2d at 681.

services in a contractual relationship, and one of whom allegedly pays money to extend the

duration of that contractual relationship. Therefore, even if Kentucky law applied, and even if

there were no disputes of material fact preventing judgment as a matter of law, it is unclear that

Kentucky law would prohibit a claim for unjust enrichment in this case.

Accordingly, Global's Motion is DENIED in part as it relates to Paramount's unjust

enrichment claim.

### III.   Global's Motion Is Denied with Regard to FRAI's Breach of Contract Claim.

The parties agree that, pursuant to the express terms of the Contracts,[95] Utah law applies

to Paramount's breach of contract claim.[96] Therefore, Utah law governs this claim.

To sustain a claim for breach of contract under Utah law, Paramount bears the burden to

prove the following elements: (1) a contract; (2) FRAI's performance under the contract; (3)

breach of the contract by Global; and (4) damages.[97] "A breach of express contract claim arises

out of the express terms of the contract, and the breach [must be] proven in relation to those

terms."[98] To this end, "[w]hen interpreting a contract, a court first looks to the contract's four

corners to determine the parties' intentions, which are controlling."[99] Moreover, where "the

language within the four corners of the contract is unambiguous, a court determines the parties'

intentions from the plain meaning of the contractual language as a matter of law."[100]

Paramount's Counterclaim alleges, *inter alia*, that "Paramount fully performed all of its

obligations under the Contracts," at least "up until the time that Global materially breached the

---

[95] *See* Contracts at section entitled "Enforcement".

[96] *See, e.g.*, Global's Motion at 17 (citing Utah law for the elements of breach of contract); Paramount's Opposition to Global's Motion at 33 (same).

[97] *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

[98] *Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 261 (Utah 2005).

[99] *Fairbourn Commercial, Inc. v. Am. Hous. Partners, Inc.*, 94 P.3d 292, 295 (Utah 2004).

[100] *Id.*

Contracts," and that Global breached the Contracts by "demanding that Paramount complete all data transfer and other termination activities within 28 days" despite a contractual right to "45 days prior written notice of termination" and by "refusing and failing to pay Paramount the compensation, expenses, and fees identified in the Contracts" upon termination.[101]

For the reasons discussed in the ruling denying Paramount's motion for summary judgment on Global's breach of contract claim,[102] Global's Motion is GRANTED in part and DENIED in part with respect to Paramount's breach of contract claim. As described in that ruling, both parties performed sufficiently under the Contracts to state a claim for breach of contract,[103] but they both breached the Contracts when Paramount failed to remit the Withheld Funds[104] and Global failed to pay its exit and termination fees.[105] As stated in that ruling, Global's notice of termination was sufficient under the Contracts. Therefore, Global's Motion is GRANTED in part as it relates to Paramount's breach of contract counterclaim based on Global's request for early transfer of the Member Account Data and notice of termination, but DENIED in part as it relates to the unpaid fees. Each party's liability to the other for these breaches of the Contracts has been determined as a matter of law, but the amount of potentially offsetting damages owed remains to be determined at trial.

---

[101] *See* Counterclaim ¶¶ 71–81.

[102] *See* Memorandum Decision and Order Granting In Part and Denying In Part [111] Defendants' Motion For Partial Summary Judgment on Plaintiff's Breach Of Contract And Breach of the Implied Covenant Claims, docket no. 274, filed Aug. 31, 2015.

[103] *See id.* Part I(D).

[104] *See id.* Part I(D)(2).

[105] *See id.* Part I(D)(1).

# ORDER

IT IS HEREBY ORDERED that Global Fitness Holding, LLC's Motion for Partial Summary Judgment[106] is GRANTED in part in favor of Global on Paramount's breach of contract counterclaim in Count I of its Amended Counterclaim as it relates to Global's request for early data transfer and its notice of termination.

Global's Motion is DENIED in part in favor of Paramount on the following:

1.  Paramount's breach of contract counterclaim as it relates to the amount of fees Global failed to pay, although liability has been determined as a matter of law;

2.  Global's Conversion claim in Count III of its Amended Complaint; and

3.  Paramount's Unjust Enrichment claim in Count III of its Amended Counterclaim.

Dated August 31, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[106] Docket no. 113, filed Aug. 4, 2014.