IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FITNESS HOLDINGS, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>FEDERAL RECOVERY ACCEPTANCE,<br>INC. and FEDERAL RECOVERY<br>SERVICES, INC.,<br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [106] DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM**<br><br>Case No. 2:13-cv-00204-DN<br><br>District Judge David Nuffer |

This case is a dispute between a former owner of physical fitness clubs and one of its billing services providers regarding the parties' obligations to each other at the termination of their contractual relationship. Plaintiff Global Fitness Holdings, LLC ("Global") filed this suit in October 2012 against two related entities (collectively "Paramount"), Federal Recovery Acceptance, Inc. ("FRAI") and Federal Recovery Services, Inc. ("FRSI"). Global brought claims for tortious interference,[1] promissory estoppel,[2] conversion,[3] breach of contract,[4] and breach of the covenant of good faith and fair dealing.[5] All the claims arise out of the alleged refusal of Paramount to cooperate with Global when Global was acquired by Fitness & Sports Clubs, LLC ("L.A. Fitness"),[6] a non-party to this litigation. Paramount provided the billing services for Global's large membership base.

---

[1] Global Fitness Holding, LLC's Amended Complaint ("Amended Complaint") ¶¶ 38–45, docket no. 71, filed March 19, 2014.

[2] *Id.* ¶¶ 46–52.

[3] *Id.* ¶¶ 53–60.

[4] *Id.* ¶¶ 61–66.

[5] *Id.* ¶¶ 67–73.

[6] *See generally id.*

In the Global–L.A. Fitness Asset Purchase Agreement ("APA"), Global was to transfer customer data to L.A. Fitness, but Global claims Federal Recovery wrongfully withheld the data pending Global's payment of termination fees to Federal Recovery.[7] Global also alleges Federal Recovery withheld over $500,000 in funds owed to Global.[8] Federal Recovery denies wrongdoing in withholding the data and funds, and has now filed several motions for summary judgment on all of Global's claims,[9] including the breach of contract claim related to data transfer that Global voluntarily dismissed.[10]

Paramount filed several motions for partial summary judgment. This order GRANTS Paramount's motion[11] on Global's promissory estoppel claim.

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................................... 3
STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................... 6
    I.     Prerequisite: A Promissory Estoppel Claim Is Only Available in the Absence of A Contract Governing the Parties' Rights and Obligations....................................... 6
    II.    Element 1: A Promise Reasonably Expected to Induce Reliance........................... 8
    III.   Element 2: Reasonable Reliance Inducing Action or Forbearance on the Part of the Promisee or A Third Person......................................................................... 8
    IV.   Element 3: Detriment to the Promisee or Third Person...................................... 11
SUMMARY JUDGMENT STANDARD................................................................................... 11
APPLICABLE LAW ............................................................................................................... 12
ANALYSIS ............................................................................................................................ 13
    I.     Legal Standard for A Promissory Estoppel Claim............................................... 13

---

[7] Amended Complaint ¶¶ 64–65.

[8] *Id.*  ¶¶ 61–63, 65–66.

[9] Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim, docket no. 106, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE Plaintiff's Conversion Claim and Supporting Memorandum, docket no. 108, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment RE: Global's Breach of Contract and Breach of the Implied Covenant Claims and Memorandum in Support Thereof ("Breach Motion"), docket no. 111, filed Aug. 4, 2014; Defendants' Motion for Partial Summary Judgment on Global's Tortious Interference Claim, docket no. 120, filed under seal Aug. 4, 2014;  and Defendants' Motion for Partial Summary Judgment RE: Global's Tortious Interference Claim for Lack of Causation and Memorandum in Support Thereof, docket no. 121,filed under seal Aug. 4, 2014.

[10] Global Fitness, LLC's Motion for Voluntary Dismissal of its Breach of Contract Claim Against Federal Recovery Acceptance, Inc. as it Relates to the Transfer of Data, docket no. 132, filed Sept. 4, 2014.

[11] Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim ("Paramount's Motion on Promissory Estoppel"), docket no. 106, filed Aug. 4, 2014.

II.      Arguments by Global and Paramount..................................................... 13
III.     Summary Judgment Is Granted to Paramount on Global's Claim for Promissory
         Estoppel.............................................................................................. 14
         A.      The Contracts Governed the Parties' Rights and Obligations. ................. 15
         B.      The Evidence Does Not Show that Paramount Made A Clear and Definite
                 Promise to Transfer the Billing Information............................................. 18
         C.      The Evidence Does Not Show that Paramount Made Any Promise With an
                 Awareness of All the Material Facts........................................................ 20
         D.      Global Could Not Have Reasonably Relied on Any Promise from
                 Paramount to Transfer the Member Account Data Prior to the End of the
                 45-Day Termination Period. .................................................................. 23
         E.      The Evidence Does Not Show that Global Detrimentally Relied on Any
                 Promise by Paramount to Transfer the Member Account Data................ 26
ORDER ............................................................................................................. 31

## BACKGROUND

At all relevant times prior to October 2012, Global owned and operated multiple fitness centers in multiple states.[12] Beginning in 2008, Global began contracting with FRAI for FRAI to process billing and collections for customers of certain Global facilities (the data processed by FRAI is the "Member Account Data").[13] The Member Account Data included not only information about the customers' purchases and preferences, but also their personal credit card ("CC") and bank account transfer ("ACH") information (collectively the "Billing Information") used to charge those customers for using Global's fitness centers.[14]

In 2008, Global and FRAI executed eight location-specific contracts (the "2008 Contracts");[15] in 2009, FRAI and Global executed two additional contracts: one amending the 2008 Contracts (the "Existing Locations Agreement") and another to govern all remaining

---

[12] Amended Complaint ¶ 7.

[13] Defendants' Amended Answer to Plaintiff's Amended Complaint and Counterclaim ("Counterclaim") ¶ 19, docket no. 85, filed April 22, 2014.

[14] Amended Complaint ¶ 9.

[15] Counterclaim ¶ 19; *see also* Contracts (specifically those dated 2008), attached as Exhibit A to Paramount's Motion on Promissory Estoppel, docket no. 106-2, filed Aug. 4, 2014.

locations (the "New Locations Agreement");[16] and in 2011, FRAI and Global executed two more location-specific contracts (the "2011 Contracts")[17] (the 12 contracts collectively are the "Contracts"). FRAI contracted with FRSI to perform the services necessary for FRAI to fulfill its obligations under the Contracts.[18]

On or around September 10, 2012, Global publicly announced that it had entered into the APA with L.A. Fitness, whereby L.A. Fitness would purchase substantially all of the assets of Global.[19] The formula for calculating the purchase price varied if the APA closed after October 15, 2012.[20] On September 11, 2012, Global sent Paramount an email providing the 45-day termination notice required under Global's Contracts with Paramount.[21] On October 3, 2012, Global requested that Paramount transfer the Member Account Data, including the Billing

---

[16] Amended Complaint ¶ 13; Counterclaim ¶ 23; *see also* Contracts (specifically those dated 2009).

[17] Counterclaim ¶ 24; *see also* Contracts (specifically those dated 2011).

[18] Amended Complaint ¶¶ 14–16.

[19] *Id.* ¶ 8.

[20] *See* APA at Section 1 under definition of "Gross Purchase Price, portions attached as Exhibit A to Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim & Exhibit Index with Exhibit A Filed Under Seal ("Paramount's Reply on Promissory Estoppel"), docket no. 169, filed under seal on Sep. 22, 2014; redacted version, docket no. 173, filed Sep. 23, 2014; portions also attached as Exhibit D to Paramount's Motion on Causation in Tortious Interference, docket no. 121-5, filed Aug. 4, 2014; also attached as Exhibit W to Global's Opposition on Causation in Tortious Interference, docket no. 151-2, filed Sep. 5, 2014. *See also* September 3, 2012 email from Coby Devary to Kathy Polson ("Sept. 3, 2012 Devary-Polson E-mail"), attached as Exhibit G to Paramount's Motion on Promissory Estoppel, docket no. 106-8, filed Aug. 4, 2014; Affidavit of Coby DeVary ("DeVary Affidavit"), attached as Exhibit J to Declaration of David L. Mortensen in Support of Global Fitness Holdings, LLC's Memorandum in Opposition to Federal Recovery Services Inc.'s Motion for Partial Summary Judgment RE: Global Fitness's Promissory Estoppel Claim ("Global's Exhibits on Promissory Estoppel"), docket no. 137-10, filed September 4, 2014.

[21] Amended Complaint ¶ 23; *See* Sept. 11, 2012 email from K. Trawick to S. Nelson, et al. ("Sept. 11, 2012 Trawick Email"), attached as Exhibit C to Paramount's Motion on Promissory Estoppel, docket no. 106-4, filed Aug. 4, 2014, also attached as Exhibit L to Global's Exhibits on Promissory Estoppel, docket no. 137-12, filed Sep. 4, 2014.

Information, no later than October 5, 2012.[22] Paramount transferred the Member Account Data, including the Billing Information, to Global on October 11, 2012.[23]

In its promissory estoppel claim, Global contends that Paramount promised to transfer the Member Account Data, including the Billing Information, whenever Global requested the data, and that Paramount then refused to transfer the Billing Information when it was requested on October 3, 2012.[24] Global further alleges that Paramount's refusal to transfer the Billing Information harmed Global.[25] Paramount filed its Motion on Promissory Estoppel on August 4, 2014, Global filed an opposition[26] to Paramount's Motion on Promissory Estoppel on September 4, 2014, and Paramount filed a reply memorandum[27] in support of its Motion on Promissory Estoppel on September 22, 2014. Oral argument on Paramount's Motion on Promissory Estoppel was held on May 11, 2015.[28]

---

[22] Amended Complaint ¶ 28; Oct. 3, 2012 email from Keith Trawick to Sid Nelson, et al. ("Oct. 3, 2012 Trawick-Nelson E-mail"), attached as Exhibit O to Global's Exhibits on Promissory Estoppel, docket no. 137-16, filed Sept. 4, 2014.

[23] See 30(b)(6) Deposition of L.A. Fitness (Deponent Kathy Polson) dated April 22, 2014 ("Polson Depo.") at 189:9–190:14, attached as Exhibit D to Paramount's Motion on Promissory Estoppel, docket no. 106-5, filed under seal in docket no. 117-2, filed Aug. 4, 2014 (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Deposition of Keith Trawick dated March 18, 2014 ("Trawick Depo.") at 262:19–23, attached as Exhibit E to Paramount's Motion on Promissory Estoppel, docket no. 106-6, filed Aug. 4, 2014, other excerpts also attached as Exhibit I to Global's Exhibits on Promissory Estoppel, docket no. 137-9, filed Sep. 4, 2014 (same).

[24] Amended Complaint ¶¶ 46–52, at Count II.

[25] Id.

[26] Global Fitness Holdings, LLC's Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim ("Global's Opposition on Promissory Estoppel"), docket no. 136, filed Sep. 4, 2014.

[27] Reply Memorandum in Support of Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim ("Paramount's Reply on Promissory Estoppel"), docket no. 169, filed under seal on Sep. 22, 2014; redacted version, docket no. 173, filed Sep. 23, 2014.

[28] See Minute Entry, docket no. 251, filed May 11, 2015; Transcript 5/11/15, docket no. 254, filed May 20, 2015.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The below collection of undisputed material facts is distilled from the above listed filings. Paramount's Motion on Promissory Estoppel provided a statement of facts[29] and supporting exhibits. Global's Opposition on Promissory Estoppel responded to Paramount's statement of facts[30] and provided a statement of additional facts[31] and its own set of exhibits.[32] Paramount's Reply on Promissory Estoppel replied to Global's responses to Paramount's statement of facts[33] and responded to Global's additional facts.[34]

An email was sent to counsel with a summary set of undisputed facts on May 8, 2015.[35] That summary was reviewed at the start of the hearing on May 11, 2015.[36] The below collection of undisputed facts was finalized following the April 27, 2015 hearing based on discussion at the hearing.[37] The headings in the statement of facts are descriptive, not declaratory or substantive, and they are taken from the elements as described in the parties' motions.

### I.   Prerequisite: A Promissory Estoppel Claim Is Only Available in the Absence of A Contract Governing the Parties' Rights and Obligations.

1.   Global and FRAI executed multiple contracts with each other regarding Paramount's management of certain Member Account Data.[38]

---

[29] Paramount's Motion on Promissory Estoppel at 4–10.

[30] Global's Opposition on Promissory Estoppel at 8–11.

[31] *Id.* at 11–14.

[32] *See* Global's Exhibits on Promissory Estoppel.

[33] Paramount's Reply on Promissory Estoppel at iii–xi.

[34] *Id.* at xi–xvi.

[35] E-mail from Judge Nuffer's Chambers to counsel (May 8, 2015), lodged as docket no. 273 on Aug. 31, 2015.

[36] Transcript 5/11/15 3:23–16:7, docket no. 254, filed May 20, 2015.

[37] *Id.*

[38] *See* Contracts.

2.      Each of the Contracts between Global and FRAI contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[39]

3.      Each of the Contracts also states: "This Agreement may not be amended or modified at any time and no provision may be waived, except by an instrument in writing executed by the COMPANY and CONTRACTOR, or either of them in case of a waiver."[40]

4.      On September 11, 2012, Keith Trawick, on behalf of Global, emailed Paramount stating:

> Pursuant to the terms of our agreement with you, dated September 11, 2009, 45 day notice is hereby given for the termination of the Agreement. As we discussed, the clubs have been sold to L.A. Fitness and at this time, we are unsure of the exact closing date.[41]

5.      In its Amended Complaint, Global alleges that, "Paramount and FRSI knew that Global Fitness needed Paramount to transfer the Member Account Data, including the Billing Data, to L.A. Fitness in order to close on the APA prior to the forty-five day termination period in the Agreement."[42]

6.      Global further alleges: "Global Fitness did detrimentally rely on Paramount and/or FRSI's misrepresentation that it would transfer the Member Account Data, including the

---

[39] *Id.* at section entitled "Term"; *see also* Deposition of Global dated May 1, 2014 (deponent: Coby DeVary) ("DeVary Depo.") at 12:24–13:24, excerpts attached as Exhibit B to Paramount's Motion on Promissory Estoppel, docket no. 106-3, filed under seal in docket no. 117-1, filed on Aug. 4, 2014, other relevant portions attached as Exhibit G to Paramount's Motion on Promissory Estoppel, docket no. 106-8, filed under seal in docket no. 117-4, filed Aug. 4, 2014; other portions attached as Exhibit K to Global's Exhibits on Promissory Estoppel, docket no. 137-11, filed Sep. 4, 2014.

[40] Contracts at section entitled "Amendment".

[41] *See* Sept. 11, 2012 email from K. Trawick to S. Nelson, et al. ("Sept. 11, 2012 Trawick Email"), attached as Exhibit C to Paramount's Motion on Promissory Estoppel, docket no. 106-4, filed Aug. 4, 2014, also attached as Exhibit L to Global's Exhibits on Promissory Estoppel, docket no. 137-12, filed Sep. 4, 2014.

[42] Amended Complaint ¶ 48.

Billing Data, within the timeframe required by L.A. Fitness and prior to forty-five day termination period in the Agreement."[43]

7.      Paramount transferred the complete set of member account data to Global on October 11, 2012.[44]

## II.      Element 1: A Promise Reasonably Expected to Induce Reliance.

8.      Historically, Defendants always provided Global Fitness with any requested Member Account Data; CC and ACH information was not included.[45]

9.      Defendants continued to provide cuts of the Member Account Data after Global Fitness provided notice of termination of the contractual relationship between the parties; CC and ACH information was not included.[46]

10.     On October 10, 2012, Paramount represented that it had "commenced the process to transfer the requested member and contract data as requested, without going 'black'. Absent delays, the process as to the data may be complete from our end this Friday, October 12."[47]

## III.     Element 2: Reasonable Reliance Inducing Action or Forbearance on the Part of the Promisee or A Third Person.

11.     Global and FRAI executed multiple contracts with each other regarding Paramount's management of certain Member Account Data.[48]

---

[43] *Id.* ¶ 50.

[44] *See* Polson Depo. at 189:9–190:14 (acknowledging that Paramount transferred the Member Account Data on October 11, 2012); Trawick Depo. at 262:19–23.

[45] Counterclaim ¶¶ 46-47, at 25–26; *see also* Declaration of Todd Rasmussen ("Rasmussen Decl.") ¶ 5, attached as Exhibit H to Global's Exhibits on Promissory Estoppel, docket no. 137-8, filed Sep. 4, 2014; Trawick Depo. at 101:6–25.

[46] *Id.*

[47] Oct. 10, 2012 E-mail from Thomas Klc to Darby Turner ("Oct. 10, 2012 Klc E-mail"), attached as Exhibit Z to Global's Exhibits on Promissory Estoppel, docket no. 137-26, filed Sep. 4, 2014 ("On that basis, unless you request otherwise, my client has commenced the process to transfer the requested member and contract data as requested . . . .").

[48] *See* Contracts.

12.     Each of the Contracts between Global and FRAI contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[49]

13.     Each of the Contracts also states: "This Agreement may not be amended or modified at any time and no provision may be waived, except by an instrument in writing executed by the COMPANY and CONTRACTOR, or either of them in case of a waiver."[50]

14.     In its Amended Complaint, Global alleges that, "Paramount and FRSI knew that Global Fitness needed Paramount to transfer the Member Account Data, including the Billing Data, to L.A. Fitness in order to close on the APA prior to the forty-five day termination period in the Agreement."[51]

15.     Global further alleges: "Global Fitness did detrimentally rely on Paramount and/or FRSI's misrepresentation that it would transfer the Member Account Data, including the Billing Data, within the timeframe required by L.A. Fitness and prior to forty-five day termination period in the Agreement."[52]

16.     When Global made a demand on October 3, 2012 for the return of its Member Account Data, including the billing information, internal correspondence from Paramount, spanning from October 3, 2012 to October 11, 2012, show that Paramount was concerned that if they provided the requested data they would be unable to collect their termination fees.[53]

---

[49] *Id.* at section entitled "Term"; *see also* DeVary Depo. at 12:24–13:24.

[50] *Id.* at section entitled "Amendment".

[51] Amended Complaint ¶ 48.

[52] *Id.* ¶ 50.

[53] *See* October 3, 2012 E-mail from Glen Bendixen to Ren Rice and Kenneth Melby ("Oct. 3, 2012 Bendixen-Rice E-mail"), attached as Exhibit W to Global's Exhibits on Promissory Estoppel, docket no. 137-24, filed Sep. 4, 2014 ("We can't give them the detailed account information until we have the reserve we need . . . . [T]hey're trying to pull a fast once[sic] so we have no reserve . . . ."). *See also* October 3, 2012 E-mail from Glen Bendixen to Sid Nelson et al. ("Oct. 3, 2012 Bendixen-Nelson E-mail"), attached as Exhibit X to Global's Exhibits on Promissory

17.     On October 10, 2012, Paramount represented that it had "commenced the process to transfer the requested member and contract data as requested, without going 'black'. Absent delays, the process as to the data may be complete from our end this Friday, October 12."[54]

18.     Between the announcement of the APA and October 11, 2012, Global Fitness took the following actions, required of Global by the APA, in an effort to close on the transaction on or before October 15, 2012:

a.  Terminated at least eleven subleases;

b.  Negotiated the assignment and/or sublease of 36 leases from Global Fitness to L.A. Fitness, many of which required amendment to the underlying leases to meet the requirements of L.A. Fitness, which in several instances resulted in tense relationships between Global Fitness and the lessors and/or required that Global Fitness and/or its principals make significant concessions to the underlying lessors, such as providing guaranties of the leases that would continue even after the assignment or sublease to L.A. Fitness;

c.  Negotiated complex recognition agreements and subordination, non-disturbance and attornment agreements with the lessors' lenders;

d.  Terminated a mass membership contract with a nationwide health insurance carrier, which generated sizable monthly revenues to Global Fitness before its termination;

e.  Made significant modifications to its business practices, such as the discontinuation of paid-in-full memberships, which were a substantial source of income for Global Fitness, and the termination of tanning services to all Global Fitness members because L.A. Fitness does not provide tanning;

f.  Notified its employees and independent contractors of the impending transaction which, if it failed to close, would have created confusion and uncertainty for these parties and potentially damaged their relationship with Global Fitness;

---

Estoppel, docket no. 137-24, filed Sep. 4, 2014; October 3, 2012 E-mail chain from Todd Rasmussen to Glen Bendixen ("Oct. 3, 2012 Rasmussen E-mails"), attached as Exhibit Y to Global's Exhibits on Promissory Estoppel, docket no. 137-25, filed Sep. 4, 2014 ("[t]he billing info is the only card we have left").

[54] *See* Oct. 10, 2012 Klc E-mail.

g.   Made arrangements to pay certain obligations to primary lenders, vendors and equipment lessors before they would otherwise be due, sometimes at an increased cost, in order to ensure that all assets being sold to L.A. Fitness could be transferred free and clear of all liens and encumbrances; and

h.   Filed letter ruling requests with state revenue departments in Ohio, Kentucky and Tennessee, as well as tax clearance statements, in order to provide L.A. Fitness with assurance regarding the tax treatment of the transaction in those states.[55]

### IV.   Element 3: Detriment to the Promisee or Third Person.

19.   On September 5, 2012, Global and L.A. Fitness executed a certain Asset Purchase Agreement ("APA").[56]

20.   In the APA Global and L.A. Fitness agreed to an "Outside Date" of October 31, 2012 for closing the transaction contemplated by the APA. However, they did not agree to any specific "Closing Date" in the APA or at any time in writing prior to October 16, 2012.[57]

21.   Thus, under the APA, the outside closing date for Global and L.A. Fitness was October 31, 2012.[58]

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[59] "An issue of material fact is 'genuine' if a reasonable jury could return a verdict for the nonmoving party."[60]

---

[55] DeVary Affidavit ¶ 7.

[56] *See* APA at 1. *See also* DeVary Depo. at 129:4–5.

[57] *See* APA at Section 10.1; *see also* Deposition of Royce Pulliam dated March 21, 2014 at 94:25-96:7, relevant portions attached as Exhibit H to Paramount's Motion on Promissory Estoppel, docket no. 106-9, filed under seal in docket no. 117-5, filed Aug. 4, 2014; DeVary Depo. at 71:13–72:7, 184:15–17, 283:10–285:3; September 3, 2012 E-mail from Coby DeVary to Kathy Polson, attached as Exhibit I to Paramount's Motion on Promissory Estoppel, docket no. 106-10, filed Aug. 4, 2014 ("The outside closing date would be 10/31/2012").

[58] *See* APA at Section 10.1.

[59] FED. R. CIV. P. 56(a).

[60] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

In moving for summary judgment, Paramount "bears the burden of showing the absence of a genuine issue of material fact . . . ."[61] However, Paramount "need not negate [Global's] claim[s], but need only point out to the district court 'that there is an absence of evidence to support [Global's] case.'"[62] Upon such a showing, Global "must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which [Global] carries the burden of proof."[63] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to defeat a properly supported motion for summary judgment."[64]

**APPLICABLE LAW**

Global originally filed its case in the United States District Court for the Eastern District of Kentucky.[65] Federal jurisdiction in this case is premised on diversity.[66] Venue was subsequently transferred to the District of Utah.[67] The parties stipulated and agreed that Utah law applies to Global's claim for promissory estoppel.[68] Therefore, Utah law governs Global's promissory estoppel claim.

---

[61] *Universal*, 22 F.3d at 1529.

[62] *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[63] *Id.* (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (internal quotation marks omitted)) (both emphases in original).

[64] *Id.* (quoting *Anderson*, 477 U.S. at 252).

[65] Complaint, docket no. 1, filed Oct. 10, 2012.

[66] 28 U.S.C. § 1332(a); *see* Complaint ¶ 3 ("This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it involves citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.").

[67] Memorandum Opinion & Order, docket no. 34, filed Mar. 20, 2013.

[68] *See* Paramount's Motion on Promissory Estoppel at 10, Global's Opposition on Promissory Estoppel at 8 (listing elements of promissory estoppel in Utah).

## ANALYSIS

### I.   Legal Standard for A Promissory Estoppel Claim

Under Utah law, "[a] party claiming promissory estoppel must establish the following: (1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person."[69] The Tenth Circuit has also noted that the Supreme Court of Utah "has further promulgated a set of factual prerequisites for a promissory estoppel claim, as follows:"

> that the defendants were aware of all the material facts; that in such awareness they made the promise when they knew that the plaintiff was acting in reliance on it; that the latter, observing reasonable care and prudence, acted in reliance on the promise and got into a position where it suffered a loss.[70]

As a prerequisite to bringing a promissory estoppel claim, the plaintiff must establish that the parties do not have a formal contract controlling their rights and obligations.[71]

### II.   Arguments by Global and Paramount.

In its Amended Complaint, Global alleges that Paramount, through its actions and past cooperation in transferring the Member Account Data, effectively made a promise to Global that Paramount would transfer the Member Account Data, including the Billing Information, whenever Global demanded it and prior to the end of the parties' contractual relationship.[72] Global further alleges that it detrimentally relied on Paramount's "misrepresentation that it would transfer the Member Account Data, including the Billing [Information], within the

---

[69] *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (UT Ct. App. 2013).

[70] *Triax Pacific, Inc. v. Am. Ins. Co*., No. 94-4091, 1995 WL 643156, *7 (10th Cir. Nov. 2 1995) (quoting *Tolboe Constr. Co. v. Staker Paving & Constr. Co.*, 682 P.2d 843, 845 (Utah 1984)).

[71] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 18,158 P.3d 1088  (quoting *Mile High Industries v. Cohen*, 222 F.3d 845, 859 (10th Cir. 2000)) (stating that promissory estoppel exists where no formal contract exists").

[72] Amended Complaint ¶¶ 48–50, at Count II.

timeframe required by L.A. Fitness and prior to forty-five [sic] day termination period in the Agreement,[73] and that such reliance caused Global irreparable harm."[74]

Paramount's Motion on Promissory Estoppel argues that Global's promissory estoppel claim should be dismissed because the parties' Contracts govern the parties' rights and obligations with each other, including the transfer of data.[75] Global's Opposition on Promissory Estoppel does not dispute the case law cited by Paramount on this point.[76] In fact, Global itself quotes a case from this Court which states that "[r]ecovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation."[77] But Global argues that the transfer of the Member Account Data is not governed by the parties' Contracts because the Contracts "do not discuss or even reference how or when the parties are to transfer the Member Account Data."[78] As such, Global concludes that "[s]ince the contracts between the parties do not address the transfer of Member Account Data, Defendants' Motion fails."[79]

### III.    Summary Judgment Is Granted to Paramount on Global's Claim for Promissory Estoppel.

There are no genuine disputes as to any material fact that would preclude summary judgment against Global on Global's promissory estoppel claim, and, for the reasons discussed more fully below, Paramount is entitled to judgment as a matter of law on five independent grounds: (A) the Contracts governed the parties' rights and obligations, eliminating a claim for promissory estoppel; (B) even if a claim for promissory estoppel could be made, Global cannot

---

[73] *Id.* ¶ 50.

[74] *Id.* ¶ 51.

[75] Paramount's Motion on Promissory Estoppel at 14–15.

[76] *See* Global's Opposition on Promissory Estoppel at 14–15.

[77] *Id.* (quoting *Needham v. Fannie Mae*, 854 F. Supp. 2d 1145, 1152 (D. Utah 2012)).

[78] *Id.* at 15.

[79] *Id.*

show that Paramount made a clear and definite promise to transfer the Member Account Data

that could be reasonably expected to induce reliance; (C) Global cannot show that Paramount

made a promise with an awareness of all the material facts; (D) Global could not have relied on a

promise of pre-termination transfer from Paramount because of the 45-day termination period

provided in the Contracts; and (E) Global cannot show that it detrimentally relied on any promise

from Paramount. Accordingly, Paramount's Motion on Promissory Estoppel is GRANTED.

### A.  The Contracts Governed the Parties' Rights and Obligations.

Global's claim of fails because a promissory estoppel claim is clearly prohibited where a

contract exists.

As a prerequisite to bringing a promissory estoppel claim, the plaintiff must establish that

the parties do not have a formal contract controlling their rights and obligations.[80]  Promissory

estoppel is only a viable claim "where no formal contract exists and the party seeking promissory

estoppel is attempting to prove the existence of an enforceable promise or agreement."[81] The

Tenth Circuit, applying New Mexico law, has explained that promissory estoppel constitutes a

contract implied in law where no contract exists in fact, recognizing rights in lieu of a formal

contract.[82] "*Where, however, a contract exists between the two parties, the doctrine is

inapplicable.*"[83]  Similarly, cases from the District of Utah hold that where a relationship is

governed by a contract, a party's "legal remedy is based on the contracts themselves," and a

promissory estoppel claim cannot stand.[84]

---

[80] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 18,158 P.3d 1088  (quoting *Mile High Industries v. Cohen*, 222 F.3d 845, 859 (10th Cir. 2000)) (stating that promissory estoppel exists where no formal contract exists).

[81] *Id.*

[82] *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1432 (10th Cir. 1996).

[83] *Id.* (internal citations omitted) (emphasis added).

[84] *David Early Group, Inc. v. BFS Retail & Commercial Operations, LLC*, No. 2:06-CV-277-DAK, 2008 WL 222674 at *10 (D. Utah Jan 25, 2008) ("To the extent that BFS alleges it has been harmed by the Early Parties'

Global's position that the Contracts do not govern the parties' rights and obligations regarding the transfer of the Member Account Data is incorrect. It is undisputed that Global and FRAI executed multiple contracts with each other regarding Paramount's management of certain Member Account Data.[85] The Contracts fundamentally governed the parties' relationship as it relates to the management of the Member Account Data, including any issues fundamental to that management, including transfer, among others. The Contracts are silent on transfer, but that does not somehow remove Member Account Data from the governance of the Contracts. Silence does not mean that the Contracts do not govern; rather, silence means that the governing Contracts do not impose rights and obligations where the parties chose to not expressly create rights and obligations beyond the Contracts.

Paramount had a contractual right to possess and manage the Member Account Data, including the Billing Information, and to service the membership accounts until the end of the Contracts.[86] Any other interpretation would wholly frustrate the purpose of the Contracts because possession and management of the Member Account Data is fundamental to Paramount's performance of its contractual obligations to service accounts for Global. The Contracts do not expressly grant to Global any right to demand delivery of or impose on Paramount any obligation to transfer the Member Account Data prior to the end of the contract. Therefore, the only deadline that could terminate Paramount's right and obligation to manage the

---

conduct, its legal remedy is based on the contracts themselves and it cannot pursue equitable claims for unjust enrichment or promissory estoppel. Accordingly, the court grants the Early Parties' motion for summary judgment on these claims."); *see also Needham v. Fannie Mae*, 854 F. Supp. 2d 1145, 1152 (D. Utah 2012) (J. Nuffer) (dismissing claims for promissory estoppel and unjust enrichment "because the parties had an enforceable contract.").

[85] *See* Contracts.

[86] *See* Memorandum Decision and Order Granting In Part and Denying In Part [111] Defendants' Motion For Partial Summary Judgment on Plaintiff's Breach Of Contract And Breach of the Implied Covenant Claims, Part I(B), docket no. 274, filed Aug. 31, 2015.

Member Account Data would be the end of the contract. Nothing in the Contracts suggests that any other deadline, including Global's demands, carry the force of the Contracts.

Each of the Contracts contains the following termination provision: "Contractor or Company may terminate this Agreement at any time for any reason upon 45 day prior written notice."[87] Therefore, if Global wanted Paramount to transfer the Member Account Data, it would have had to terminate the Contracts 45 days prior to the actual delivery date. Furthermore, each of the Contracts also states: "This Agreement may not be amended or modified at any time and no provision may be waived, except by an instrument in writing executed by the COMPANY and CONTRACTOR, or either of them in case of a waiver."[88] Therefore, if Global wanted to create express rights and obligations regarding transfer, it should have done so by written amendment. Accordingly, Global's claims regarding the transfer of the Member Account Data are founded in contract, not in promissory estoppel.

At the May 11, 2015 hearing, Global cited the *American Towers*[89] case for the proposition that even if parties have a contract governing their relationship, a party may still maintain a claim for promissory estoppel if it does not have a <u>remedy</u> for a breach of the contract by the other party. However, *American Towers* does not support Global's position. First, *American Towers* involved a claim for unjust enrichment, not promissory estoppel.[90] Second, the homeowners association that was raising the unjust enrichment claim against a contractor was not a party to the construction contract.[91] While the *American Towers* case used the word "remedy" rather than "claim" or "relationship", the principle set forth in *American Towers* is not

---

[87] Contracts at section entitled "Term"; *see also* DeVary Depo. at 12:24–13:24.

[88] *Id.* at section entitled "Amendment".

[89] *American Towers Owners Association Inc. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1193 (Utah).

[90] *Id.* at 1192–93.

[91] *Id.* at 1184.

any different from that set forth in the cases cited above: that a promissory estoppel claim is only available in the absence of a contract governing the parties' rights and obligations. In this case, Paramount and Global had such a contract, regardless of whether Global regrets the ways in which the parties' rights and obligations were expressed.

Accordingly, Global's promissory estoppel claim cannot stand where the management of Member Account Data is governed by a contract.

**B. The Evidence Does Not Show that Paramount Made A Clear and Definite Promise to Transfer the Billing Information.**

Beyond the first reason for granting summary judgment, that promissory estoppel is clearly prohibited where the parties' relationship is governed by a contract, Global's claim also fails to meet the first element of promissory estoppel: that Paramount made a "promise reasonably expected to induce reliance."[92]

To support a claim for promissory estoppel, the alleged promise must be "clear and definite."[93] In this case, the alleged promise by Paramount on which Global bases its promissory estoppel claim is that Paramount "would transfer the Member Account Data, including the Billing Data, within the timeframe required by L.A. Fitness and prior to forty-five day termination period in the Agreement."[94] However, alleging such a promise in its Amended Complaint is not enough. Global has offered no evidence that such a promise was ever made. Global has not provided any evidence that suggests that Paramount made any promise to Global that it would transfer the Member Account Data, and particularly the Billing Information, prior to the end of the Contracts' 45-day termination period.

---

[92] *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (UT Ct. App. 2013).

[93] *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 19, 158 P.3d 1088.

[94] Amended Complaint ¶ 50.

It is undisputed that Paramount had historically always provided Global Fitness with any requested Member Account Data.[95] However, Global Fitness never requested and Paramount never provided unencrypted Billing Information.[96] It is further undisputed that Paramount continued to provide cuts of the Member Account Data to Global after Global provided notice of termination of the contractual relationship between the parties.[97] However, those cuts of data also did not include Billing Information.[98]

Global argues that through Paramount's course of dealings with Global in historically providing Member Account Data, Paramount effectively promised Global that it would transfer the full Member Account Data, including Billing Information, anytime Global requested it and prior to the end of the 45-day termination period. At best, this course of dealing shows that Paramount regularly transferred *some* data to Global, which would be relevant if Paramount refused to transfer any data at all. However, that did not happen. Paramount regularly transferred Member Account Data, and it never provided any Billing Information. That never changed until the termination of the parties' contractual relationship.

Paramount's past practice, custom, or performance does not constitute a clear and definite promise expected to induce reliance that is necessary to support a claim for promissory estoppel. Rather, Global must point to some affirmative statement made by Paramount, which Global has not done.

The closest Global can come to showing some promise by Paramount is an October 10, 2012 email in which Paramount represented that it had "commenced the process to transfer the

---

[95] Counterclaim ¶¶ 46-47, at 25–26; *see also* Rasmussen Decl. ¶ 5; Trawick Depo. at 101:6–25.

[96] Counterclaim ¶¶ 46-47, at 25–26.

[97] *Id.*

[98] *Id.*

requested member and contract data as requested, without going 'black'. Absent delays, the process as to the data may be complete from our end this Friday, October 12."[99] Although this is an affirmative assurance by Paramount that it has commenced the process of transferring the Member Account Data, it is not a promise as to when that transfer would be completed or of the nature of the data that would be included. This email only shows that the parties were communicating and working toward a final transfer. At best it is aspirational. Furthermore, Paramount's email does not state that it would transfer the Billing Information, nor does it even mention it. This aspirational statement is limited to "member and contract data." Any inference that Billing Information would be included in data discussed in this email would be speculative, and speculation falls short of the clear and definite standard.

General promises of cooperation are not a specific promise of a specific act on a specific timetable, on which another party could rely. Global unilaterally terminated the parties' contractual relationship, and Paramount did not make such specific promises. Because Global cannot show a clear and definite promise made by Paramount, it cannot meet the first element of a promissory estoppel claim. Accordingly, independent of the other grounds, based on the first element, Paramount's Motion on Promissory Estoppel is granted.

### C.  The Evidence Does Not Show that Paramount Made Any Promise With an Awareness of All the Material Facts.

Beyond the other reasons for granting summary judgment, Global's promissory estoppel claim must also fail independently for a lack of Paramount's awareness of all the material facts.

---

[99] Oct. 10, 2012 Klc E-mail ("On that basis, unless you request otherwise, my client has commenced the process to transfer the requested member and contract data as requested . . . .").

In order to succeed on a claim for promissory estoppel, Global must show that Paramount made a promise to Global with an awareness of all the material facts.[100] As such, even if Global could prove, which it has not, that Paramount made a clear and definite promise that it would transfer the Member Account Data prior to the end of the 45-day termination period, the evidence shows that Paramount was not aware of all of the material facts.

The material facts of which Paramount would have needed to be aware of in order to make a promise on which Global could have relied are: (1) that L.A. Fitness and Global executed the APA, on September 5, 2012; (2) that the APA provided for a potential change in the purchase price formula if the APA closed after October 15, 2012;[101] and, most importantly, (3) that the formula used for calculating the purchase price after October 15, 2012 could cause a catastrophic result for Global.

However, the undisputed evidence is that Paramount was not aware of any of these material facts. Specifically, despite Global negotiating the APA for multiple months and signing the APA on September 5, 2012, Global did not notify Paramount in writing of its pending asset sale to L.A. Fitness or its desire to terminate its Contracts with Paramount until September 11, 2012.[102] Moreover, in that September 11, 2012 termination email, Global did not mention the significance of the October 15, 2012 trigger date for the variable purchase price.[103] In that email, there simply was no expression of the urgency that Global receive the Billing Information, particularly prior to the end of the 45-day termination period.[104]  Instead, Global stated that "45

---

[100] *Triax Pacific, Inc. v. Am. Ins. Co*., No. 94-4091, 1995 WL 643156, *7 (10th Cir. Nov. 2 1995) (quoting *Tolboe Constr. Co. v. Staker Paving & Constr. Co.*, 682 P.2d 843, 845 (Utah 1984)).

[101] *See* Sept. 3, 2012 Devary-Polson E-mail; *see also* DeVary Affidavit; APA definition of Gross Purchase Price at page 10.

[102] *See* Sept. 11, 2012 Trawick Email.

[103] *See id.*

[104] *See id.*

day notice is hereby given for the termination of the Agreement" and that it was "unsure of the exact closing date."[105] Global's specific mention of the 45-day termination period and disclaimer of any specific closing is the opposite of the awareness of facts which the law requires.

The evidence also shows that Global did not request the Billing Information from Paramount until October 3, 2012.[106] Even in that October 3, 2102 email, there was no mention of an October 15, 2012 closing date or of any impact on Global if closing did not occur by October 15, 2012.[107] If Global had a great stake in the Billing Information of which it wanted to make Paramount aware, a specific demand and outline of consequence should have been communicated. Global's decision to wait nearly a month after the notice of termination to specifically request the Billing Information likely communicated that the Billing Information was not of importance, the opposite of what Global must show to prove that any promise Paramount made was with an awareness of all the material facts.

Indeed, the evidence shows that Global did not tell Paramount of the October 15, 2012 variable purchase price trigger date[108] or of the financial harm that could result to Global if the APA closed after that date until, at the soonest, October 9, 2012.[109] Even if Paramount had promised that it would transfer the Member Account Data, including the Billing Information, which it did not, the promise could not have been made with an awareness of all the material facts prior to October 9, 2012.

---

[105] *Id.*

[106] Amended Complaint ¶ 28; *see also* Oct. 3, 2012 Trawick-Nelson E-mail.

[107] *See id.*

[108] *See* DeVary Depo. at 45:10–16.

[109] *See* Oct. 10, 2012 E-mail from Darby Turner to Thomas Klc, et al. ("Oct. 10, 2012 Turner E-mail"), attached as Exhibit Z to Global's Exhibits on Promissory Estoppel, docket no. 137-26, filed September 4, 2014; *see also* Transcript 5/11/2015 61:9–13, docket no. 254, filed May 20, 2015 (Question by the Court: "When did you make Paramount aware of the critical reduction in the purchase price if closing didn't occur by October 15th?" Answer by Mr. Stinnett: "Your Honor, I believe the reference is October 9th.").

This undisputed sequence of events shows that Paramount was not aware of all of the material facts at any time sufficient to enable it to make a promise to transfer the Member Account Data upon which Global could have relied. Although Global made general statements that time was important and that delays or other problems with the sale would have financial repercussions, Global did not make Paramount aware of all the material facts, state a clear deadline, identify the potential purchase price reduction, etc., and therefore, Paramount could not have had the requisite awareness to make a reliable promise.

Accordingly, independent of the above grounds for granting summary judgment, based on the lack of Paramount's awareness of all the material facts, Global cannot succeed on its claim for promissory estoppel.

### D.  Global Could Not Have Reasonably Relied on Any Promise from Paramount to Transfer the Member Account Data Prior to the End of the 45-Day Termination Period.

Beyond the other grounds for granting summary judgment, Global's promissory estoppel claim must also fail independently because of a lack of evidence of reasonable reliance.

To succeed on a claim for promissory estoppel, a plaintiff must not only show that it relied on a promise from the defendant, it must also show that its reliance was *reasonable*.[110] "[W]hen the alleged promises made are contrary to the terms of the contract, reliance on such promises would be unreasonable."[111]

In *Wardley*, the parties entered into a franchising agreement, which allowed the defendant to transfer or assign its rights under the contract.[112] Despite that provision, when the defendant

---

[110] *Cottonwood Imp. Dist. v. Qwest Corp.*, 296 P.3d 754, 755 (UT Ct. App. 2013) (recognizing reasonable reliance as one of the core elements of promissory estoppel).

[111] *Wardley Corp. v. Meredith Corp.*, No. 03-4021, 93 Fed. App'x 183, 186, 2004 WL 339593 at *3 (10th Cir. Feb. 24, 2004).

[112] *Id.* at *1.

sold its rights under the contract to a third party, the plaintiff filed suit against the defendant for,

among other claims, promissory estoppel.[113] The plaintiff argued that it reasonably relied on the

defendant's oral promises that it would not sell its contract rights.[114] The Tenth Circuit, applying

Utah law, rejected this argument and stated:

> when the alleged promises made are contrary to the terms of the contract, reliance
> on such promises would be unreasonable. Under the contract before us, Meredith
> could transfer or assign its rights and obligations. Any reliance on statements that
> Meredith would never sell, or that its obligations would continue after it assigned
> the obligations under the contract, would therefore have been unreasonable. We
> accordingly affirm the district court's dismissal of Wardley's promissory estoppel
> claims.[115]

Similarly, even if Global could show that it relied on some promise by Paramount to

transfer the Billing Information, the undisputed evidence establishes that Global's reliance would

not have been reasonable because the promise by Paramount would have been contrary to the

parties' Contracts.

In its opposition to Paramount's Motion, Global does not dispute that a party cannot

reasonably rely on a promise that is contrary to the parties' contract.[116] Moreover, at the May 11,

2015 hearing on Paramount's Motion, counsel for Global acknowledged that if Paramount had a

right under the Contracts to possess the Member Account Data for 45 days following termination

of the Contracts, Global's reliance on a promise to transfer the data would have been

unreasonable.[117] Without disputing the law cited by Paramount on this issue, Global's sole

---

[113] *Id.*

[114] *Id.* at *3.

[115] *Id.*

[116] Global's Opposition on Promissory Estoppel at 18.

[117] *See* Transcript 5/11/2015 52:18–53:6, docket no. 254, filed May 20, 2015 (Question by the Court: "I held in a hearing on April 27th that the 45 day termination period entitled Paramount to continue to possess and sue the data under the contract for the 45 days.  So in light of the lack of a contractual provision for delivery of data, and the contractual provision permitting Paramount to have possession and use of that data for the 45 days, how would your reliance on delivery of these cuts and Klc's - - I guess maybe you're saying you relied on Klc's letter that was under threat of preliminary injunction - - how would your reliance on those have been reasonable knowing that there's a 45

argument is that the Contracts do not govern the transfer of the Member Account Data, and thus, the Contracts did not give Paramount the right to withhold the Billing Information for 45 days following notice of termination.[118]

The Contracts contain no provisions giving Global a right to demand transfer on a certain timetable and no obligation on Paramount to abide by any timetable proposed by Global. More importantly than their silence on the issue of transfer, the Contracts necessarily give Paramount the right and obligation to manage the Member Account Data, including the Billing Information, through the 45-day termination period. Because the Contracts cannot be amended or modified "except by instrument in writing executed by [Global] and [Paramount],"[119] and because no such written modification exists, Global's reliance on any alleged promise that contradicted these terms could not be reasonable.

Global attempts to rebut this conclusion by arguing that when it made a demand for the Member Account Data, including the Billing Information, on October 3, 2012, Paramount's internal correspondence from that day to October 11, 2012, shows that Paramount was concerned that if they provided the data, it would be unable to collect its termination fees.[120] While undisputed, this fact has no bearing on the analysis of reasonable reliance. Global's reliance on any alleged promise is rendered no more reasonable by the fact that Paramount was concerned that Global would not pay fees required to be paid under the Contracts, as it failed to do.

---

day period where Paramount is entitled to perform under the contract?" Answer by Mr. Stinnett: "Your Honor, obviously if you stick to your holding, I don't have a basis for reasonable reliance.").

[118] Global's Opposition on Promissory Estoppel at 18; *see id.* n.56 ("Because Global Fitness and FRSI do not have an express contract, Global Fitness's claim for promissory estoppel against FRSI is not impacted by this argument.").

[119] Contracts at section entitled "Amendment".

[120] *See* Oct. 3, 2012 Bendixen-Rice E-mail ("We can't give them the detailed account information until we have the reserve we need . . . . [T]hey're trying to pull a fast once[sic] so we have no reserve . . . ."). *See also* Oct. 3, 2012 Bendixen-Nelson E-mail; Oct. 3, 2012 Rasmussen E-mails ("[t]he billing info is the only card we have left").

Accordingly, independent of the other reasons for granting summary judgment, because Global's reliance on any alleged promise made by Paramount could not be reasonable, Global cannot succeed on its claim for promissory estoppel, and summary judgment is granted in favor of Paramount.

   **E. The Evidence Does Not Show that Global Detrimentally Relied on Any Promise by Paramount to Transfer the Member Account Data.**

Another basis for granting summary judgment is that none of Global's actions were taken in reliance on any alleged promise by Paramount; rather, Global only acted in performance of its pre-existing obligations.

To "prove detrimental reliance on the defendant's representation, the plaintiff must have done some act which it otherwise would not have done."[121] In this case, the alleged promise by Paramount on which Global bases its promissory estoppel claim is that Paramount "would transfer the Member Account Data, including the Billing Data, within the timeframe required by L.A. Fitness and prior to forty-five day termination period in the Agreement."[122] Even assuming *arguendo* that Global had evidence that such a promise was ever made, which is not the case, Global has no evidence that it undertook any act in reliance on Paramount's alleged promise.

To the contrary, the evidence shows that Global's actions were related to the APA with L.A. Fitness, which was negotiated and signed in complete disregard of the Contracts with Paramount (including Paramount's contractual right to hold that Member Account Data for 45 days following notice of termination). Specifically, the evidence shows that Global negotiated and executed the APA before even discussing termination with Paramount.[123]  As such, when

---

[121] *Cottonwood*, 2013 UT App. 24 at ¶ 3; *see also Andreason v. Aetna Cas. & Sur. Co.*, 848 P.2d 171, 175–76 (Utah Ct. App. 1993) ("They must have done some act which they otherwise would not have done. Only acts done in detrimental reliance are compensable.").

[122] Amended Complaint ¶ 50.

[123] *Id.* ¶ 23; *See* Sept. 11, 2012 Trawick Email.

Global executed the APA, it could not have possibly relied to its detriment on any promise from Paramount because Paramount was not even aware of the APA or that Global would terminate the Contracts with Paramount. Therefore, although Global alleges, without proving, that Paramount promised to transfer the data "within the timeframe required by L.A. Fitness,"[124] that timeframe is a contractual constraint of the APA, assumed by Global before any alleged representation by Paramount. All of Global's actions were in furtherance of its performance under the APA's constraints. Global entered into the APA and committed to its deadlines well before any interaction with Paramount about data transfer. Global acted in the unjustified expectation that Paramount would simply capitulate to Global's requests and demands for the Member Account Data, including the Billing Information.

Furthermore, Global cannot show detrimental reliance on any promise by Paramount with regards to the transfer the Member Account Data because Global's own failures prevented Global from being able to transfer the Member Account Data to L.A. Fitness in the time required under the APA for an October 15, 2012 closing. The APA required Global to transfer the Member Account Data, including the Billing Information, to LA Fitness no later than 14 days prior to closing on the APA.[125] Importantly, this is a requirement that Global agreed to on September 5, 2012 when it executed the APA, before Global had any communication with Paramount about termination and when Global had full knowledge of the 45-day termination period in the Contracts with Paramount. Thus, under the APA, if closing was to occur on October 15, 2012, Global was required to transfer the Member Account Data, including the Billing Information, to L.A. Fitness no later than October 1, 2012. However, Global did not even

---

[124] Amended Complaint ¶ 50.

[125] *See also* APA § 7.11(d).

request the Billing Information from Paramount until October 3, 2012.[126] Thus, at the time Global requested the Billing Information from Paramount, Global had already failed in its obligations under the APA. As such, Global cannot claim it detrimentally relied on any promise by Paramount.

L.A. Fitness *could* have waived any nonperformance by Global, but this does not mean that L.A. Fitness *would* have waived this nonperformance, especially if L.A. Fitness stood to save roughly $10 million in the purchase. In order to ensure a closing prior to October 15, 2012 with the higher purchase price, Global would have had to remove any opportunity for L.A. Fitness to delay closing past the October 15 deadline. Global's performance would have had to be perfect to prevent such a delay, and, through no fault of Paramount, it was not. Global requested total transfer of the Billing Information on October 3, 2012 even though performance under the APA required its transfer by October 1, 2012 for an October 15, 2012 closing. Global did not perform under the L.A. Fitness timetable, and it cannot now avoid the consequences of that failure by blaming Paramount.

In its Opposition, Global argues that it detrimentally relied on a promise by Paramount to transfer the Member Account Data because, between the announcement of the APA (i.e. September 10, 2012)[127] and October 11, 2012, Global took the following actions, required of Global by the APA, in an effort to close on the transaction on or before October 15, 2012:

    a.   Terminated at least eleven subleases;

    b.   Negotiated the assignment and/or sublease of 36 leases from Global Fitness to L.A. Fitness, many of which required amendment to the underlying leases to meet the requirements of L.A. Fitness, which in several instances resulted in tense relationships between Global Fitness and the lessors and/or required that Global Fitness and/or its principals make significant concessions to the

---

[126] Amended Complaint ¶ 28; *see also* Oct. 3, 2012 Trawick-Nelson E-mail.

[127] *See* Amended Complaint ¶ 8.

underlying lessors, such as providing guaranties of the leases that would continue even after the assignment or sublease to L.A. Fitness;

c.   Negotiated complex recognition agreements and subordination, non-disturbance and attornment agreements with the lessors' lenders;

d.   Terminated a mass membership contract with a nationwide health insurance carrier, which generated sizable monthly revenues to Global Fitness before its termination;

e.   Made significant modifications to its business practices, such as the discontinuation of paid-in-full memberships, which were a substantial source of income for Global Fitness, and the termination of tanning services to all Global Fitness members because L.A. Fitness does not provide tanning;

f.   Notified its employees and independent contractors of the impending transaction which, if it failed to close, would have created confusion and uncertainty for these parties and potentially damaged their relationship with Global Fitness;

g.   Made arrangements to pay certain obligations to primary lenders, vendors and equipment lessors before they would otherwise be due, sometimes at an increased cost, in order to ensure that all assets being sold to L.A. Fitness could be transferred free and clear of all liens and encumbrances; and

h.   Filed letter ruling requests with state revenue departments in Ohio, Kentucky and Tennessee, as well as tax clearance statements, in order to provide L.A. Fitness with assurance regarding the tax treatment of the transaction in those states.[128]

However, to show detrimental reliance, Global must do more than show that Paramount made a promise and that Global took some action; Global must show that it would not have undertaken the actions it did but for the promise by Paramount.[129] None of Paramount's actions could have induced any of Global's listed actions. Global signed the APA with L.A. Fitness five days before even talking to Paramount about terminating the contract. The APA was negotiated and executed with obligations and conditions in place before Paramount ever even had a chance to make any promises. As evidenced by the APA itself, all of the things that Global claimed it did in reliance

---

[128] DeVary Affidavit ¶ 7.

[129] *Cottonwood*, 2013 UT App. 24 ¶ 3; *see also Andreason*, 848 P.2d at 175–76 ("They must have done some act which they otherwise would not have done. Only acts done in detrimental reliance are compensable.").

on Paramount's promise were obligations that Global was required to fulfill under the APA irrespective of any promise by Paramount.[130] As such, Global cannot show that, based on Paramount's promise, it did some action it would not otherwise have done.

In an attempt to overcome this shortcoming, Global argues that while the APA did require it to undertake the activities listed above, Global would not have undertaken those activities as soon as it did but for Paramount's promise.[131] In other words, Global argues that it took these actions to ensure that closing occurred by October 15 and would not have done so but for Paramount's promise.

The problem with Global's argument is two-fold. First, Global has acknowledged that it had a tremendous incentive to close on the APA by October 15, 2012, and Global has not pointed to any evidence to suggest that Paramount's promise made Global work towards an October 15, 2012 closing. Second, the evidence shows that Global was in fact working on the tasks listed above before Paramount was aware of the October 15 deadline and before Global ever requested the Billing Information. Indeed, Paramount was not made aware of the October 15 closing date or any possible financial repercussions to Global for closing the APA after October 15 until, at the soonest, October 9, 2012.[132] Despite that fact, in its Opposition, Global acknowledged that it was working on the above-listed tasks from the announcement of the APA

---

[130] APA at §§ 4, 7, 8; *see also* Paramount's Motion for Partial Summary RE: Global's Tortious Interference Claim, docket no. 121, filed Aug. 4, 2014 for a detailed explanation on Global's obligations under the APA.

[131] Global's Opposition on Promissory Estoppel at 19–22.

[132] *See* DeVary Depo. at 45:10–16; *see also* Oct. 10, 2012 Turner E-mail; *see also* Transcript 5/11/2015 61:9–13, docket no. 254, filed May 20, 2015 (Question by the Court: "When did you make Paramount aware of the critical reduction in the purchase price if closing didn't occur by October 15th?" Answer by Mr. Stinnett: "Your Honor, I believe the reference is October 9th.").

(i.e. September 10, 2012).[133] Therefore, Global cannot show that it did anything based on a promise by Paramount that it would not otherwise have done.

Accordingly, independent of the other reasons for granting summary judgment, because Global cannot show that it detrimentally relied on any promise by Paramount, Global cannot succeed on its claim for promissory estoppel, and summary judgment is GRANTED in favor of Paramount.

**ORDER**

IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment on Global's Promissory Estoppel Claim[134] is GRANTED. Global's claim for promissory estoppel is hereby DISMISSED.


DATED this 31st day of August, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[133] *See* Amended Complaint ¶ 8; Global's Opposition on Promissory Estoppel at 13–14.

[134] Docket no. 106, filed Aug. 4, 2014.