IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GLOBAL FITNESS HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL RECOVERY ACCEPTANCE, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL** <br><br> Case No. 2:13-cv-00204-DN <br><br> District Judge David Nuffer |

Defendant Federal Recovery Acceptance, Inc. ("FRA") seeks entry judgment as a matter of law on the amount of its damages for Plaintiff Global Fitness Holdings, LLC's ("Global") breaches of the parties' contracts.[1] FRA argues that the jury's decision to award it only $153,721.38 in damages for banking and late fees was based on legal error propagated by Global, and that the trial evidence demonstrates that it is entitled to $1,589,021.21 in damages for these fees.[2] Alternatively, FRA requests a new trial arguing that the jury's verdict was against the great weight of the trial evidence.[3]

---

[1] Federal Recovery Acceptance, Inc.'s Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial ("Renewed Motion") at 12-19, docket no. 402, filed Nov. 12, 2015.

[2] *Id*.

[3] *Id*. at 19-20. FRA had also requested a new trial on the basis for juror bias. *Id*. at 20-22. However, FRA withdrew this portion of its Renewed Motion following an evidentiary hearing on the issue. Minute Order for Proceedings Held Before Judge David Nuffer, docket no. 454, entered Apr. 13, 2017; Order Withdrawing Motion for New Trial as to Issue of Juror Bias, docket no. 455, entered Apr. 13, 2017.

Because a legally sufficient evidentiary basis existed for the jury's verdict, and because the jury's verdict is not clearly, decidedly, or overwhelmingly against the weight of the trial evidence, FRA's Renewed Motion[4] is DENIED.

**Contents**
BACKGROUND ................................................................................................................ 2
DISCUSSION .................................................................................................................... 4
    Because a legally sufficient evidentiary basis exists for the jury's verdict, FRA is not
        entitled to judgment as a matter of law ................................................................... 4
    Because the jury's verdict is not clearly, decidedly, or overwhelmingly against the weight
        of the trial evidence, FRA is not entitled to a new trial ....................................... 11
ORDER ............................................................................................................................ 13

## BACKGROUND

FRA is a corporation that services contracts for physical fitness centers ("gyms"), including the processing of contracts between gyms and their members, arranging and tracking member payments, keeping members informed of their membership status, and managing delinquent accounts.[5] Global is a limited liability company that previously owned 36 gyms.[6]

In 2008, FRA began providing services to eight of Global's gyms—the parties entered eight contracts for these services, each for a separate gym location.[7] In 2009, the parties entered two additional contracts that were not location-specific.[8] In 2011, the parties entered another two

---

[4] Docket no. 402, filed Nov. 12, 2015.

[5] Joint Proposed Pretrial Order § 2.c., docket no. 343, filed Sept. 23, 2015.

[6] *Id*.

[7] *Id*.

[8] *Id*.

contracts that were not location-specific.[9] By 2011, FRA provided services to all 36 of Global's gyms.[10]

In October 2012, Global sold its gyms to Fitness & Sports Clubs, LLC, and FRA stopped providing services to Global and its members.[11] Global initiated this case on October 10, 2012, alleging that FRA refused to cooperate with it following the Fitness & Sports Clubs, LLC acquisition.[12] Global asserted claims against FRA for tortious interference, promissory estoppel, conversion, breach of contract, and breach of the implied covenant of good faith and fair dealing.[13] FRA asserted counterclaims against Global for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and negligent misrepresentation.[14]

The case proceeded to a three-day jury trial beginning on October 13, 2015.[15] The only issues at trial were:

- The number and types of accounts subject to the $5.00 per account termination fee under the parties' 2008 contracts;

- The amount of accumulated banking and late fees that Global owed to FRA under the parties' 2008 contracts; and

- The amount of banking and late fees that Global owed to FRA under the parties' 2009 and 2011 contracts.[16]

---

[9] *Id*.

[10] *Id*.

[11] *Id*.

[12] Complaint, docket no. 1, filed Oct. 10, 2012.

[13] Global Fitness Holding, LLC's Amended Complaint ¶¶ 38-73, docket no. 71, filed Mar. 19, 2014.

[14] Defendants' Amended Answer to Plaintiff's Amended Complaint and Counterclaim at 32-37, ¶¶ 71-110, docket no. 85, filed Apr. 22, 2014.

[15] Minute Entry for Proceedings Held Before Judge David Nuffer, docket no. 364, entered Oct. 13, 2015.

[16] Joint Proposed Pretrial Order § 4.a., docket no. 343, filed Sept. 23, 2015.

On October 15, 2015, the jury returned its verdict finding that FRA had proven 25,479 accounts were subject to the $5.00 termination fee under the parties' 2008 contracts,[17] and that $153,721.38 in late fees were associated with the parties' 2008 contracts.[18] However, the jury found that FRA failed to prove any banking fees or other late fees associated with the parties' contracts.[19]

Subsequently, FRA filed its Renewed Motion seeking entry of judgment as a matter of law on the amount of its damages for banking and late fees under the parties' contracts.[20] FRA argues that the trial evidence demonstrates it is entitled to the full amount of damages it requested for banking and late fees, $1,589,021.21.[21] FRA maintains that the jury's decision to award only $153,721.38 in damages for these fees was based on legal error propagated by Global.[22] Alternatively, FRA requests a new trial arguing that the jury's verdict was against the great weight of the trial evidence.[23]

## DISCUSSION

**Because a legally sufficient evidentiary basis exists for the jury's verdict, FRA is not entitled to judgment as a matter of law**

Under Rule 50(a) of the Federal Rules of Civil Procedure, judgment as a matter of law may be entered when "a party has been fully heard on an issue during a jury trial and … a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

---

[17] Verdict § 1:A.1., docket no. 376, entered Oct. 15, 2015.

[18] *Id*. § 1:A.3.

[19] *Id*. §§ 1.A.2., 1:B.5., 1:C.7, 1:b.9.

[20] Renewed Motion at 12-19, docket no. 402, filed Nov. 12, 2015.

[21] *Id*.

[22] *Id*.

[23] *Id*. at 19-20.

issue[.]."[24] A party that has made a motion for judgment as a matter of law under Rule 50(a) prior to a jury verdict may renew that motion under Rule 50(b) after judgment is rendered.[25] However, the jury's conclusion may be upset only when "drawing all reasonable inferences in favor of the nonmoving party, the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."[26]

"Under this standard of review, [the court] may not weigh the evidence, pass on the credibility of witnesses, or substitute [its] conclusions for that of the jury."[27] "A motion for a judgment as a matter of law is cautiously and sparing granted and then only when the court is certain the evidence conclusively favors one party such that reasonable [persons] could not arrive at a contrary verdict."[28]

FRA argues that it is entitled to judgment as a matter of law on the amount of its damages for banking and late fees under the parties' contracts.[29] At trial, FRA presented evidence regarding the services it performs;[30] the costs it incurs in performing its services;[31] the importance of banking and late fees to its income;[32] how these fees defray its costs;[33] and when and how gyms pay these fees.[34] FRA also presented evidence regarding its contracts and work

---

[24] Fed. R. Civ. P. 50(a)(1).

[25] *Id*. at 50(b).

[26] *Eureka Water Co. v. Nestle Waters NA, Inc.*, 690 F.3d 1139, 1145 (10th Cir. 2012) (internal quotations and punctuation omitted).

[27] *Webb v. ABF Freight Sys, Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998) (internal quotations omitted).

[28] *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996) (internal quotations omitted).

[29] Renewed Motion at 12-19, docket no. 402, filed Nov. 12, 2015.

[30] Reporter's Transcript of Proceedings ("Trial Transcript") at 14:9-15:7, docket no. 402-1, filed Nov. 12, 2015.

[31] *Id*. at 15:9-16:1.

[32] *Id*. at 16:5-17:5.

[33] *Id*. at 17:6-20, 18:8-19:4.

[34] *Id*. at 17:21-18:7.

for Global, and the specific provisions in the contracts relating to the payment of banking and late fees.[35]

To support the amount of banking and late fees it requested in damages, FRA introduced a spreadsheet of over 10,000 pages summarizing Global's member contracts and accounts (the "Spreadsheet").[36] FRA's Chief Information Officer, Todd Clark Rasmussen, testified that he prepared the Spreadsheet by pulling information from FRA's database using FRA's software.[37] Mr. Rasmussen also testified regarding the software's tracking and calculation of the accumulated banking and late fees under the parties' contracts.[38] Mr. Rasmussen further testified that he sampled hundreds of line items in the Spreadsheet and found them all to be accurate.[39]

In its cross-examination of Mr. Rasmussen, Global attacked the reliability of the information in the Spreadsheet.[40] Specifically, Global attacked the accuracy of the information that was pulled from FRA's database to populate the Spreadsheet, and the extent of Mr. Rasmussen's review of the underlying data.[41] Global also questioned Mr. Rasmussen on what evidence the jury was presented to determine the accuracy of the Spreadsheet,[42] which included to the following exchange:

> Q. I'm talking about what the jury can look at. There's nothing for them to look at, is there?
>
> A. Unless we provided the software for them. We can do that.

---

[35] *Id*. at 20:3-20, 21:8-31:21, 32:12-35:1; *see also* Trial Exs. 1, 2, 4, 5, 7, 8.

[36] Trial Ex. 56.

[37] Trial Transcript at 74:8, 79:10-85:13, [docket no. 402-1](), filed Nov. 12, 2015.

[38] *Id*. at 89:16-97:23.

[39] *Id*. at 134:4-137:11; 182:21-183:6.

[40] *Id*. at 123:1-16, 125:5-126:8, 133:4-134:12.

[41] *Id*. at 127:4-129:22, 134:17-136:18, 137:20-139:16, 166:1-12.

[42] *Id*. at 129:23-130:25, 180:19-182:5.

> Q. Well, that's kind. I'll leave that to the Judge, but the point is, you're asking us to trust you that your system properly populated [the Spreadsheet], correct?
>
> A. Correct.[43]

Global also elicited testimony from Mr. Rasmussen that FRA's software and accounting had reliability issues,[44] including this exchange:

> Q. Okay. And sometimes that didn't work, did it?
>
> A. Well, you mean, did the software not send the payment, or did the software send a payment that it shouldn't have?
>
> Q. Whatever you intended when you wrote the code, the code didn't do exactly what you wanted, so you modified the code?
>
> A. There's always issues with software.[45]

Global also called witnesses, Keith Trawick—Global's Chief Information Officer—and Sidney Nelson—FRA's former Vice President of Sales and Marketing—to provide testimony regarding the reliability issues with FRA's software and accounting, and the accuracy of the information in the Spreadsheet. These witnesses testified that data entry errors and invalid fees occurred during the parties' relationship, which caused FRA to waive fees.[46] Mr. Trawick also testified that FRA's software had limitations and a lack of visibility into where certain fees originated, and that FRA had prepared inaccurate reports for Global.[47] Mr. Nelson confirmed that FRA had received and addressed complaints from Global regarding its software and reports during the parties' relationship.[48]

---

[43] *Id*. at 130:18-25.

[44] *Id*. at 131:8-132:2, 154:10-19.

[45] *Id*. at 131:21-132:2.

[46] *Id*. at 198:13-19, 200:7-20, 231:1-4 235:8-14.

[47] *Id*. at 201:6-18, 202:23-204:19, 218:3-8, 218:19-22.

[48] *Id*. at 235:15-25, 236:18-237:3.

Specific to the Spreadsheet, Mr. Trawick testified that he reviewed the underlying data and found numerous errors, including "extremely high banking fees" and late fees that "didn't seem consistent with what [Global] expected."[49] Mr. Tranwick pointed to two examples of line items in the Spreadsheet that he believed to represent improper, excessive banking fees.[50] Mr. Nelson also testified regarding specific line items in the Spreadsheet which he believed to be improper, excessive banking and late fees considering FRA's policies for requesting payment from banks and the type and length of Global's membership contracts.[51] Both of these witnesses testified that a member's banking fees should not be greater than $55, and any line item in the Spreadsheet showing a greater amount is improper and would need to be audited.[52] Mr. Nelson further testified that an audit of the underlying data used to populate the entire Spreadsheet would need to occur to determine the Spreadsheet's reliability.[53]

The testimony Global elicited from Mr. Rasmussen, Mr. Tranwick, and Mr. Nelson calling into question the reliability of FRA's software and accounting, and the accuracy of the Spreadsheet, gave the jury a legally sufficient evidentiary basis to reasonably find that the entire Spreadsheet was unreliable, or that portions of the Spreadsheet relating to banking and late fees were inaccurate. Consequently, a legally sufficient evidentiary basis exists for the jury's decision to reject the full amount of damages FRA requested, and find that FRA proved only $153,721.38

---

[49] *Id.* at 209:9-210:1, 212:19-22.

[50] *Id.* at 210:5-211:13, 212:23-213:20.

[51] *Id.* at 243:11-244:17, 245:17-249:15.

[52] *Id.* at 211:9-13, 214:23-216:11, 242:2-19, 249:6-15.

[53] *Id.* at 249:6-15.

in damages for late fees associated with the parties' 2008 contracts,[54] and failed to prove any damages for other banking and late fees associated with the parties' contracts.[55]

FRA certainly presented evidence to support the Spreadsheet's accuracy and an award of damages in the full amount it requested.[56] However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions[.]"[57] And the jury's reasonable findings from the evidence presented may not be substituted on a motion for judgment as a matter of law.[58]

FRA nevertheless argues that the jury's damages determination was not reasonable because Mr. Trawick testified that in his review of the Spreadsheet, approximately $500,000 in banking fees appeared reasonable.[59] FRA further argues that because Global pointed to potential errors in only four specific line items in the Spreadsheet, the jury could reasonably reject only those specific line items, totaling $1,180.[60] These arguments are based on incorrect assumptions.

Mr. Tranwick made the statement as part of his testimony that a member's banking fees should never be greater than $55, and that any line item in the Spreadsheet showing a greater amount of banking fees is improper and unreasonable.[61] According to Mr. Tranwick "it was around $500,000 [in the Spreadsheet] that was part of the $55 and under, that seemed

---

[54] Verdict § 1:A.3., docket no. 376, entered Oct. 15, 2015.

[55] *Id*. §§ 1.A.2., 1:B.5., 1:C.7, 1:b.9.

[56] *Supra* at 5-6.

[57] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[58] *Eureka Water Co.*, 690 F.3d at 1145.

[59] Renewed Motion at 17-18, docket no. 402, filed Nov. 12, 2015; Reply Memorandum in Support of Federal Recovery Acceptance, Inc.'s Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial ("Reply Memorandum") at 10-12, docket no. 433, filed Dec. 17, 2015; Trial Transcript at 214:21-216:11, docket no. 402-1, filed Nov. 12, 2015.

[60] Renewed Motion at 15-16, docket no. 402, filed Nov. 12, 2015; Reply Memorandum at 4-6, docket no. 433, filed Dec. 17, 2015.

[61] Trial Transcript at 214:21-216:11, docket no. 402-1, filed Nov. 12, 2015.

9

reasonable."[62] In context, Mr. Tranwick's testimony was not an admission that FRA's damages for banking fees should be $500,000. Nor did his testimony bind the jury to a finding of at least $500,000 in damages for banking fees. The testimony was that the justifiable fees could not reasonably exceed $500,000. This testimony was just one piece of evidence Global presented to the jury that called into question the reliability of FRA's software and accounting, and the accuracy of the Spreadsheet. The jury was free to consider this evidence, along with all other evidence presented at trial, in determining whether to accept the amount of banking fees listed in the Spreadsheet.

Similarly, the jury was not limited to rejecting only the specific errors in the Spreadsheet's line items identified by Mr. Tranwick and Mr. Nelson. The jury could reasonably infer from the identified errors that other errors existed in the Spreadsheet. Therefore, the jury had a legally sufficient evidentiary basis to reasonably find that the entire Spreadsheet was unreliable, or that portions of the Spreadsheet relating to banking fees were inaccurate. And the jury had a legally sufficient evidentiary basis to award no damages to FRA for banking fees and only $153,721.38 in damages for late fees associated with the parties' contracts.[63]

FRA also argues that Global's attack of the Spreadsheet at trial was improper because the Spreadsheet was admissible as a summary of evidence under Rule 1006 of the Federal Rules of Evidence, and Global had the opportunity to review the underlying data in discovery.[64] This argument also lacks merit.

---

[62] *Id*. at 215:16-18.

[63] Verdict §§ 1.A.2., 1:A.3, 1:B.5., 1:C.7, 1:b.9, docket no. 376, entered Oct. 15, 2016.

[64] Renewed Motion at 16-17, docket no. 402, filed Nov. 12, 2015; Reply Memorandum at 7-10, docket no. 433, filed Dec. 17, 2015.

That certain evidence is admissible does not mean that the evidence is credible. Nor does the admissibility of evidence preclude a party from attacking its credibility. "[A]n opponent may attack … secondary evidence's sufficiency, including the witness's credibility. This attack, however, goes not to the evidence's admissibility but to its weight and is a matter for the trier of fact to resolve."[65] Global's attack of the Spreadsheet at trial did just this. By pointing to general and specific errors in the Spreadsheet, and calling into question the reliability of FRA's software and accounting, Global challenged the Spreadsheet's evidentiary value, not its admissibility. Therefore, the jury's damages determination was not based legal error propagated by Global.

Because a legally sufficient evidentiary basis existed for the jury's verdict on the amount of FRA's damages for banking and late fees, the trial evidence does not conclusively favor FRA's request for a greater award of damages. Therefore, FRA is not entitled to judgment as a matter of law.

### Because the jury's verdict is not clearly, decidedly, or overwhelmingly against the weight of the trial evidence, FRA is not entitled to a new trial

Under Rule 59 of the Federal Rules of Civil Procedure, a new trial may be granted on all or some of the issues "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[66] "A new trial may be appropriate where the jury verdict is against the weight of the evidence, the damages are excessive [or inadequate], a party was prejudiced by erroneous evidentiary rulings, or the trial was not fair to the moving party."[67]

---

[65] 5 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE, ¶ 1004.02[1] (1991); *see also State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 846 (10th Cir. 1985); *Tinley v. Poly-triplex Tech., Inc.*, 2009 WL 812150, *7 (D. Colo. Mar. 26, 2009).

[66] Fed. R. Civ. P. 59(a)(1)(A).

[67] *Megadyne Med. Prods., Inc. v. Aspen Labs., Inc.*, 864 F.Supp. 1099, 1102 (D. Utah 1994) (citing *Montgomery Ward & Co. v, Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Holmes v. Wack*, 464 F.2d 86, 88-89 (10th Cir. 1972); *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 740-41 (Fed. Cir. 1986)).

"If a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."[68] This determination "normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court."[69] Therefore, "the [c]ourt may consider witness credibility and the weight of the evidence."[70] However, all evidence is viewed in the light most favorable to the jury's verdict.[71]

As discussed, FRA presented evidence supporting the accuracy of the Spreadsheet and an award of damages in the full amount it requested.[72] This evidence was generally credible. However, Global elicited credible testimony from Mr. Rasmussen, Mr. Tranwick, and Mr. Nelson calling into question the reliability of FRA's software and accounting, and the accuracy of the Spreadsheet.[73] Indeed, Global presented credible evidence of errors in specific banking and late fee line items in the Spreadsheet,[74] and that a gym member's banking fees should never be greater than $55 under FRA's policies for requesting payment from banks.[75] While FRA cross-examined Global's witnesses in effort to undermine the weight of their testimony,[76] FRA chose not to present rebuttal evidence to rehabilitate the accuracy of the Spreadsheet.

---

[68] *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (internal quotations omitted).

[69] *Escue v. N. Oklahoma Coll.*, 450 F.3d 1146, 1156-57 (10th Cir. 2006) (internal quotations and punctuation omitted).

[70] *Megadyne Med. Prods., Inc.*, 864 F.Supp. at 1103 (citing 9 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 2531, at 575 (1971)).

[71] *Escue*, 450 F.3d at 1156.

[72] *Supra* at 5-6.

[73] *Supra* at 6-8.

[74] Trial Transcript at 210:5-211:13, 212:23-213:20, 243:11-244:17, 245:17-249:15, docket no. 402-1, filed Nov. 12, 2015.

[75] *Id*. at 211:9-13, 214:23-216:11, 242:2-19, 249:6-15.

[76] *Id*. at 216:17-219:5; 249:21-260:5.

Considering the facts of the case, including witness credibility and the weight of the evidence at trial, and viewing the evidence in a light most favorable to the jury's verdict, the jury's determination of FRA's damages for banking and late fees was not clearly, decidedly, or overwhelmingly against the weight of the trial evidence.[77] The weight of the trial evidence shows that the jury could reasonably find that the entire Spreadsheet was unreliable, or that portions of the Spreadsheet relating to banking and late fees were inaccurate. Therefore, FRA is not entitled to a new trial.

## ORDER

IT IS HEREBY ORDERED that FRA's Renewed Motion[78] is DENIED.

Signed May 5, 2017.

BY THE COURT

_____

District Judge David Nuffer

---

[77] *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (internal quotations omitted).

[78] Docket no. 402, filed Nov. 12, 2015.